James J. Carroll, III

Josephine M. Carroll
P.O. Box 863
Windham, N.H. 03087

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

JAMES J. CARROLL, III
JOSEPHINE M. CARROLL
Plaintiff (s),
vs.
Defendant (s),
JAMES J. CARROLL, JR.,          individually,
and in his official capacity and in joint venture
JOANNE CARROLL DEYOUNG,
individually and in joint venture
RICHARD BLAIR CARROLL,          individually,
and in joint venture
EILLEEN CARROLL,          individually,
and in joint venture
THE LAW FIRM OF COSTANTINO
AND MASON, LLC,          individually,
and in their official capacities and in joint venture
ROBERT A. COSTANTINO,          individually,
and in his official capacity and in joint venture
SOPHIA COSTANTINO,          individually,
and in her official capacity and in joint venture
THE LAW FIRM OF MURTHA CULLINA
ROCHE AND DIGIACOMO, LLC, individually,
and in their official capacities and in joint venture
JOHN W. GAHAN, III,          individually,
and in his official   capacity and in joint venture
KATHY GAHAN,          individually,
and in joint venture
THOMAS VANGEL,          individually,
and in his official capacity and in joint venture
THE TOWN OF ARLINGTON, MASSACHUSETTS
THE BOARD OF SELECTMEN,    individually,
and in their official capacities and in joint venture

CHARLES LYONS, former Selectman
JOHN W. HURD
KATHLEEN KIELY DIAZ
KEVIN F. GREELEY
DIANE MAHON
ANNIE LACOURT
ROBERT MURRAY, former Selectman



05 cv 11670 GAO
Referred to mJ JbDein

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

Defendant (s)

BRIAN F. SULLIVAN, Town Manager,  individually,
and in his official  capacity and in joint venture
JOHN MAHER, Town Counsel,          individually,
and in his official  capacity and in joint venture
ARLINGTON POLICE DEPARTMENT
FREDERICK RYAN, Police Chief,      individually,
and in his official  capacity and in joint venture
DAVID MACNAMEE                     individually,
and in his official  capacity and in joint venture
JOHN DOE GREELEY                   individually,
and in his official  capacity and in joint venture
JOHN DOE HUGHES,                   individually,
and in his official  capacity and in joint venture
JOHN DOE FLYNN,                    individually,
and in his official  capacity and in joint venture
JOHN DOE number 1                  individually,
and in his official  capacity and in joint venture
JOHN DOE number 2                  individually,
and in his official  capacity and in joint venture
JOHN DOE number 3                  individually,
and in his official  capacity and in joint venture
JANE DOE BASSETT number 4          individually,
and in her official  capacity and in joint venture
ARLINGTON FIRE RESCUE OFFICER
JOHN DOE number 4                  individually,
and in her official  capacity and in joint venture
JAMES GRANITZAS D/B/A WE HAUL / LEGAL MOVERS
                                   individually,
and in his official capacity and in joint venture
"JOHN DOE DUBE", Owner D/B/A  HERB'S LOCKSMITH
                                   individually,
and in his official  capacity and in joint venture
RICHARD BOYLE, Arlington Constable, individually,
and in his official capacity and in joint venture
JERROLD LOOMIS, Weymouth Constable,
D/ B /A ALLSTATE CONSTABLES, INC.
                                   individually,
and in his official capacity and in joint venture
DAVID LANATA, D/ B /A LANATA SURVEYING
                                   individually,
and in his official capacity and in joint venture
THE COMMONWEALTH OF MASSACHUSETTS
OFFICE OF THE ATTORNEY GENERAL
THOMAS REILLY,                     individually,
 and in his official capacity.

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

JAMES DIPAULO, SHERIFF,
OFFICE OF THE MIDDLESEX SHERIFF

                                              individually,

and in his official capacities,
The following deputy sheriffs are named individually,
in their official capacities and in joint venture ;
STEVEN DONNELLY, deputy sheriff
MICHAEL FAYE,       deputy sheriff
GERRALD BREEN,      deputy sheriff
"JANE DOE"          deputy sheriff
DENISE DEYOUNG,  deputy sheriff
EVERETT MURRAY D/B/A TRIPLE M MOVERS

                                              individually,

and in his official capacity and in joint venture
JOHN DOE number one, an unnamed locksmith

                                              individually,

and in his official capacity and in joint venture
JOHN DOE numbers two through six unnamed movers,

                                              individually,

and in their official capacities and joint venture
CHARLENE PHILBRICK              individually
and in her official capacity and in joint venture
BRENDAN CALLANAN                individually.
and in his official capacity and in joint venture
THE EAST CAMBRIDGE SAVINGS BANK


## COMPLAINT
### Introduction and Juristiction

1. This is a complaint for relief under 42 U.S.C. § 1982 § 1983 §1985 § 1986 with pendant state claims against certain named defendants, involving the use of current and past officials, workers and members of the judiciary with their clerks in the Massachusetts Court System, along with other institutions, law enforcement and agencies, municipalities and private individuals some of which have not been named in the instant action and therefore due to the nature, scope and complexity of the action, it will be necessary to amend the complaint and or the named defendants, witnesses and related elements of the case as it progresses. The plaintiffs are aggrieved by conspiratorial actions coupled with fraud, crime, abuse of process and malicious prosecution to not only violate the Constitutional and Civil Rights of the plaintiffs, but to collectively racqueteer while violating the law for unjust and unlawful self enrichment through public records fraud, theft, unlawful force and conversion. The Complaint involves violation of a Superior Court Permanent Injunction where all rights and property have been stripped from the plaintiffs through a legal ponzi scheme on total fraud in defiance of the Injunctive order making an elder married 40 years homeless and clotheless 13 years after a divorce.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

A. **For declaratory and injunctive relief** - Defendants collectively, jointly and severally, in conspiracy with each other namely, James J. Carroll, Jr., Robert Costantino and John W.Gahan, III with the Town of Arlington, primarily Robert Murray, Brian F. Sullivan, Frederick Ryan, David MacNamee, John Doe Hughes, John Doe Flynn, John Maher, the Assessor James Bilafor, the building inspector John Doe Byrnes, violated the rights of Josephine Carroll and her son James J. Carroll, III and related parties. Josephine M. Carroll is a United States Citizen, an ill elder at age 73 who has never been allowed to remain free from the defendant James Carroll, Jr. although members of the courts of the Commonwealth have noted the criminal activities and abuses and some have attempted to protect the rights and wellbeing of Josephine Carroll, James Carroll, III and a Trust from the attacks of her exspouse who is divorced when it comes to his responsibilities, but has maintained control over his exwife and son [13] thirteen years after divorce causing a myriad of problems. The defendant James Carroll, Jr. contrary to court orders has embezzled funds through mortgage and tax fraud to pay an ever growing list of cohorts contrary to civil and criminal restraint. On November 8, 1995, at Cambridge Superior Court a Temporary Injunction was imposed by Smith, J. in case number 95 - 6545 against James J. Carroll, Jr., his counselors Robert Costantino and agents which are many as well as third persons. The Temporary Injunctive Order was made a Permanent Injunctive Order of No Contact, no theft or vandalism of property, no communication of any type, no interference with liberties. The Order was made permanent on July 6, 1997 by Zobel, J. Many of the cohorts of the defendant James Carroll, Jr. have been fully apprised of court orders, the illegality of their actions and the illegality of aiding and abeitting any of the named defendants.
 All defendants in through their participation or acquiesence deprived the plaintiffs of their rights which have been treated as a joking matter to torment, physically abuse, mentally abuse and defraud a woman married [40] fourty years of everything in her life [13] thirteen years after a divorce. The defendants have had little concern that Josephine Carroll was an elder who was married [40] fourty years, and is a woman who is a medically ill elder. Each named defendant has refused to heed warnings ; has taunted and ignored the rights and demands of the plaintiffs, acting aggressively against the plaintiffs with the intent of causing fear and emotional trauma to the plaintiffs Josephine Carroll and James Carroll, III. In each assault against the plaintiffs which are many and have consistantly involved Arlington Police, employees of Arlington or their associates, all have acted smug with many more defendants acting the same aiding James Carroll, Jr. collectively comprising a criminal gang like a defiant Mafia Army insistant upon usurping the rights of both plaintiffs. All named defendants have acted as willing participants to aid the defendant James J. Carroll, Jr., but when confronted attempt to pass the responsibility upon only the defendant James Carroll, Jr. The defendant Robert Costantino with the defendant James Carroll, Jr. and their associates have collectively maintained a position that the law is what they make it and not what the court through the Legislature has actually imposed and therefore, they are above the law. The unabated abuses of the defendant James J. Carroll, Jr. continued although divorced, living apart and contrary to restraining orders which he never obeyed ; contrary to criminal complaints which he retalliated for filing and contrary to numerous court rulings with court orders to maintain the status quo. The orders such as the Permanent Injunction were created to protect the rights of the plaintiff Josephine Carroll and that of her son James J. Carroll, III who aided her to survive and stop any further loss, hardship or conflict and to maintain a trust as it had existed before divorce.

4

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

A - 1. The unabated abuse of process and malicious prosecution by James Carroll, Jr, his counselors and agents and third persons involves all types of criminal stalking, assaults and enumerable abuses too numerous to list which followed a divorce from August 25, 1989 by Bowser J. in Middlesex Probate Court. The events culminated in the most egrigious of actions taking place on August 5, 2002 making the plaintiffs homeless and robbing them of the real estate and all contents of the property, as well as an auto and many other issues. The instant action involves an armed robbery of a home at gunpoint, criminal battery, kidnapping, false imprisonment, conversion of any available asset including real estate [13] thirteen years after a divorce taking from parties never sued.

I. The scheme to effect robbery and conversion of property awarded to Josephine Carroll in divorce and her legal responsibility to maintain followed a [40] fourty year marriage between Josephine M. Carroll and James J. Carroll, Jr. From the start of divorce, the defendant James Carroll, Jr. wanted all assets and sought every means to make the defendant Josephine Carroll lose her home of [34] thirty four years. In briefs and testimony before Justice Zobel, the defendant Robert Costantino and the defendant James J. Carroll, Jr. testified that they were not attempting to drive Josephine Carroll from her home and in print denied these claims, but [7] seven years later when both believed the opportunity existed after Justice Zobel retired, the defendants contradicted this claim and met the agenda that had been quelled by Judge Zobel. The defendant and his cohort defendants devised schemes to swindle property from her and a trust waging a financial war with various forms of attack. In the process attacks were also directed towards the plaintiff James Carroll, III to remove any assistance to Josephine Carroll, as well as destroy him in any way possible at employers, in public and with false complaints to give criminal records. Any method to increase his expenses, deprive him of a life, liberty and pursuit of happiness especially, a future was sought by the defendants constant stalking and arranged kidnappings, assaults, vandalism and entanglement with false litigation creating conflicts for him at the home of his mother to build claims for use in their plots sending agents onto private property to instigate problems. The total plot of confusion was designed to make it appear that James Carroll, III was creating problems so that false claims could be used to build false records as a preponderance of the evidence to justify future claims and assaults including incarceration on staged events and staged claims with staged police reports and staged violation(s) and follow this pattern and practice in false civil litigation. Repeated investigation and or timing of events proved orchestration with the defendant James Carroll, Jr. his counsel Robert Costantino and the Town of Arlington or members of the town. Unrelenting attacks of all types were repeatedly proven as strategized abuse from the defendants jointly and severally, whereby the defendants were never made accountable with anymore than a reprimand when caught and facts were proven before the court. The ultimate object was always the same only a continually revised strategy to get to the same point and that was abscond with any available asset regardless of title, ownership or how created and make it convertable to James Carroll, Jr. and his long list of opportunists. As a direct result of a succession of false unabated strategized and manipulated and controlled meritless litigation or abuse of process and malicious prosecution, the successive unfounded cases were used to make an appearance of legitimacy beyond a Permanent Injunction which had already stopped the plot formulating a Ponzi Scheme. The defendants ignored not only permanent protective orders but divorce awards, as well as numerous statutes both federal and state and trust law with instruments. The fraud against the plaintiffs and the United States Government involves public records fraud, false

5

court orders, to make false appearances of ownership and or to divert federal money.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

II. The defendants created false actions and staged events by surprise to overwhelm the plaintiffs and help to evade detection with appearances of court orders to evade accountability on actual crimes which occurred through the staged action, working with associates in the same system to prevent prosecution, due process, and any corrective remedy at law including any correct fact in the record. The entire succession of false actions comprises public corruption coupled with domestic abuse where all involved aided for either a favored status, exchanged favors, a gratuity or a share in the spoils. The object has been to physically, monetarily and emotionally harm the plaintiffs, and destroy them by any means possible while attempting to frustrate them by obstructing access to the system. There is a history of perjury, false impersonation, rulings of fraud on the court, false statements, false pretense to create litigation and build upon it with rigged actions, falsified docket sheets, false orders and falsified deeds with false sheriff sales after extortive demands of over $1 million dollars contrary to a debt of a similar amount due the plaintiff Josephine Carroll in unpaid supplemental alimony arrears. The compilations of fraud which can be demonstrated was aided by clerks of court, various members of law enforcement and the judiciary. The F.B.I. concurred with this assessment. The fraud includes false statements with fraudulent actions against the U. S. Government, theft of United States Treasury Funds, slanderous and libelous attacks, false arrests, kidnapping, mail fraud, theft, conversion, money laundering, extortion and embezzlement, blackmail, wire fraud, undue influence, coersion, criminal harassment, stalking, assault and battery, conspiracy, elder abuse, car theft and public records fraud, bank fraud, mortagage fraud, credit card fraud, identity fraud and many other felony actions including attempted murder upon an elder at age 73. The same malicious conduct was also directed against the son of the plaintiff Josephine Carroll named James J. Carroll, III, also a plaintiff at age 42.

III. The named defendants primarily James J. Carroll, Jr., Robert A. Costantino and John W. Gahan, III with their counselors, agents, cohorts, co-conspirators and or third persons, contrary to pre-existing Permanent Injunctive Relief and corresponding Permanent Order granted July 6, 1997 by Zobel, J. Cambridge Superior Court in case number 95-6545, intentionally defied said court orders and other preexisting court orders which legally prohibited the course of action taken by the defendants collectively as well as by associates in the system. The conspiratorial actions of the defendants has unlawfully deprived the plaintiffs Josephine M. Carroll and James J. Carroll, III the right to possess, maintain and hold all of their personal possessions unlawfully stripping the plaintiffs and those they were responsible to under pledge or contract from holding property as provided by law. Abuse of power was used at all levels which the defendants used as part to enforcement of the plot whereby town officials which were in part a former selectman and new town manager became owners of some of the stolen property on false documents with a former Belmont zoning attorney, depriving the plaintiffs of the use, the occupancy, the peaceful and quiet enjoyment of their home making both homeless, and stripping them of all heirlooms, clothing, food, legal records. The removal of private records violated the privacy act and other such provisions under the law and was a futile act to commit attorney spoilage in an active case, to invade privacy and capitalize on priveleged information, as well as destroy every conceivable thing in their lives causing massive losses and to again evade prosecution. Losses involve malicious property damage including loss of valuable timber, removal of custom buildings, removal of antique fixtures, renovations that have devalued the realty and damaged the structure and illegal development of real estate with the aid of the remaining defendants contrary to the law and orders of the courts. All involved were fully

6

apprised and defied the court orders which were superior and preeminent to anything the defendants claimed.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

IV. The home of Josephine M. Carroll located at 7 Oldham Road Arlington, Massachusetts, her home of [34] thirty four years which was her last and usual place of abode, was taken from her by criminal force through armed break and entry, strategized public records fraud, kidnapping of both plaintiffs and brutal assault against them violating their Constitutional and Civil Rights as well as Federal and State Law. Action occurred under color of law, whereby the home was robbed at gunpoint under the guise of a staged eviction without any proper notice while the defendant James J. Carroll, Jr. videotaped the assault for his trophy for the second time with the aid of the Office of the Middlesex Sheriff and their deputies and Arlington Town Officials as well as members of the local court system who refused to allow access to the courts. Primarily, such actions could not occur for reasons such as enumerable aforesaid, [reincorporated ], state and federal statutes, the Permanent Injunctive Order which Mandated No Contact, no theft or vandalism of property and no interference with property rights or liberties, none the less divorce awards in a final decree of divorce nisi decreed as absolute coupled with unmet legal obligations which barred any action of the defendant James J. Carroll, Jr. through numerous doctrines. The defendant James Carroll, Jr. never obeyed any order to make him legally accountable. The defendant James Carroll, Jr. refused to follow terms of a divorce decee and order amassing over $1 million dollars of non extinquishable alimony arrears under M.G.L. chapter 231 section 6 A, 6H and remains in Contempt of Court on several orders which were premier for equitable and enforcement purposes and occurred well before any action the defendant James J. Carroll, Jr. sought. The preexisting debt was bypassed in favor of fraud on one sided hearings without notice to dismiss contempts of court which are premier on unfounded relitigated matters already settled in the same court by in one matter the same judge after the judge received certified court orders that the same matters already dismissed in Probate Court were used a second time in Superior Court where the court ruled the defendant had committed felony crime, felony fraud on the court and denied due process of law as well as attorney misconduct only to repeat the same again in Probate. Legally, the actions were barred by res-judicata, but access to correct matters were thwarted to maintain the set agenda.

V. Both named plaintiffs assert that the defendants, jointly, severally and collectively violated the protected due process rights of each plaintiff by conducting a pattern and practice of criminally editing, falsifying and manipulating official court records and docket records, case files, including in the inception of filing[s] by false witness to create unfounded actions, false police reports and false logs, false public documents including forged deeds and or revival of the crimes reviving statutes of limitations on the prior crimes by reviving forged deeds [13] thirteen years after cancellation and after a divorce, depriving unsued owners of their property with false sheriff sale[s] on State protected Registered Land[s] which were free from criminal and civil trespass, false claims of right, intrusion and adverse possession. The actions comprise larceny and identity fraud.

7

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

VI. The defendants Robert A. Costantino, James J. Carroll, Jr. and John W. Gahan, III against permanent restraint continued to unlawfully take over the home of the plaintiff Josephine Carroll, [13] thirteen years after a divorce on a trust never sued, kidnapping the plaintiffs from their home by criminal force, public records fraud and conspiracy, implementing excessive force, battery and threat of deadly force with the use of deputy sheriffs as paid co-conspirators from the Office of the Middlesex Sheriff in conjunction with Triple M Movers and the other defendants collectively to then rob the plaintiffs of everything in their lives, denying access to their home and property to this day against a Permanent Injunctive Order, proper titles and divorce awards, as well as constructive notice to coconspirator John Gahan, III former Belmont Zoning Attorney who has received stolen property and maintains it is his property having justices like Julius Houston who was fully apprised aid and abeit crime as an accessory after the fact allowing injunctions for John Gahan, III to keep the plaintiffs away from their property by further trick and force as well as threats of arrest to further the plot. The actions by mere timing demonstate that this was another abuse through misuses of the system to allow Robert Murray and Brian F. Sullivan as co-conspirators to unlawfully destroy and develop the property to create a second home, making lot 93 b connected with 7 Oldham Road Arlington, another address of 9 Oldham Road Arlington, Massachusetts with a criminal trespass and a civil trespass on a false title with unlawful assertions against title, a tort against the land according to law, as well contrary to the obligations of the Attorney General of Massachusetts whereby title(s) were to be defended by state law, the courts and through the Attorney General of Massachusetts. The Attorney General had an obligation to protect the public, insure proper public records in the courts, in the Registry of Deeds and through the Town of Arlington and therefore refusing to act after reporting the issues to that office is neglect of duties under the law to allow a favored status to criminal conduct and deprivation of rights of the public. The plaintiffs have been intentionally setup and harassed for [17] seventeen years with a succession of malicious acts to deprive them of all of their Constitutional and Civil Rights and hide crime behind an appearance of legal proceedings through networking contacts, public records fraud and building a pyramid scheme of convoluted cases. The plaintiffs assert that the defendants networked with court personnel some of which have already been named in actions before the courts on the same conduct in other cases and continued a scheme of racqueteering and conversion. Some of the same court personnel, has been found involved in the falsification of papers, records tampering and falsifications of court tapes proven in another like case and noted in the media where some of the same individuals as court personnel have aided to commit the same or similar acts as in this case, unlawfully depriving the plaintiff Josephine Carroll of income and denying recovery of debt, while increasing debts to financially destroy her, cause mental anguish, severe emotional distress and effect her death. The plaintiffs assert that the scheme is open and notorious and is prima facie evidence that an illegal agenda existed to violate right and commit crimes against the United States and the plaintiffs to allow hostile strangers who are connected to the system to walk away with assets on false unfounded actions that are legally void. At the same time the defendants and their associates have shifted financial burdens, sizeable losses, impacting and shattering the lives of both plaintiffs.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

VII. The defendants used a false stricken Lowell District Court Judgement from case 93 Rm96 obtained through fraud and false pretense in a case riddled with fraud and conspiracy in a juristiction that legally could not bind the plaintiffs, repeatedly satisfying the alleged Lowell District Court judgement by default in several courts against prohibition by Permanent Injunction in a higher court, Superior Court in a proper juristiction, Cambridge. The alleged Lowell District Court judgement was used in a long list of convoluted actions built with successive fraud and crime with nonsensical papers, decisions, unlawful actions and claims prohibited by law and maintained by court personnel including some justices to end with a desired result contrary to law and preexisting orders, as well as many other factors barring relief or the course of action. The alleged judgement was initially stricken and voided by the entry of a Temporary Injunctive Order dated November 8, 1995 in Cambridge Superior Court by Smith, J. Said order was later made into a Permanent Injunction as of July 6, 1997 by Zobel, J. in Cambridge Superior Court.The permanent injunction was ignored continuing to use the Lowell Judgement from court to court to build upon and continue an appearance of legitimacy without leave of the court(s) in both Superior and Probate Court. The Superior Court Order maintained the status of all parties before the alleged judgement maintaining the status quo. The Probate divorce decree Nisi was final as of [90] ninety days and any alteration thereto would have required proper grounds to modify such as death, disability or loss of employment or a major change in circumstance. Any judgement to alter amend or modify preexisting Probate Orders would have had to occur through Probate Court first and contempts would have to be resolved first as one can not seek equitable relief without doing the same. A foreign juristiction court of an improper juristiction could not overstep or would be legally allowed to interfere with preexisting Probate Orders under the law and the rules of court (Dom. Pro.) especially when a defendant never followed any order of the court. Probate is a Court of Original Juristiction and foreign court orders can not be used in Probate for the following reasons ; District Courts do not handle family law issues ; Probate Court handles family law issues and has original juristiction over all other courts as to land, estates and divorce, paternity and custody issues. The Probate Court could not allow defeat of preexisting court orders and awards that were made final and absolute [13] thirteen years later on such circumstances and matters that contradicted both Federal and State law, especially when the defendant never modified orders in Probate Court, nor litigated matters that involved pre divorce issues that had already been adjudicated and would have been final except through an appeal. The defendant had appealed the divorce and was denied.

**UNITED STATES D₁₋ ſRICT COURT DISTRICT O₁ .ᴀASSACHUSETTS**

VIII. The courts can not favor one party to abridge all the rights and protections of the other
and thereafter open the door to a crime wave. In this case, this is what the defendant were
able to accomplish to then enact the use of criminal force, threats, battery, armed robbery by
deception, abuse of power, excessive force, threat, undue influence, vandalism, financial harm
and elder abuse, abuse of the process on legally void actions, to financially impoverish and
attempt the murder of the elder plaintiff Josephine M. Carroll, while equally attempting
to wrongly incarcerate James Carroll, III and depriving him of all his rights and property, as
he was an obstacle to the plot and thereby the defendants placed the plaintiffs in fear for
their safety and their wellbeing, as well as illegally unjustly enriched the defendants through
receiving stolen property with little regard as to who was the owner or how title was held. A
lifetime of work was wiped out taking property of all descriptions. Credit card fraud
and identity fraud followed through forged checks from checks taken from the
residence of the plaintiff Josephine M. Carroll in the robbery of August 5, 2002, which
alone would not be allowed in any alleged eviction and would be the responsibility of the
Middlesex Sheriff. As part of the scheme of unjust enrichment, theft and conversion, claims
include the unlawful withholding and converting of U.S. Treasury funds garnished for
alimony debt, unlawfully embezzled and money laundered under the guise of attachment and
escrow contrary to Federal and State Law a divorce decree and a Superior Court Permanent
Injunction. The fraud involves conspiracy with a Chief Probation Officer of Probate Court
defendant Brendan Callanan and an illegally appointed guardian defendant Charlene
Philbrick who unlawfully received $2400.00 of non attachable federal funds free from all legal
process and violated the rights of both plaintiffs.

IX. The fraud involves wire fraud and bank fraud with the defendant East Cambridge Savings
Bank who aided previously with theft of Trust accounts in Probate Court as well as tampering
with garnishments on fraudulent claims on a void falsified judgement, with unlawful
relitigation of claims, false statements to a government agency and with false court orders
following repeated rulings by the courts apprehending and admonishing Robert A. Costantino
and James J. Carroll, as well as Stephen Donnelly for their felonious criminal activity, fraud
and conspiracy for profit as well as felonious conduct for misleading and misusing the
courts on fraudulent unfounded claims. The plaintiffs have been denied any access to the courts
and have been prohibited their Constitutionally Protected Rights to redress, Equal Access to the
courts and Equal Protections under the law. The actions of the defendants collectively have
been malicious, intentional as well as wanton and reckless with premeditation and malice
aforethought in an effort deprive the plaintiffs from accessing their rights and property while
the defendants unlawfully destroy, exploit and disappate any available asset while blocking
remedies with unfounded court orders, successive Injunctions as unfounded actions, threats of
unlawful force and arrest along with sabotage and continue to exploit and withhold stolen
assets taken by force and trick while law enforcement and the defendant Attorney General
acquieses. Silence is assent under the law.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

B. **For Damages** - Defendants, in conspiracy with each other, deprived Josephine M. Carroll and James J. Carroll, III of due process of law and equal protection of the law in the Massachusetts State Courts, in various forums, with numerous individual, public defamation, libel and slander and destruction of credit in the Federal Bankruptcy Court abusing both plaintiffs and depriving both plaintiffs of their Constitutional and Civil rights which occurred to the date of entry of the Permanent Injunction and continued after for another eight years beyond it with continued unabated assaults, obstruction to justice and criminal and civil abuses ending in catastrophic loss in more ways than just financial. The defendants employed many types of felonious activity including kidnapping, false arrest and false imprisonment, illegal search and seizure of the person and property , assault and battery, armed robbery, conversion, trauma continued loss of liberties and all rights any U.S. Citizen as a free person should take for granted.

C. **For Pendant State Claims -** Defendants, by their actions intentionally interfered with the parent child relationship between mother and son impacting both plaintiffs and their contractual relationships with one another with criminal and tortious attacks against them and those entities they held legal liability with and or responsibility thereto. The defendant operated a long convoluted succession of harassing and unfounded abuses through privacy invasions, stalking, criminal harassment, threats, intimidation, extortion, coersion and undue influence, slander, libel, solicitation of co-conspirators to assault, batter and injure for payment, false arrests, false complaints, illegal access to credit reports, credit card fraud, forgeries, mortgage fraud, destruction of credit, increasing of expenses and unwarranted litigation with related costs, tampering and falsification of records, police invasions, break and entries, bugging, copying of keys, falsification of records, unlawful obtaining of creditor records including unlawful wire tapping and covert surveillance activities using, associates, police, deputy Sheriffs, Town Officials, realtors, solicitors, unsolicited mailings, unlicensed private eyes and each other.

<center>Juristiction</center>

2. Juristiction for this action is pursuant to 28 U.S.C. § 1331, as it deals with a civil complaint arising under the U. S. Constitution and the laws of the United States, more specifically, 42 U.S.C. § 1982 § 1983 § 1985 § 1986 and the 5 th and 14 th Amendments to the United States Constitution.

3. Juristiction on the pendant state claim is pursuant to 28 U.S.C. § 1367, as it is founded on essentially the same factual foundation.

4. The Commonwealth of Massachusetts, by virtue of Articles V and XI of the Massachusetts Declaration of Rights under Charter, has made itself accountable for suit in Federal Court, precluding immunity under the Eleventh Amendment if the United States Constitution.

<center>Parties</center>

5. Plaintiff Josephine M. Carroll (Josephine Carroll) is a natural person formerly domiciled at 7 Oldham Road Arlington, Massachusetts 02478, now legally homeless with an address of P.O. Box 1041 Windham, New Hampshire Rockingham County 03087.

<center>11</center>

6. Plaintiff James J. Carrol., .I (James Carroll, III) is a natural perso. .ormerly domiciled at 7 Oldham Road Arlington, Massachusetts 02478 with an address of P.O. Box 863 Windham, New Hampshire, Rockingham County 03087

7. Defendant James J. Carroll, Jr. (James J. Carroll, Jr.) is a natural person domiciled at 120 Great Road Bedford, Massachusetts 01730 with a business address as an Optometrist at 111 Munroe Street Lynn, Massachusetts 01902. He is sued as an individual and in his official capacity.

8. Defendant Joanne Carroll Deyoung (Joanne Carroll) is a natural person with domiciled at Green Mountain Trust Effingham, New Hampshire, Carroll County with a Trustee of George Foote at 15 Muzzey Street Lexington, Massachusetts 02421.

9. Defendant Richard Blair Carroll ( Richard Carroll ) is a natural person domiciled at 15 Hawkes Ridge Road Billerica, Massachusetts 01821

10.Defendant Eilleen Carroll (Eilleen Carroll) is a natural person domiciled at 15 Hawkes Ridge Road Billerica, Massachusetts 01821

11. Defendant law firm of Costantino and Mason is a Law Firm business at 19 Meridian Street East Boston, Massachusetts 02128 where Robert A. Costantino is named individually and in his official capacity.

12. Defendant Robert A. Costantino is a natural person (Robert Costantino) domiciled at 200 Orchard Lane Abington, Massachusetts 02351 with a business address at 19 Meridian Street East Boston, Massachusetts 02128. He is sued in individually and in his official capacity.

13. Defendant Sophia Costantino is a natural person (Sophia) domiciled at 200 Orchard Lane Abington, Massachusetts 02351. She is sued individually and in her official capacity with the defendant Robert Costantino.

14. Defendant law firm of Murtha, Cullina, Roche and Degiacomo, LLP, is a Law Firm business as a Limited Partnership at 99 High Street 20th floor Boston, Massachusetts 02110

15. Defendant John W. Gahan, III ( John Gahan, III) is a natural person domiciled at 7 Oldham Road Arlington, Massachusetts 02478 with a business address of 99 High Street 20th floor Boston, Massachusetts 02110.

16. Defendant Kathy Gahan (Kathy Gahan) is a natural person domiciled at 7 Oldham Road Arlington, Massachusetts 02478.

17. Defendant Thomas Vangel (Tom Vangel) is a natural person domiciled at 17 Arborwood Drive Burlington, Massachusetts 01803, with a business address of 99 High Street 20th floor Boston, Massachusetts 02110. He is sued in his individual and official capacities.

**UNITED STATES DIS ʀICT COURT DISTRICT OF ʟ.ASSACHUSETTS**

18. Defendant the Town of Arlington Board of Selectmen ( The Board ) is a board of elected officials under the Town of Arlington with an address of 730 Massachusetts Avenue Arlington, Massachusetts 02476. The Town as a Corporate entity and the selectman and or members as town officials are each sued in their official and individual capacities.

19. Defendant Charles Lyons (Charles Lyons) formerly Chairman of the Board of Selectmen is a natural person domiciled at 82 Hathaway Circle Arlington, Massachusetts 02476.

20. Defendant John W. Hurd (John Hurd) current Chairman of the Board of Selectmen, Town of Arlington is a natural person domiciled at 28 Colonial Drive Arlington, Massachusetts 02476.

21. Defendant Kathleen Keily Dias (Kathleen Dias) is a Selectman/Selectwoman in the Town of Arlington and is a natural person domiciled at 26 Addison Street Arlington, Massachusetts 02476.

22. Defendant Kevin F. Greeley (Kevin Greely) is a Selectman in the Town of Arlington and is a natural person domiciled at 363 Mystic Street Arlington, Massachusetts 02474.

23. Defendant Diane Mahon ( Diane Mahon ) is a Selectman / Selectwoman in the Town of Arlington, Massachusetts and is a natural person domiciled in Arlington address unknown, Town of Arlington address substituted at 730 Massachusetts Avenue Arlington, Massachusetts 02476.

24. Defendant Annie LaCourt ( Annie LaCourt ) is a Selectman / Selectwoman in the Town of Arlington, Massachusetts and is a natural person domiciled at 48 Chatham Street Arlington, Massachusetts 02476.

25. Defendant Robert Murray former Selectman for the Town of Arlington and is a natural person domiciled at 20 Mystic Valley Parkway Arlington, Massachusetts 02474.

26. Defendant Brian F. Sullivan is the Town Manager in the Town of Arlington, Massachusetts and is a natural person with an address of 9 Oldham Road Arlington, Massachusetts 02478.

27. Defendant John Maher is Town Counsel in the Town of Arlington and is a natural person domiciled at 990 Massachusetts Avenue Arlington, Massachusetts 02476 and a business address of 730 Massachusetts Avenue Arlington, Massachusetts 02476.

28. Defendant Frederick Ryan is the Police Chief in the Town of Arlington and is a natural person living in Acton, Massachusetts with a business address of 730 Massachusetts Avenue, Arlington, Massachusetts 02476.

29. Defendant David MacNamee Arlington Police Officer is a natural person with a domicile unknown and with a business address of 112 Mystic Street Arlington and or 730 Massachusetts Avenue Arlington, Massachusetts 02476. He is sued individually, in his official capacity.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

30. Defendant John Doe Greeley an Arlington Police Officer is a natural person with a domicile unknown and with a business address of 112 Mystic Street Arlington and or 730 Massachusetts Avenue Arlington, Massachusetts 02476. He is sued individually and in his official capacity.

31. Defendant John Doe Flynn an Arlington Police Officer is a natural person with a domicile unknown and with a business address of 112 Mystic Street Arlington and or 730 Massachusetts Avenue Arlington, Massachusetts 02476. He is sued individually and in his official capacity.

32. Defendant John Doe number 1 an Arlington Police Officer is a natural person with a domicile unknown and with a business address of 112 Mystic Street Arlington and or 730 Massachusetts Avenue Arlington, Massachusetts 02476. He is sued individually and in his official capacity.

33. Defendant John Doe number 2 an Arlington Police Officer is a natural person with a domicile unknown and with a business address of 112 Mystic Street Arlington and or 730 Massachusetts Avenue Arlington, Massachusetts 02476. He is sued individually and in his official capacity.

34. Defendant John Doe number 3 an Arlington Police Officer is a natural person with a domicile unknown and with a business address of 112 Mystic Street Arlington and or 730 Massachusetts Avenue Arlington, Massachusetts 02476. He is sued individually and in his official capacity.

35. Defendant Jane Doe Bassett number 4 an Arlington Police Officer is a natural person with a domicile unknown and with a business address of 112 Mystic Street Arlington and or 730 Massachusetts Avenue Arlington, Massachusetts 02476. He is sued individually and in his official capacity.

36. Defendant John Doe 5 an Arlington Fire Rescue Officer is a natural person with a domicile unknown and with a business address 730 Massachusetts Avenue Arlington, Massachusetts 02476.

37. Defendant John Doe Dube (Dube) doing business as Herbs Locksmith is a natural person with a domicile unknown and with a business address at 137A Massachusetts Avenue Arlington, Massachusetts 02476. He is sued in his individual and official capacities.

38. Defendant Richard Boyle ( Richard Boyle ) as Arlington Constable is a natural person, domiciled at 1 Mott Street Arlington, Massachusetts 02174. He is sued in his individual and official capacities.

39. Defendant James Granitzas ( James Granitzas ) doing business as We Haul Movers and Legal Movers is a natural person domiciled at unknown address on Nahant Avenue in Nahant, Massachusetts and has a business address at same address in Nahant and at 382 Ocean Avenue, Revere, Massachusetts 02151. He is sued individually and in his official capacity.

14

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

40. Defendants Jerrold Loomis (Jerrold Loomis) a Weymouth Constable doing business as Allstate Constables, Inc. with an unknown business address and a mailing address of Post Office Box 339 Weymouth, Massachusetts 02188. He is sued individually and in his official capacities.

41. Defendant David Lanata is a natural person doing business as Lanata Survey domiciled at 26 Lawrence Lane Arlington, Massachusetts 02474.

42. Defendant the Commonwealth of Massachusetts Office of the Attorney General, Thomas Reilly, a natural person has a business address of 1 Ashburton Place Boston 02108. He is sued in his individual and official capacities.

43. Defendant Office of the Middlesex Sheriff James Di Paulo Sheriff, is a natural person and has a business address of 40 Thorndike Street Cambridge, Massachusetts 02141. He is sued individually and in his official capacities.

44. Defendant Steven Donnelly is a Middlesex Deputy Sheriff, is a natural person and has a business address of 40 Thorndike Street Cambridge, Massachusetts 02141. He is sued individually and in his official capacities. The defendant is an identified agent that kidnapped, robbed and physically assaulted the plaintiffs.

45. Defendant Michael Faye is a Middlesex Deputy Sheriff, is a natural person and has a business address of 40 Thorndike Street Cambridge, Massachusetts 02141. He is sued individually and in his official capacities. The Defendant is an identified agent that kidnapped, robbed and physically assaulted the plaintiffs.

46. Gerrald Breen is a Middlesex Deputy Sheriff, is a natural person and has a business address of 40 Thorndike Street Cambridge, Massachusetts 02141. He is sued individually and in his official capacities. The defendant is a co-conspirator and may have been one of the agents who kidnapped, robbed and physically assaulted the plaintiffs.

47. Jane Doe is a Middlesex Deputy Sheriff, is a natural person and has a business address of 40 Thorndike Street Cambridge, Massachusetts 02141. She is sued individually and in his official capacities who is a co-conspirator, kidnapped, robbed and physically assaulted the plaintiffs.

48. Defendant Denise Deyoung is a Middlesex Deputy Sheriff, is a natural person and has a business address of 40 Thorndike Street Cambridge, Massachusetts 02141. She is sued individually and in his official capacities. The defendant is named as a co-conspirator and may have been Jane Doe defendant number 5.

49. Defendant Everett Murray is a natural person doing business as Triple M Movers at 1109 Montello Street Brockton, Massachusetts 02301. He is sued individually and in his official capacities.

**UNITED STATES DIS、RICT COURT DISTRICT OF ⸳⸳ASSACHUSETTS**

50. Defendant "John Doe" a unnamed locksmith with address unknown. He is sued as an individual and in his official capacity.

51.Defendant "John Doe" number 2, a unnamed Triple M Mover employee with address unknown. He is sued as an individual and in his official capacity.

52. Defendant "John Doe" number 3, a unnamed Triple M Mover employee with address unknown. He is sued as an individual and in his official capacity.

53. Defendant "John Doe" number 4, a unnamed Triple M Mover employee with address unknown. He is sued as an individual and in his official capacity.

54. Defendant "John Doe" number 5, a unnamed Triple M Mover employee with address unknown. He is sued as an individual and in his official capacity.

55. Defendant "John Doe" number 6, a unnamed Triple M Mover with address unknown. He is sued as an individual and in his official capacity.

56. Defendant Charlene Philbrick (Charlene Philbrick), is a natural person with a business address of 4 Courthouse Lane Building A, Chelmsford, Massachusetts 01824. She is sued as an individual and in his official capacity.

D. Due to the complexity of the action, and for judicial economy, the plaintiffs may require amendment of the complaint with the approval of the court to include or remove defendants, facts, related issues, requests for declaratory relief and requests by motion which in part are made herewith. The plaintiffs make this declaration and request to insure that such omission, inadvertance, alteration or mistake will not preclude the plaintiff from adequate remedies or recovery under the law. The plaintiffs are aggrieved by collective torts and crimes in a conspiracy to defraud the plaintiffs and deprive all rights and property regardless of the asset or ownership in matters that never enjoined the subject property contrary to a Permanent Protective Order, a divorce, fraud, a trust instrument and void litigation upheld to Obstruct Justice.

### Background Facts

57. The plaintiff Josephine Carroll was married to James J. Carroll Jr. In 1950, whereby she made many sacrifices to place him through school and establish his Optometric business including working 15 years in the joint business and buying the equipment.

58. On or about February 1988, the defendant James J. Carroll, Jr. filed for divorce in Middlesex Probate Court Cambridge, Massachusetts, docket number 86D 1651.

59. On or about August 25, 1989 the plaintiff Josephine Carroll and the defendant James Carroll, Jr. were divorced upon a final decree of divorce Nisi, with awards made, " absolute within [90] ninety days of decree" by Bowser , J. The parties as aforesaid were married [40] fourty years. Josephine M. Carroll was awarded 7 Oldham Road Arlington, Massachusetts, whereby the defendant James Carroll, Jr. objected.

16

60. On or about January 12, 1990, the defendant James Carroll, Jr. was ruled to have committed fraud upon the Middlesex Probate Court after exposing that he caused defendant deputy sheriff Steven Donnelly to be bribed double his arresting fee contrary to ethics statute and Corrupt Offers statute and caused the plaintiff adult son James Carroll, III to be kidnapped and seriously injured by the defendant Donnelly who had no arresting powers under statute. The court revealed that the defendant James Carroll, Jr. falsified vacated restraining orders to make them effective and pressed a violation before the court. The fraud was only a part of fraud exposed by a Chief Justice who intervened. James Carroll, III was never a party in Probate Court, but he was deprived of his Constitutional Rights, deprived medical treatment and falsely imprisoned as well as many other torts. The plaintiff James Carroll, III had his trust account stolen through Probate Court by court order in an unconnected divorce of his parents, whereby not only his property was unlawfully seized, but his person against both the Gift's to Minor's Act and a "Writ of Protection" in Probate Court.

61. Upon intervention by the Chief Justice, exparte communications between the defendant James Carroll, Jr. and the trial judge, as well as improper valuations, hidden bank accounts and forged deeds mid divorce making non marital property subject to divorce. The intervention of the Chief Justice stopped conveyancing of Real Estate with prejudice, as the actions were prohibited by law, whereby the defendant who legally could not interfere with title created a false title on the real estate he was living in with the aid of counsel, held by his former spouse, the plaintiff Josephine Carroll. Through investigation mortgage fraud was found on a concurrent title in the name of the defendant James Carroll, Jr. alleging the defendant James Carroll, Jr. remained married to the plaintiff Josephine Carroll in 1996 on one of [2] two forged deeds placed into her name.

62. The plaintiff Josephine Carroll raised [3] three children with the defendant James Carroll, Jr. The [3] three children are ; James J. Carroll, III, Richard Blair Carroll and Joanne Carroll (Deyoung through marriage).

63. The defendant James Carroll, Jr. believed that all assets were solely his regardless of how the assets were created, regardless of how the assets were titled or how assets were retained and or maintained. The defendant James Carroll, Jr. refused to support his longtime wife never releasing control over her person and affairs when in fact both exhusband and ex-wife were legally strangers by law once divorce. The defendant was divorced and evaded obligations for his own affairs owing a non extinquishable debt of over $1million dollars plus by statute. The size of the debt alone precluded the actions of the defendant and his counsel which intentionally exploited any opportunity to the fullest extent possible. The criminal and civil tortious abuses against the plaintiffs followed the divorce and subsequent Permanent Injunction and continue to date, after reprimand by Justice Zobel and Justice Quinlan there is no defense for the actions that continued unabated. The fabricated Lowell judgement comprises the Artifice or device to conduct crime and defeat all law and legal obligations and protections to build crime and deception upon under the guise of litigation and law which never had proceedings which never were completed to allow any actions by the defendants.

17

63 a. The false staged litigation was designed to not only impoverish and abuse the plaintiffs, but to harass, and deny them any normalcy to effect the most disruption and emotional trauma, mental anguish and hardship that could be obtained, but to then continue the abuses by any means possible to maintain a coverup after overwhelming the plaintiffs and walking away with all assets with the aid of many others within the same system who had intentionally neglected their duties to investigate, protect the rights of the plaintiffs or defend the law because they were an integral part of the crime to make the plaintiffs feel powerless and believe that there was no chance of accountability the defendants collectively could obstruct justice. The facts as aforementioned and through this complaint inclusive of this paragraph formulate the basis of the complaint. The defendant James Carroll, Jr. contrary to divorce awards and his legal obligations without proper redress, continued to remain in contempt of court and instead chose actions to make a mockery of law and the system of justice and thereby defeated all court orders enlisting any party who would aid him on his agenda for a gratuity. At least one of the attorneys the defendant James Carroll, Jr . sought assistance from was proven to be as unethical as those who have aided the plots in this complaint. That attorney was one individual who was caught in other schemes of fraud and criminal activity and thereby was caught, prosecuted and jailed. The defendant James Carroll, Jr. who had appeared to maintain high standards when he was married to Josephine Carroll, has now been found to have a myriad of complaints by the public and a criminal record. The conduct of the defendant James Carroll appeared to demonstrate abuses against women including his wife immediately preceding divorce. The irrational and obsessive behavior was seen as an opportunity by those defendants who wanted to profit from all sides manipulating a situation and walking off with assets in the midst of the controversy they helped to create and maintain. Each defendant joined in for their own gain or position being fully apprised of all the facts and being aware that the actions which they aided could occur by law, but the defendants were undaunted because as the defendant Robert Costantino declared, quote, "It, has all been decided and you won't get anywhere." unquote . The obsession of the defendant James Carroll, Jr. has been used by his counselors and other agents for their agendas jointly and severally aiding in conspiracies of conversion, slander, libel, assaults and batteries, abuse of process, privacy invasions, obstruction of justice, attempted murder, mahem and a long list of felony crimes including elder abuse. The defendants commit perjury before the courts with little concern because of the networking involved and due to relationships in the system.

18

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

64. On or about February 1989, the defendant James Carroll, Jr. violated [2] two restraining orders ; [1] one in the Middlesex Probate Court ordering no contact with the plaintiff Josephine Carroll and not to remove property from her residence 7 Oldham Road Arlington, Massachusetts. The second [2] nd, restraining order was a 209A in Cambridge District Court. The defendant, criminally trespassed, pre- divorce decree, broke and entered the residence of the plaintiff Josephine Carroll by forced entry. Arlington Police sought charges against the defendant James Carroll, Jr. after presenting manuals, receipts and repair slips on newly purchased equipment after the defendant James Carroll, Jr. had moved from the marital home. The stolen property was found in the possession of the defendant James Carroll, Jr. which was a lawn mower and snow blower. Both items were found chained to a hot radiator pipe with each item filled with gasoline, boxes of papers mountains high in the property making a fire hazard endangering the defendant and the property held by Josephine Carroll as trustee. Arlington Town Counsel John Maher, defendant, after being allegedly threatened with a $10,000.00 per day fine by attorneys for the defendant James Carroll, Jr. unlawfully returned stolen property to the defendant whereby the charges were allegedly dismissed .

64 a. The charges were dismissed because of an alleged defect in the warrant by Arlington Police. The fault for dismissal was either an intentional act, a gross mistake or a faulty work by Police, but the liability remained with Town of Arlington. Cambridge District Court referred the case to Probate Court where the court ruled in favor of the plaintiff Josephine Carroll, this fact although the property was actually purchased by the son. To avoid the issues, the defendant James Carroll and his attorneys claimed that the seized property which matched serial numbers on manuals held by the plaintiffs Josephine Carroll and James Carroll, III and was new, was intentionally misrepresented as former marital property that the defendant took with him when he initially moved from the marital home. No explanation was given for repair receipts on the same items after the date of separation paid by the plaintiff James Carroll, III with checks to a local Arlington vendor. No explaination was given for receipts and letters from store managers who remembered the purchases due to other problems. Instead, a court clerk acted hostile and biased favoring the attorney for the defendant and allowed dismissal on pure hearsay. The same clerk was later prosecuted for shared kickbacks of payments to him and police on individuals arrested and made to pay bail when this clerk acted as a bail bondsman. Coincidentally, this same clerk was a resident in the Town of Arlington and had regular contact with Arlington Police through a Cambridge Court.

64 b. The defendant James Carroll, Jr. was thereafter ordered by Probate Court to return the property stolen from her home to her, but James Carroll, Jr. never complied and remains in Contempt of court. All property was not recovered, as the defendant disposed of some of the property claiming he never possessed it on the basis it was not found. The items were seen in the property through a window prior to police acting. The son defendant Richard Carroll, aided the defendant James Carroll, Jr. in the disposal of the property. Richard Carroll once again is involved in the most recent events in August of 2002, receiving stolen property. Bedford Police concerned about the safety of the defendant James Carroll, Jr. and the welfare of the property owner, the plaintiff as well as the property itself contacted Elliot Community Mental Health and The Bedford Fire Department. Bedford Fire Department ordered cleanup and the defendant grudgingly complied and retalliated thereafter.

65. The defendant James Carroll, Jr. followed the aforesaid actions with a rampage in the local newspapers venting that he received a poor division and falsifying many facts, filing petitions for bills for mediation on divorce when he would not follow court orders. He filed enumerable unfounded complaints against his wife and son for the sole purpose of harassment and building a record, impoverishing them both and violating their rights with whomever would aid him. The list of dismissed and harassing actions exceeds [22] twenty two complaints alone against the plaintiff son James Carroll, III alone. Enumerable meritless actions were sought against the plaintiff Josephine Carroll including false claims of shooting shot guns whereby events involving guns at the home of the defendant James Carroll, Jr. were found to have caused his neighbors to contact police. The defendant James Carroll, Jr deliberately transposed these events against his wife and later his son to create false claims to obtain unwarranted relief, criminal restraining orders for false records and as devices to attack his former family members to build upon and to access assets he was not legally entitled to hold or distribute to others. The abuses of the defendant James Carroll, Jr. against his exwife include unsolicited mailings with invoices for payment, book track tapes entitled "Living Ragged", vandalism, false criminal complaints, false civil actions and totally distorted facts and events to elevate his position, misrepresent facts and documents and cause confusion while the defendant James Carroll, Jr. and others exercised criminal force to walk away with assets he legally was not entitled to hold. The defendant was formerly prosecuted for the same conduct of fraud and abuse by the U.S. Postal Service for literally sending Truckloads of unsolicited mail to his postal supervisor.

66. Post divorce in 1990, after leaving the plaintiff Josephine Carroll in tax title due to non support, aided by the court and the divorce attorneys. The Town of Arlington attempted to immediately foreclose to seize the total value of the real estate for [3] three years of taxes. The plaintiff resolved one issue only to encounter another, whereby the tax assessment was austensibly raised on the sole word of a disgruntled divorced spouse, the defendant James Carroll, Jr, per admission of the Tax Collector Mr. Bilafor who without proof readily assisted the defendant as a conspirator to harm the plaintiffs on solely his word. The overstated evaluation then had to be corrected, as it was super inflated. The defendant Town of Arlington then followed this action by improving the private way contrary to law. The law states those responsible for improvement of the way and who bear the cost of the improvement, especially on registered land own the way, but Arlington claimed that [13] thirteen residents with only twelve homes and [3] three dissidents accepted the improvement of the way at town meeting. The fact was that if this was true, [4] four people who had no connection as property owners on a private way (private property) approved a betterment illegally which the town ignored and the town acted on Fraud and caused a civil and criminal trespass contrary to law for a preconceived agenda. An increased tax bill was sent to the plaintiff Josephine Carroll which also benefitted the town for added revenue when no amount would be given for costs of the improvement per resident. The residents were forced to pay for the betterment against objections of the major land holders on the private way who shared interests as tenants in common on registered land.

20

# UNITED STATES DIS. .ICT COURT DISTRICT OF I. .SSACHUSETTS

66 a. Registered Land does not allow ; any form of trespass ; adverse possession ;
prescriptive easements; adverse claim or interference with title ; interference with the
Peaceful and Quiet use of the property interfering with the land holder. Unnecessary
improvement to the way was added as a burden to the land and tax obligations were
increased as one more harassing attempt to burden the plaintiff Josephine Carroll. The
defendant Town Board and Town Counsel as well as many other Town Members were
cognizant that Josephine Carroll was divorced, financially saddled which the defendant
made known to everyone, where members of the defendant Town exploited a family trajedy by
aiding the defendant James Carroll, Jr.

66 b. The defendant Board created a criminal and civil trespass upon the land and action was
designed to allow unbuildable lots to become buildable followed by development of 11
Oldham Road up to lot lines contrary to objections of 153 residents and contrary to zoning law
and deed restrictions. The developer openly admitted he was working with the defendant James
Carroll, Jr. and would do anything to obtain her home. The new neighbor admitted he
was one of several who wanted to buy the property when the defendant James Carroll,
Jr. illegally placed the home up for sale which was objected to by rulings in Probate Court,
as well as occurring without having legal title during divorce. The problems with associates of
the new neighbor who held ties with the Town of Arlington and his associates including
Arlington Police followed causing Judge Robert Bohn and Judge Obrien to restrain the
aggressors in Cambridge Superior Court.

67. On or about April 1990, the defendant James Carroll caused his counsel to contact the
Office of Personnel Management in Washington, D. C. and coersed an OPM employee to
stop all basic alimony payments contrary to Federal Law 42 U.S.C. Title V 8346 (a), a divorce
award and court ordered garnishment. Justice Rockett of Middlesex Probate Court sanctioned
the attorney who denied due process of law to the plaintiff Josephine Carroll and reinstituted
basic alimony. The defendant James Carroll, Jr. never met his obligations failing to make any
supplemental alimony payments per the divorce decree amassing a very sizeable debt according
to M.G.L chapter 208 section 34 and M.G.L. chapter 231 section 6 A and H.
The abscense of any equity by the defendant James Carroll, Jr. legally precluded him from
pursuit of any equitable relief under the clean hands doctrine and estoppel doctrines both
collateral and promissory.

**UNITED STATES DIS i _ iCT COURT DISTRICT OF N   SSACHUSETTS**

68. On October 20, 1990 the defendant James Carroll, Jr. filed an action in Lowell Superior Court as case number 95 - 6587 against The Bedford Police, Elliot Community Mental Health, Josephine Carroll and James J. Carroll, III, but oddly, not Arlington Police who were the start of the alleged events. The defendant James J. Carroll, Jr. alleged police abuse, constitutional rights and civil rights abuses. The defendant Robert Costantino intentionally misrepresented facts. The plaintiffs Josephine Carroll and James J. Carroll, III  wanted nothing to do with the defendant James Carroll, Jr. He transferred his conduct alleging the same against the plaintiffs. The defendant James Carroll, Jr. alleged false commitment which was not plausible as the plaintiff Josephine Carroll was away in Florida and she was dependant upon him for alimony. The plaintiff James J. Carroll, III and many other disinterested persons noted a succession of events around 7 Oldham Road on a Private Way with posted no trespassing signs under M.G.L. chapter 266, section 120 D and other such statutes on registered land as provided by M.G.L. chapter 184 and 185. Officers made issues about the signs and thereafter, the signs were found torn down. Signs were reinstalled. The actions that followed demonstrated to many disinterested parties that criminal stalking, privacy invasions, strategized breaks and entries, police harassment and malicious damages with controversies aided by Town employees and their associates including the new neighbor who was found to be colluding with the defendant James Carroll were all connected and thereby involved the defendant James Carroll, Jr.

68 a. There is a long list of events that always included the same individuals, especially the defendant James Carroll, Jr. The list of the events is too numerous to list all events, but many involve unwarranted stops, threats by police, police following the plaintiffs around Arlington, noted by residents, police posted around the property on excuses of speed traps, frequent drivebys, acting as process servers, threats, intimidation, the taking of fingure prints without a crime, photographing by Officer MacNamee of James Carroll, III in his underwear after a false arrest to humiliate him, copying of keys, etc. As a result of the defendant James Carroll, Jr. colluding with individuals in the town of Arlington he attempted strategies with his attorneys and others to abuse the defendants. It is evident that between the rampant abuses involving the Town of Arlington and the fact that the defendant James Carroll, Jr. did not include them in the suit in which they would have been part indicates and arrangement which is obvious at the conclusion of events. The action before Lowell Superior Court in case 90 - 6587 focused on events that the defendant James Carroll, Jr. initiated against court orders and therefore, was the proximate cause. The defendant James Carroll, Jr. relitigated pre-divorce decree issues in the suit that were already tried and settled, past statutes of limitations, past appeals in a court other than Probate, as well as other issues already adjudicated. Res-judicata and proximate cause doctrines applied, but the court ignored these facts including that a divorce matter had concluded and Probate Court would have to be involved in the matter which never occurred, as no trial was initiated through Probate and handled in the a the proper juristiction.

68 b. Numerous problems began to result with the Town of Arlington trespassing against requests not to trespass where excuses were made that access may have been necessary to access other locations. Many other streets existed for access.The defendant Town of Arlington through Police made a false police file based on assertions by the defendant James Carroll and Joanne Carroll Deyoung who had not lived in Arlington for many years conspiring to harm the plaintiffs. The police aided in false arrests and unwarranted stops of both plaintiffs without probable cause passing the blame to the defendants James Carroll, Jr. and his cohorts when the police and Town Officials actively aided these defendants. Ultimately, each complaint in court coinsided with actions of the defendant James Carroll, Jr., the defendant Town of Arlington and or actions of individuals found to be colluding with the defendant James Carroll, Jr. The Arlington police and town officials would pass off all issues, regardless of how criminal they were, as civil matters for the plaintiffs to resolve, but to the contrary for the defendant James Carroll, Jr., as a non resident, he was aided carte blanche with all endeavors, some of which appear to be for payment or other gratuities which includes Town Officials receiving stolen property through a myriad of vexations litigation that legally is all a nullity and void by law.

69. On or about September 1993, the Lowell Superior Court ruled in case 90 - 6487 that the main defendants the crux of the case were dismissed without fault. Therefore, the case was a dead case and thereafter was remanded to the lower court when all defendants should have been dismissed.

70. On or about November 1993, the Lowell Superior Court case was remanded to Lowell District Court. The case was actually found to be "dismissed" thereafter on Time Standards, but through many elements of fraud including changing dockets, adding entries and changing amounts all was made to appear active and legitimate much like the events noted in January 1990. [ Paragraph 60, reincorporated, Emphasis]

71. On or about September 1994 the defendant claimed to obtain a $561, 175.30 judgement in the Lowell District Court by Pearson, J. This amount has repeatedly been changed to substantiate fraud, public documents fraud, theft of real estate, and all other available assets causing staggering losses. According to state statutory limits and District Court rule 9 damages were not to exceed $25,000.00 and would have been pleaded to nominal damages. The suit was filed in Northern Middlesex County, but the parties were from Southern Middlesex and actions affecting the land were the same. The property was held by Oldham Road Trust, but Oldham Road Trust was not named in any suit including Lowell Superior Court and Lowell District Court remand.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

72. An employer of the plaintiff James Carroll, III was found by the defendants James Carroll, Jr. and defendant Robert Costantino after privacy invasion through court credit reporting systems and illegal use of social security numbers, creditor invasions posing as a party with right to information, unauthorized requests to Internal Revenue posing as James Carroll, III ( identity fraud ) and wire tapping, as well as stalking with the use of listening devices after unlawful breakins to the home of the plaintiff Josephine Carroll at 7 Oldham Road Arlington. Events were reported to police as were witnessed by neighbors. Once the employer of the plaintiff James Carroll, III was found where he held a position as a Senior Officer, damage to his vehicles followed. Stalking, loitering on business premises followed with unidentified individuals which were also encountered trespassing at 7 Oldham Road Arlington, with no concern to police. The employer could only be found through tax information through the Department of Revenue, whereby defendant Robert Costantino subpoenaed employment records of the plaintiff James Carroll, III at the new employer, [28] twenty eight days after start of employment. Criminal police harassment followed from Waltham Police, initiated per their admission by an Arlington Police Sargeant defendant David MacNamee, whereby Waltham Police openly disemminated false liabelous and malicious derrogatory complaints against the plaintiff James Carroll, III upon a Federal Employer. False complaints were from Joanne Carroll Deyoung and James Carroll, Jr.

73. On or about July 1995, the Director of Sallie Mae, a Federal facility, was so enraged by the harassment and disruption to business, that she made a formal complaint to the Mayor of the City of Waltham due to daily police vigils and harassment. The attempt by the defendants collectively was to financially harm the plaintiff James Carroll, III and ultimately Josephine Carroll, thereby defaming , libeling and slandering him in public and to interfere with the employer / employee relationship as well as destroy the reputation of the plaintiff causing him extreme emotional distress and loss. Neighbors of the plaintiffs claimed that an Arlington Police Officer Flynn was making very derrogatory claims openly to them and others which mimicked these complaints. Basically anyway the plaintiffs could be forced out of their home and destroy them was at work. The false complaints served on the employer were later dismissed because they were fabricated. These actions caused ; the plaintiff James Carroll, III monetary loss ; prevented him from taking a final exam; cause loss of liberty from Arlington Police actions ; a loss of an entire semester, causing him to drop out of College ; loss of pursuit of happiness, a career and life of his own. James Carroll, III was never allowed to return to college and rebuild his life due to the aid and acquiesence of Arlington Officials, their police and the defendant Attorney General who allowed crime to flourish when it was repeatedly reported to both. The continued abuses to James Carroll, III and his elderly mother Josephine Carroll increased the responsibilities of James Carroll, III and strained his finances and savings as well as caused both severe mental anguish, anxiety and extreme emotional distress as they experienced living like hunted animals.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

73 a. On on about September 18, 1995, the events caused by Arlington Police prohibited the plaintiff from taking his mother to the hospital per her request, placing her life in jeopardy, as she suffers from a heart condition. She had reported to James Carroll, III that she felt ill and therefore requested transport to the hospital by him which then allowed Arlington to note his presence and falsely arrest, detain and imprison without probable cause, including any legal basis as the alleged restraining order violation was fabricated and the restraining order unserved. These actions denied the plaintiff James Carroll, III freedom of movement and a denial to seek life, liberty and a pursuit of happiness. This event and many others were elements of an unrelenting on going pattern and practice to deprive the plaintiffs of their rights and property continuing the running of the statutes of limitations to this day as regardless of Permanent Protective Orders, complaints, awards and restraint, the collective defendants have intentionally defied all orders of the courts to make the law what they wish and in t he process make a mockery of justice under a myriad of convoluted fraud and legally void litigation and related rulings compounded by false unsigned orders and maintained positions, based upon denial of due process commingling of rights, responsibilties and property on successive fraud and by pass all protections and rights under the color of law.

74. On or about September 1995, the plaintiff James J. Carroll, III was stopped by Arlington Police without probable cause, detained, falsely arrested and imprisoned. The plaintiff was detained and arrested on an unserved restraining order obtained by the defendant James Carroll, Jr. and his counsel the defendant Robert Costantino from Pearson, J. in Concord District Court. The issue was reported directly to justice Pearson who found the abuse amusing, after reporting her on previous judicial misconduct. The defendant arranged a restraining order for the plaintiff Josephine Carroll to coinside with her birthday. The plaintiff James Carroll, III was detained for over the allowed [1] one hour in a jail cell that was filled with an overwhelming smell of urine, later making him ill for days. He was transported to Cambridge District Court whereby Sherman, J. apologized to the plaintiff James Carroll, III and advised him to see McGill, J. in Concord Court. At Concord Court it was proven that a false police report was made to cause a false arrest (Proven before Justice Paul McGill). The arrest occurred without service of the 209 A, a requirement by law. The Assistant D.A., a Miss Moffet was pursuing an uno warranted criminal complaint without merit on an alleged violation which was nothing more than a set up and kidnapping. At Concord Court the defendant Robert A. Costantino advised the court that quote, "James Carroll, III was arrested for his civil judgement", referring to the Lowell District Court remand. The News Media investigated what they saw was a criminal exploitation of an innocent victim. The Bedford Police who initiated the criminal complaint claimed the fault relied upon the District Attorney who was pressing the unfounded complaint. Due process was denied the plaintiff James Carroll, III and was a criminal attempt to eliminate James Carroll, III physically, financially and to give him a false criminal record, as well as falsely imprison him to allow attack of the plaintiff Josephine Carroll and her estate. These events followed privacy invasions of many descriptions.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

75. On or about June 1, 1995 Josephine Carroll made an inquiry to Office of Personnel Management Washington, D.C. to determine why she did not receive her basic alimony payment. Without notice for the second time, OPM informed the plaintiff Josephine that all payments were delivered to Middlesex Probate Court per Court Order to allow attachment contrary to Federal and State Law under 18 U.S.C. §1341, 1346. Falsified Service was found with a perjured affidavit from a former Process Service posing as an active official, a crime. The plaintiff Josephine Carroll was made penniless unlawfully contrary to M.G.L.chapter 208 section 34, M.G.L. chapters 206, 207, 208, 209 and 209A, 19A, sec. 14-26.

76. On or about November 1995 the plaintiffs Josephine Carroll and James Carroll, III motioned Lowell District Court to vacate a default on what was initially believed to be a valid case. The action was found to be riddled with fraud and conspiracy following a removal of default by Melahn, J. The record was again falsified to make an appearance of legitimacy and a hearing staged across counties contrary to the rules whereby the plaintiffs Josephine Carroll and James J. Carroll, III were denied their day in court.

77. On or about November 8, 1995, after reporting the continued criminal abuses to the Cambridge Superior Court, a Preliminary Injunction of No Contact, no theft or vandalism of property and no interference with liberties was ordered by Smith, J.

78. On July 6, 1997, Cambridge Superior Court, case 95 - 6545, the Honorable Hilliar Zobel entered a Permanent Injunction in favor of Josephine Carroll and James J. Carroll, III ordering the defendant James Carroll, Jr. to vacate the real estate he occuppied which legally was held by the plaintiff Josephine Carroll. Justice Zobel chastized defendant Robert A. Costantino and defendant James Carroll, Jr. calling them "gorrillas and guerrillas" [Emphasis] and ordering that they no longer interfere with the plaintiffs Josephine Carroll and James Carroll in any way. The entry of the order of the higher court had stricken use of the alleged Lowell Judgement by default. Justice Zobel stated to defendant Robert Costantino, quote, "You are trying awefully hard are'nt you counselor?" and thereby asked counsel for the plaintiffs why the defendants were not criminally prosecuted. The Court has never changed the order. The order was assessed against James J. Carroll, Jr., Joanne Carroll Deyoung, their counselors, agents and third person(s). Violation is a criminal offense.

26

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

79. June 1998, after the plaintiff Josephine Carroll was made unlawfully destitute for (3) three years, the Middlesex Probate Court through Hygas, J. released the U.S. Treasury Funds which had been illegally diverted to the East Cambridge Savings Bank and unlawfully placed in the name of James J. Carroll, Jr. The Chief Probation Officer Brendan Callanan refused to obey the Probate Order of Release, delaying the plaintiff while he arranged in conspiracy with the defendant Robert Costantino, another unnamed attorney along with the defendant James Carroll, Jr. to convert U. S. Treasury money free of all legal process into a check form for conversion money laundering and embezzlement with the aid of the East Cambridge Savings Bank making themselves "Trustees" without legal right. The bank held the funds in their vault for easy access. The attorneys appealed the Probate case and were denied. The attorneys proceeded with an exparte attachment in Lowell Superior Court relitigating the same issues in another court without service. The actions constitute fraud against the Federal Government based on false statements and fabrication to wrongly steal and divert accumulated Federal Funds under 18. U.S.C. A§666, 18 U.S.C. A§201, 18 U.S.C. §1956, 1957, 18 U.S.C. A § 371 and 18 U.S.C. §1344.

## Fraud

80. June 1998, in Lowell Superior Court case 98 - 02825, the defendant Robert A. Costantino mislead the Honorable Regina Quinlan into allowing an attachment on the voided alleged Lowell judgement contrary to the Superior Court Permanent Injunction which was to stop all contact and interference by the defendants. The defendants used selected facts and withheld pertainent court orders to commit fraud on the court. The defendants repeatedly operated actions in juristiction[s] that legally could not bind the plaintiffs as well as falsified service and tampered with U. S. Mails contrary to Federal Law to stage defaults on returned mail. Mail Fraud and Wire Fraud applies.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

Relitigation on Fraud to Defeat Probate Orders
Fraud on the U.S. Treasury
Contempt of Court Ruling of Fraud on Court
Cambridge Superior Court

81. On August 8, 1998, at Cambridge Superior Court in case 98 - 2825, upon a Motion for Reconsideration, the Honorable Regina Quinlan became enraged that the attorneys including the defendant Robert Costantino with the defendant James Carroll, Jr. misled her and nterfered with the pendancy of another action, a Probate Order of Release. Her honor cited that the defendants aforementioned were in Contempt of Court on the Permanent Injunction, misused the juristiction of the court on non attachable Federal Funds free of all legal process and caused the Superior Court to wrongly exercise juristiction over alimony which it could not by law, because Probate Court was the proper juristiction and alimony was non attachable by law. Her honor also was furious that the attorneys used selected facts, were in conspiracy with the bank and the Chief Probation Officer and that they falsified Service denying the plaintiff Josephine Carroll due process of law. She cited that the defendants wrongly enjoined James J. Carroll, III into a matter involving alimony to which he had no connection violating his rights and committing felony fraud, conspiracy to defraud as well as elder abuse on Josephine Carroll. She noted violation of the rights of James Carroll, III and fraud upon the Federal Government, as well as the Superior Court. Justice Quinlan imposed sanctions with prejudice writing a written complaint to the Board of Bar of Overseers and the District Attorney. Neither entity received the complaint which was to be mailed the same day. The record was falsified to appear with medical terminology and claims that sanctions were dismissed one month later on a mere apology to justice Quinlan when orders were " with prejudice" and complaints are sen t out the same day. Neither the D.A. nor the B.B.O. received the complaints and sanctions.

Relitigation of Dismissed Issues in
Probate Court

Illegal Search and Seizure of Person and Property

82. On October 7 - 24, 1998, the defendant James Carroll, Jr. the defendant Robert Costantino and their associates including the Chief Probation Officer who testified, a conflict of interest, conspired together to relitigate the same issues in Middlesex Probate Court Cambridge before the late Hygas, J. after Hygas, J. was provided certified court copies of the events in Superior Court case 98 - 02825. Matters that had been already dismissed were reheard unlawfully reheard to defeat contempts that are premier and divorce orders which were never obeyed. Pending Contempts which come before Modifications were dismissed on falsified service and on one sided hearings. By the rules of Domestic Civil Procedure, District Court judgements regardless of merits can not be used in Probate. The issues were legally barred by res - judicata, fraud, clean hands, estoppel doctrines.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

83. The defendant James Carroll, Jr. amassed over $1 million dollars of alimony arrears under M.G.L. chapter 208 section 34 and M.G.L. chapter 231 section[s] 6 A and 6 H. which was a barrier to any alleged debt or recovery under clean hands, promissory and collateral estoppel as well as proximate causation. This fact and other factors of jealousy, hatred and spitefulness along with opportunity for unjust enrichment an accumulated debts were motives for the defendant James Carroll, Jr. to pay others to co-conspire in a scheme of major fraud and crime. Although these issues were repeatedly presented to the court, the plaintiff Josephine Carroll was intentionally sabotaged and prejudiced to keep her at a financial disadvantage to commit abuse and financial exploitation of an elder contrary to M.G.L. chapter 19A, sections 14 - 26 inclusive. The defendants committed perjury upon the court contrary to M.G.L. chapter 268, section 1 by having the court officer testify that the plaintiff Josephine Carroll told him she was ill. No such conversation ever occurred between the plaintiff Josephine Carroll and the Chief Probation Officer Brendan Callanan. A guardian was unlawfully appointed to usurp the rights of the plaintiff Josephine Carroll and that of James Carroll, III to embezzle the estate [9] nine years after divorce when no requirement of statute was met in accordance with M.G.L. chapter 206 section 7 which requires specific conditions including a medical certification which never occurred. The plaintiff Josephine Carroll adamantly contested the appointment as did her physician. Basic alimony was once again escrowed and diverted to a Probate Court account again placing the rights, welfare and responsibilities of the plaintiff Josephine Carroll in jeopardy abridging her Constitutional and Civil Rights contrary to M.G.L. chapter 208, sec. 34. Defendant Charlene Philbrick was advised by telephone and in writing that she would not be accepted.

<div align="center">Unlawful Guardian Habeas Corpus</div>

83 a. The defendant Charlene Philbrick was informed she was interfering with the choice of counsel of the plaintiff as well as her right to be free from unlawful restraint, illegal search and seizure of a person and their property and a right to be free from interference and intrusion by government or any other party which would deprive her of her Constitutionally protected rights including her right to privacy in her home and with her person. The defendant Charlene Philbrick refused to acknowledge the Constitutional Rights and Civil Rights of Josephine Carroll and also attempted to abridge the rights of James Carroll, III. The actions of the defendant Charlene Philbrick were a connected part of an ongoing Ponzi scheme or pyramid scheme to interfere the rights of both plaintiffs Josephine Carroll and James Carroll, III and to interfere with the contractual rights of each other in their respective estates. The defendant Charlene Philbrick was advised that the plaintiff James J. Carroll, III held a power of attorney for Josephine Carroll and that the defendant Charlene Philbrick in conspiracy with the other named defendants was interfering with the mother-child blood relationship and many other issues including contractual rights. The defendant insisted upon forcing herself upon the plaintiff Josephine Carroll against protest, trespassing with an unknown Arlington Police Officer at her home against prohibition contrary to M.G.L. chapter 266, section 120 D and constituting a criminal and civil trespass and or attempted kidnapping.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

Fraud Against the U.S. Government
Wire Fraud Bank Fraud Theft

83 b. The defendant Charlene Philbrick accepted payment through the Chief Probation Officer for $2400.00 from the Federally non attachable U.S. Treasury Funds contrary to 42 U.S.C. Title V , 18 U.S.C. A §666, 18 U.S.C. A §201, 18 U.S.C. § 1956, 1957, 18 U.S.C. A § 371   and 18 U.S.C. § 1344. Essentially, this was stealing from the Federal Government due to the fact the actions were based upon fraud and the funds were protected by Federal Law which prevented any legal process once decreed through a qualified domestic relations order and garnished for an alimony assignment. Payment for guardians is $17.00 to $50.00 per hour with a [20] twenty hour maximum per statute and payment is to be made by the state. Complaint(s) were made to the Attorney General Criminal Bureau where members admitted the acts were a criminal attempt to usurp the rights of the plaintiffs and to bilk or defraud an estate, as well as the plaintiffs, but the defendant Attorney General failed to take any action amidst repeated unabated attacks against an elder ( M.G.L. ch. 19A sec. 14-26 ), and felony elder assaults contrary to M.G.L. ch 266 generally, reports of ethic violations and fraud, public integrity and public corruption issues reported timely. The defendant Attorney General Thomas Reilly took a laisese faire approach after admitting responsibility and obligation regarding public integrity, public protection and protection of consumerism as well as the constituency. The Attorney General neglected his duties passing the onus back to the victim[s] demonstrating neglect of duty and a breach of a duty of care owed to them under both Federal and Massachusetts Law. Defendant(s) collectively conspired as to their individual parts in he scheme to interfere with the Peaceful and Quiet Use and Enjoyment of 7 Oldham Road and all other effects they held depriving them of the use of their personal property, their residence, as well as land held as lot 93b for the sole purposes of theft by abuse of power similar to escheat using the powers of the judiciary and other municipal agencies and their counterparts playing a role in crimes and the scandal. Hygas, J. in Middlesex Probate Court unlawfully allowed void legal matters to be relitigated and refused to listen to warnings and contests presented to him. The actions with Arlington Police, Judge Hygas, the Chief Probation Officer and the other defendants constitutes Conspiracy against the U. S. Government, Conspiracy to defraud, crimes against the Currency.

Relitigated Probate Court Action

83. Following relitigation of an action already litigated by the defendant James Carroll, Jr. and his counselor defendant Robert Costantino and which were previously dismissed by Order of May 27, 1998 by Hygas, J, the defendants unlawfully relitigated the same issues starting with actions on October 7, 1998 after being caught in fraud before Superior Court which Hygas, J. was fully apprised by certified court orders. Hygas J. had to remove the guardian upon expiration of 90 days causing the next strategized unlawful attack to proceed with aid of court personnel. The defendant Robert Costantino sabotaged the rights and protections of the plaintiff Josephine Carroll by placing a letter in the docket with the defendant James Carroll, Jr. that she had enough money to buy a condo in Florida and that was where she should move. This letter interfered with the ability of the plaintiff Josephine Carroll from obtaining legal assistance and a choice of counsel. The actions constitute gross elder abuse and domestic abuse coupled with public corruption.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

Relitigation of Probate Issues on Fraud

84. On or about February 1999 through October 1999, the defendant James Carroll, Jr. continued with his actions in Probate Court without notice to the plaintiff Josephine Carroll intentionally sending mailings to an address that U.S. Postal Inspection Officials had stopped mail because of theft, tampering and interference with the mails and creditors by the defendant James Carroll, Jr. The defendant James Carroll, Jr. made papers appear that Justice Judith Dilday had allowed extinquishment of all alimony debt contrary to M.G.L. chapter 208, section 34 which does not allow any such action and claims were made that health insurance was allowed to be taken in place of a garnishment contrary to both State and Federal Law under 42 U.S.C. § 659, 661-661, Title V,  entitled, "The Civil Service Retirement Act" prohibiting any legal process; reappointment ; reassignment ; attachment ; return to the original pensioner including I.R.S. Levy once the Federal Postal Pension was garnished as provided by a qualified domestic relations order through both a final award in a divorce decree, a dictating document, case law "Hobbs vs. O.P.M." and under State Law M.G.L. chapter 208, section 34 which prohibited any reduction of an alimony assignment to provide health insurance for an exspouse and which was to be the sole responsibility of the obligor. A letter contradicting the alleged order, and an order was later found which vacated the alleged previous orders of the defendant James Carroll, Jr. and apparently the vacated portion of the order was removed, sealed by court certification by what appears to be the Arlington resident who attempted to obstruct justice, as a court employee in the Probate Court and what may have been an altered order was sent to OPM which the Court Ordered Benefits unlawfully obeyed. OPM too had a duty of care to comply with orders only as prescribed by law. Fraud by law only binds those who rely upon it.

31

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

84 a. Fraud by law only binds those who rely upon it and not the victim, but OPM has insisted that new court orders are needed although the validity of the alleged order was never proven, they agree and understand that the plaintiff has been harmed by being unlawfully deprived of basic alimony and that legally the defendant James Carroll, Jr. and his counselors were not entitled to tamper with the basic alimony garnishment. The action violated both plaintiffs' Constitutional and Civil Rights under the law as well as other rights not mentioned. Any and all access to the state courts have been intentionally blocked to allow an agenda to proceed at full speed to essentially hold the plaintiff hostage and attempt her demise. The plaintiffs assert that said actions were part of a murder plot exploiting an ill elder and causing extreme financial and emotional distress with a serious medical condition so that all that was involved could be exploited without interference or contest or accountability. The plaintiffs collectively assert that unlawful actions were conducted through conspiracy by the defendants primarily arranging a plot for massive robbery and conversion of assets through any available source with unfounded issues through James Carroll, Jr., the defendants Robert Costantino and John Gahan who worked covertly until the scheme was nearly completed with the defendant Town also working covertly with select justices, court personnel and their agents and or associates who were technically restrained, but avoided responsibility attempting to pass blame to the defendant James Carroll, Jr. when each was a willing participant and fully apprised of all details. The plaintiffs declare that the system intentionally failed due to an agenda and conspiracy them while acting biased with rigged cases and predetermined decisions which were then met with obstruction of justice to seek hearings appeals, protection and or any legal remedy with discriminatory decisions and gross behavior depriving particularly Josephine Carroll of basic Human Rights and all protections any American should take for granted literally holding her hostage. The plaintiff Josephine Carroll attempted to address these issues timely, encountering unnecessary delays, excuses, interference and obstructions which could only be intentional to claim expiration of statutes of limitations or laches. Appeals should be unwarranted when the cases have no basis in law and therefore are a nullity.

85. The defendant James Carroll, Jr. and the defendant Robert Costantino proceeded to several other courts following Probate including Land Court to constantly resatisfy their alleged judgement. Cambridge District Court, Lowell Superior Court and Cambridge Superior Court were all used to confuse the issues and hide fraud networking with their contacts for abuse of process, strategized criminal fraud, and equity skimming as well as conversion with malicious prosecution and mortgage fraud to make their plan work and fund the strongarming, blackmail, undue influence and use the system as a corrupt organization with their network in violation of the RICO statute. The plaintiffs cite that the following were violated ; the False Claims Act, U.C.C. code, the Defense Against Marriage Act (DOMA) and the Violence Against Womens Act (VAWA). The plaintiff as a protected class, a divorced elderly woman who was dependant upon an exspouse for alimony and maintainence and was intentionally deprived of her rights and property by the defendant Commonwealth and targeted against state elder abuse law, the victim witness statute of Massachusetts and deprived of all of her Constitutional Rights by the defendant James Carroll, Jr. and the defendant Robert Costantino, with their contacts at various levels of the legal system to essentially remove all safeguards, checks and balances, so that the home of the plaintiff Josephine Carroll could be stolen out from under her to fulfill the goal of the defendant James Carroll, Jr. who ultimately held responsibilities that were never met creating a disaster through unethical attorneys and court personnel working agendas of their own with members of the defendant Town of Arlington.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

85 a. The intended goal of the defendant James Carroll, Jr. was made clear as to his intended goal by a book track tape, titled "Living Ragged." which the defendant made reality unlawfully with his cohorts. The ultimate goal of the defendant James Carroll, Jr. was to meet the original agenda to take all assets from his former wife and son with and attempt the death of his longtime wife without being caught in a murder plot for hire.

### Land Court Deed Tampering

86. On August 8, 2000 the defendant Robert Costantino and James Carroll, Jr. filed an action in Land Court. The fabricated and legally void Lowell District Court judgement which was by default and never proven was reused after Probate. Land Court and Probate Court have concurrent juristiction. Land Court was to recognize the divorce decree and respective estates of each party which by law were to be free from interference by each respective exspouse. The Chief Title Examiner advised that per her title examination she could not find a fraudulent conveyance and told the defendant Robert Costantino this fact. By law, this report was to be followed, but was ignored. Unjust enrichment was allowed and one one of 2 forged deeds previously cancelled were revived contrary to law when deeds were proven forged and corrected prior to the initial lawsuits, claims or alleged judgement of the defendant James Carroll, Jr. The plaintiff Josephine Carroll was indigent so by law and a judgement could not legally be assessed against her as well as the fact that the true owners as were on record were not sued so no notice and no juristiction was ever properly made against the title. The Cambridge Superior Court Permanent Injunction was ignored and contests were all ignored favoring one sided hearings held without notice. The fact that the defendant owed an excessive alimony debt was also ignored. Blank certified mail receipts were placed in the docket claiming notice by certified mail was made when no service was made and motions were sidestepped by excuses that they were not scheduled for hearing or marked denied without being given a day in court.

86 a. On January 29, 2001, Chief Justice Kilborn ruled a fraudulent conveyance contrary to registered land law, divorce law, statutes of limitations, estate law and trust law, thereby creating adverse possession an adverse claim of right, a criminal trespass, civil trespass and a cloud on title contrary to law whereby the defendant Attorney General is to defend title from fraud and these claims by law. Statutes of Fraud or bad debt is [6] six years and the action was taken [10] ten years later. Contests on title are one year when valid. Fraud is recoverable up to [6] six years by statute and recovery of the land up to [20] twenty years by law where the court never exercised juristiction over the current title holders. Therefore, the action was a nullity and a contempt of court as a direct violation of the Permanent Injunction. The land court case was filed August 08, 2000 after the alleged judgement was allegedly satisfied in Probate making the action double dipping and fraud. The divorce decree and subsequent actions were by law to be recognized by Land Court as Probate Court has concurrent juristiction and the orders were more recent than the voided default judgement. Once decreed in a divorce, each respective spouse is to remain free from interference by the claims of the other as to the awards.

87. May 2001, the plaintiff Josephine Carroll received a notice of Sheriff Sale for Mother's Day. Complaints to Justice Kilborn were ignored. This fact was reported to Chief Justice Kilborn at hearing appearing to impact him, but he failed to act to stop the abuses.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

### Sheriff Sale on revived cancelled and Forged Deed

88. July 11, 2001, the alleged sheriff sale was listed in the Arlington Advocate causing embarrassment, public humiliation, mental anguish and emotional distress to the plaintiffs. An extortive demand was received from the Office of the Middlesex Sheriff defendant Sheriff James DiPaulo for over $1 million dollars demanding a certified check when the alleged Lowell District Court Judgement was for $561, 175.30. On the alleged date the defendant deputy sheriff Breen sat outside 7 Oldham Road Arlington trespassing as a posted watchman in a late model Mercury Cougar coupe to report if anyone exited the premises to go to the office for the alleged sale so that the staged sale could be put in place to maintain appearances. The plaintiffs assert this was a form of libel. The defendant Attorney General had a duty of care to the plaintiffs and those the plaintiffs had contracted with and therefore this action violated public policy and the interests of the plaintiffs with a false advertisement under M.G.L. chapter 266, section[s] 75 and 91.

89. The facts behind the sheriff sale were investigated requesting documents after demands were made by the defendant Robert Costantino and the defendant James Carroll, Jr. to pay $10,000.00 for stopping the alleged Sheriff Sale which was said by counsel would not stop the process as it could be reinitiated. The defendant James Carroll following divorce was made to pay attorneys fees of $10,000.00 and he has repeatedly attempted various claims to attempt to collect this amount from the plaintiff Josephine Carroll. Upon contacting the Office of the Middlesex Sheriff Process Service Division, the clerk had extreme difficulty finding the file and related papers retrieving a folder from a rear closet claiming to be in a place other than normally kept. The clerk expressed concern that nothing other than the face of [2] two personal checks could be found. Each check was in the amount of $500. 00 indicating "Sheriff Sale" with one check dated August 24, 2000, [16] sixteen days after filing the Land Court action before any hearing was held on the merits and well before any ruling of sheriff sale. This could be viewed as criminal pre -meditation, and malice aforethought.

### Cambridge District Court

90. On or about November 9, 2001 an eviction case was filed by the defendants Robert Costantino and James Carroll, Jr. to gain "possession", a legally void action which is nothing more than theft and conversion because Spendthrift Trusts are free from creditor attachment or reversion by fiduciaries and actions were legally void title predicated on fraud contrary to Permanent Injunctive Orders. Several events followed with a staged eviction under landlord tenant relationship but no service was made and no land lord tenant relationship existed between a trust or [2] two divorced spouses 13 years after a divorce. Disinterested litigants questioned if they witnessed a kangaroo court with the refusal by Justice Severlin Singleton to accept evidence or testimony and actions based on hearsay of the defendants Robert Costantino and James Carroll, Jr.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

Criminal Stalking

Criminal Violation of No Contact Order

91. On or about November 2001 the defendant was witnessed by neighbors constantly loitering around the home of the plaintiffs following 4 slashed tires on an auto where Arlington Police attempted to obtain a personal information of the plaintiff James Carroll, III and private telephone numbers refusing to write police reports. Daily vigils by police were noted with cruisers stopping around the driveway on the private way writing down information before the vandalism was encountered. The defendant Police Chief Frederick Ryan was contacted and asked to identify these officers and the reason for the trespass, He claimed no knowledge and no details or logs as visits were not authorized. The defendant James Carroll, Jr. was caught taking photographs with a flashbulb at 10:00 p.m. at night and police would refuse to do anything about the trespassing or even attempted actions by the defendant for assault and battery with a deadly weapon a motor vehicle allowing the defendant to flee.

92. On or about November 16, 2001, [2] two Arlington Police Officers were encountered within the back and front yard of 7 Oldham Road Arlington, Massachusetts. The [2] two officers were identified as Officer Hughes and Officer Kendall. Both were in the presence of the defendant David Lanata a surveyor. All were asked to leave advising that they were trespassers. All refused claiming they were working for the defendant James Carroll, Jr. All were informed he had no legal authority as he did not own the property. All acted smugly and refused to obey the wishes of both defendants overstepping and usurping their legal rights. Captain Kennefick was contacted whereby a meeting was held with the defendant Police Chief who sternly stated, that he would be the only one to decide if his officers acted improperly and if any action against them would occur and quote,"If you believe that any of my officers are involved in criminal conduct, you can take it up with the Attorney General." unquote. This action was seen as a refusal to accept legal responsibilty and a duty of care to protect, serve and preserve the rights of the plaintiffs The law is for the entire public and not to be selectively used therefore issues are a public issue or Public Integrity. The defendant Board, their police with the Defendant Police Chief Frederick Ryan and defendant Town Counsel John Maher were all fully apprised of the ongoing controversies and had been delivered a court certified copy of the Permanent Injunction which was assessed against the defendant James Carroll, Jr., his counselors, agents (Lanata and Arlington Police) and third persons.

93. On or about December 12, 2001, the plaintiff Josephine Carroll petitioned the Cambridge Superior Court after making a police report after receiving a threatening letter to kill her and her son authored by the defendant. The defendant for sympathy appeared in court with an elder walker for sympathy which he discarded once leaving the court. Justice Brian Merrick refused to allow a restraining order upon the expiration of the 10 day order defending the plaintiff because he and his attorney cited that they had civil matters in other courts, The judge was reprimanded and advised that those issues were not before him and they were matters he could know nothing about. The judge was informed that it was better to err on side of caution than to be another Judge Heffernan who caused a woman's death.

35

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

93 a. The judge was told that M.G.L. chapter 209A only requires one to be in fear. The judge was informed both were in fear. The judge refused to allow the protective order when Judge Sprague believe a restraining order was wise and could not be a bad idea between divorced parties. The defendant Robert Costantino sent a letter to the plaintiff Josephine Carroll that he had billed the defendant James Carroll, Jr. for "contacting the court in advance of the hearing" which attorneys influencing judges, judge shopping or unfluencing personnel to influence a judge is not allowed. The judge was reported to the Commission on Judicial Conduct who never responded to the complaint. The defendant Attorney General and the judiciary of the Commonwealth have a duty of care to the citizens of the State and to protect their rights and property. The fact that Josephine Carroll was and her son were targeted to be deprived of their rights and property on false unlawful actions were a pattern and practice which is far too frequent to be called error or mistake and that obviously more was at work behind the scenes. Attempting to appeal the order, excuses were made that the person who handled appeals was out and no one knew how to set up the appeal or where the papers were for an appeal. Excuses continued when trying to get restraining orders or when attempting to file criminal complaints. The denial of protection and denial of access to the process with unnecessary delays and obstruction repeatedly to remedies irrepairably harmed both plaintiffs and those they were responsible to under a contractual relationship. James Carroll, Jr. was regularly given opportunity to misuse restraining orders and complaints after the court was made aware that he had a criminal history, that he was abusive to not only the plaintiffs but to several members of the public and the courts were made aware of the numerous rulings of fraud, the divorce decree and the Permanent Injunction all of which was intentionally ignored to place the plaintiffs and their property in jeopardy. These issues were reported to all of the appropriate agencies including the Attorney General who refused to address any issue claiming matters were a civil matter after admitting that issues of public corruption, judicial abuse and attorney criminal conduct existed.

94. February 20, 2002, 10:00 a.m. at 7 Oldham Road Arlington, Massachusetts residence of the plaintiffs a staged eviction occurred by surprise. The plaintiff Josephine Carroll was awaken from sound sleep in night clothes startling her, as pounding occurred on back door. In a secluded yard and in a porch where forced entry was made through doors at least [6] six Arlington Police Officers, [2] two Constables stood. All demanded entry. The plaintiffs advised that the home was a lawful trust and no access would be given or could be given as an eviction was invalid, by law. The trespassers were asked to leave. Police refused, whereby the defendant Town of Arlington through their police and the defendant Sargeant David MacNamee had the defendant Officer Hughes with a battering ram and a shod foot kick down a rear french door. Present were Officers Greeley, Flynn, MacNamee, Hughes and at least [2] two unknown others Officers John Doe one and two with defendant Constable Jerrold Loomis of Weymouth and defendant Constable Richard Boyle of Arlington. Prior to entry the plaintiff Josephine Carroll pleaded with the group not to enter and quote, "Please leave. This is a trust. You can not evict me. This is not legal."" Please don't do this." The event placed the plaintiffs in fear.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

94 a. The plaintiff James Carroll had called the defendant Town Counsel John Maher who claimed he did not know why officers were at the residence and claimed he was telling them not to enter until he saw papers to determine why they were there. The defendant added that he wanted the counsel for plaintiff Josephine Carroll and James Carroll, III to call him and their counsel could fax any papers to him. The defendant John Maher added he would call back with a decision. The group outside the door was made aware of these facts, and warned not to enter, but refused to heed warnings. The plaintiffs jointly were in fear for their safety and the well being of the property. The defendant Town of Arlington through their police entered yelling "We're in." upon breaking the door off the frame and hindges. No papers were ever shown, nor were in possession, as this was actually an armed break and entry in the daytime and subsequent theft reported to District Attorney, a crime under M.G.L. chapter 266 section[s] 14, 17, 25, 30, 40, 49, 51, 60, 75 and M.G.L. chapter 265 section[s] 17, 19. The plaintiffs assert that armed police acting outside of their scope of authority who unlawfully used a tool to enter a dwelling house under trick and false pretense whereby removing property was in fact an armed robbery as property was later found stolen. The group of officers and constables rushed into the home as the plaintiff James Carroll was on the telephone with retained counsel who had coersed the plaintiff Josephine Carroll to sign a skeleton Bankruptcy petition late in the evening against her better judgement and wishes claiming it was a tactical maneuver to stop actions when he admitted all claims were fraud. On the telephone the defendant counsel claimed he did not know if he could stop the eviction in time as he was enroute to Bankruptcy Court. Blank eviction notices were given and a one previously posted on the door from defendant Jerrold Loomis for defendant Richard Boyle referenced Statute number M.G.L.chapter 357 for eviction. No such statute exists. Eviction statute actually is M.G.L. chapter 239, section 4.

94 b. Defendant Evan Green as Counsel knowingly played along when he knew police could not break and enter, use excessive force, nor could enact evictions by law, despite many other factors.

94. c. Officer Hughes ran to the plaintiff James Carroll, III falsely arresting him in his home unlawfully searching his person and pulling a telephone from his hand. Officer Hughes forcibly pulled the plaintiff James Carroll, III from his home while stating he would arrest him if he did not leave the home and you are being evicted. While James Carroll, III was detained outside and advised not to move, Officers berated and interrogated the elder Josephine Carroll repeatedly asking her name, age, and what type of medication she took. Police rifled through her pocketbook removing keys which were taken to open doors. The defendant Dube of Herbs Locksmith unlawfully removed High Security Locks under Patent Law Protection and Contract to Medeco Locks unlawfully making a fabricated, duplicated key blank when the locksmith had no authorization as an authorized dealer to do so, nor had been authorized to make blanks which were not to be created except through the express relationship with Medeco Locks by law. Upon the locksmith leaving a blank resembling a Official Medeco Patented Blank was returned of a metallurgy Medeco stated they do not use. (18 U.S.C. § 2320 the trafficking of illegal goods) and the stealing of trade secrets, 18 U.S.C. § 1831 et. seq.)

37

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

94 d. The plaintiffs contend that the actions were a part of an ongoing pattern and practice to deny each plaintiff their rights and protections individually and jointly and to violate their Constitutional Rights, their Civil Rights harass, vandalize property and cause any available loss and problem that could be devised to make the daily lives of the plaintiffs intolerable seeking any method possible to overtly create any physically harm possible to the plaintiff Josephine Carroll capitalizing on her age, health condition and her status as a divorced woman and the fact that the majority of the defendants operating the abuses were males with positions of authority who felt they were entitled to abuse a woman as a weaker sex and the abuse against her son was that he was seen as an obstacle and maintained his mother so therefore targeted. The deprivation of funds and increased expenses were one more burden to reach the intended goal. The defendants collectively have acted like the Mafia making it clear to the plaintiffs that the plaintiffs were going to be intentionally deprived of any access to the system and any protection, and they were going to be repeatedly shown that they were powerless to stop a group who knew no boundaries, so that the collective defendants could do as they wish without accountability and abash any form of public integrity and public protection as well as traumatize the plaintiffs to a point that would make them so frustrated, upset and distraught that it would be in the interests of the defendants if the plaintiffs attempted to defend themselves or if they would act out and if the plaintiffs an acted out of desparation and or defense by lashing back, the opportunity would be available to the defendants collectively in their favor to wrongly incarcerate the plaintiffs or eliminate the plaintiffs with deadly force.

94 e. The defendant Town of Arlington through their police invaded the sanctity and privacy of any available space within the home of the plaintiffs without legal right or warrant using excessive force and holding with unlawful restraint and or forcing both plaintiffs from their home, a kidnapping by law. The plaintiff Josephine Carroll was taken from her home by force into the February cold temperatures in night clothes, dangerous to an elder under medication for a heart condition, as hyperthermia could rapidly cause stroke or fatal heart attack to which police were fully apprised. The defendant police officers repeated attempted to ascertain what type of medication the plaintiff needed for survival and opened sealed bottles removing handsfuls of pills. The plaintiff Josephine Carroll did suffer a mild stroke thereafter, experiencing difficulty formulating words for a period of time. The object of the assault which was a felony on an elder was apparrent that those who were the criminal army of the defendant board and the defendant Town counsel John Maher were intent on seeking the demise of Josephine Carroll which the plaintiffs assert was aided through coached domestic violence, a criminal opportunity for obtaining property for a private agenda coupled with premeditated abuse with opportunity acted upon for payment seeking a means of eliminating the plaintiff Josephine Carroll. Arlington Fire Rescue Truck was taken to the scene which is a [10] ten minute drive or [3] three miles away and this was standing by at the home which police attempted to coerse Josephine Carroll into taking. The plaintiff who was cognizant that all activity was criminal, egrigious and tortious along with past history of offenses by some of the same members of police refused transport as she could not know be sure she would not be harmed further and could not leave a home with a sizeable amount of valuables with a door broken off the hindges with an unattended home amongst a cast of unknown strangers throughout the home.

38

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

94 f. On February 20, 2002, Arlington Police were accompanied by the defendant James Granitzas of We Haul movers who was demanding hostile and threatening demanding locations of guns, and taking keys for a 1987 Volvo whereby Officer Hughes presented a false title to James Carroll, Jr. and attempted to seize the auto registered in New Hampshire and owned by the plaintiff James Carroll, III. When police discovered these facts they withdrew from that action. The defendant James Granitzas had his wife enter the home with a clipboard to assess what would be needed to remove all items of value from the home while police detained the plaintiffs outside. The defendant James Granitzas threatened he would remove all property and place it in the street a private way with a blind corner before the home where trespassers and residents pass upon the way at sometimes an excessive speed posing a danger to all. The defendant demanded payment of $5,000.00 or he claimed he would take all property with him and store it. This caused unwarranted stress and mental anguish to both defendants who were held literally hostage and were in fear for their safety and property. The defendant Town Counsel John Maher called police to leave following defendant Evan Green advising that a Bankruptcy filing had been initiated and filed. Defendant John Maher was called and informed of events by the plaintiffs. The defendant John Maher returned a call, claiming on tape quote, "I did not authorize anyone to break the law, break down doors or enter anyone's home." unquote. Contact made to AllState Constables claimed Jerrold Loomis was a Norwell Constable and the Town of Norwell claimed they had no idea why a Constable in their area would be 50 miles away in Arlington. The defendant Robert Costantino lives nearby this constable and is from Abington, Massachusetts. The plaintiff s were stunned in shock and traumatized.

94 g. The plaintiffs contend a conspiracy existed between the defendant James Carroll, Jr., his counsel as defendant and other named defendants connecting to the Town of Arlington which plotted in unison to assist on a false succession of meritless and unfounded litigation networking with those they could receive favorable assistance from in the system thereby securing unfounded judgements based on fraud, trick and deception and enforced with crime to further injure the plaintiffs, cause catastrophic harm to emotionally, physically and financially destroy the defendants and make a convoluted succession of public documents fraud coupled with criminal activity and domestic abuse and conspiracy a highly bizarre and outrageous story while a woman married [40] fourty years and divorce [13] thirteen years, a trust and her adult son were robbed of millions of dollars in assets reducing them both to little more than just the clothes on their backs.

UNITED STATES DIS. RICT COURT DISTRICT OF ...ASSACHUSETTS

95. The defendant town of Arlington, the defendant(s) James Carroll, Jr. Robert Costantino, John Gahan and Thomas Vangel with members of the Town of Arlington and the Massachusetts Judiciary maintained a highly injurious position refusing to release stolen assets to further alter and destroy property contrary to numerous statutes. This conduct allowed former Selectman Robert Murray and members of the defendant town such as the new Town Manager who were obviously aided by the defendant board and other town members including the building inspector and redevelopment board members to unlawfully subdivide and develop unbuildable property which they aided to deprive the plaintiffs of in the unrelenting assaults and aid in crime in conjunction with the defendant James Carroll, Jr. , thereby causing severe damage to the real estate and title as well as to the plaintiffs themselves. The defendant Brian F. Sullivan unlawfully obtained a false title and accepted stolen property which by law was unreachable except by their trick and criminal campaign which is worthy of RICO indictment. U.S.C. 18 § 1961-1965-1968, [1964 ( c ) Emphasis ] The defendant Town Manager Brian F.Sullivan prior to his appointment was one of the recipient members of a murder and conversion plot becoming owner of 9 Oldham Road Arlington formerly lot 93b through criminal rigging, fraud and force, denying access to the home of the plaintiffs and depriving them of all their property whereby al l their rights and property was stripped from them through trick and deception and blatant armed robbery. Each defendant played a part in the total scheme and in some cases aided for a gratuity, an opportunity or a favored status to split the spoils by placing unnecessary and unlawful obstructions to cause the ultimate deprivation of all assets from the plaintiffs who had repeatedly proven abuses of some of the key defendants before the courts prior to these acts.

96. On or about February 20, 2002, the defendant Evan Green appeared in U.S. Bankruptcy Court of Massachusetts filing a chapter 13 petition which he claimed he would revert into a chapter 7, if needed against the best judgement and wishes of the plaintiffs. The defendant assured the plaintiffs that action would be tactical only and would not harm the plaintiffs in any manner, a false and deceptive statement. The defendant Evan Green was asked to address deed issues with urgency and file a contempt of court in the Permanent Injunction which he ignored. The defendant Evan Green pretended all actions were legitimate to mislead the plaintiffs and to intentionally deceive them to favor the defendant(s). The actions and result of inaction are prima facie evidence. The defendant Evan Green was fully apprised that the court could not legally break a contract or pledge on a Spendthrift Trust never sued nor could a it deprive a person or entity of life, liberty or property if he she or it was not named in a suit or judgement. The alleged claims of the Lowell Default judgement never named the trust which owned the real estate and regardless if the trustee was a holder or any beneficiary had a beneficial interest in the estate, by law the trust was unreachable by both creditors and beneficiaries as well as could not be reverted to the grantor once placed in trust under M.G.L. chapter 266 section 57. The defendant Evan Green admitted to the plaintiffs that all that was involved in the case was fraud in the inception , in the prosecution and in the execution. False claims for the sole purpose of defrauding another is a crime and is not allowed by state law under false witness and false pretense and other applicable statutes. The plaintiff Josephine Carroll testified before the Bankruptcy Court that she was an indigent person because her exspouse the alleged creditor owed her a larger debt than he claimed and in fact his claim was void. The plaintiff testified that a creditor can not collect against an indigent person by law. The plaintiff testified that she had a life estate in the trust and could not be held liable as an officer to a trust who had no connection to the claims of the defendant James Carroll, Jr, emphasing that the alleged judgement did not name the trust or any party thereto. The plaintiff Josephine Carroll testified that under these circumstances she did not owe a debt and therefore, there were no grounds for a creditor to collect regardless of the merits. Fraud in the inception.

**UNITED STATES DI\_ \_RICT COURT DISTRICT OF \_iASSACHUSETTS**
97. On or about May 27, 2002, the defendant Evan Green appeared in Bankruptcy Court with the defendant Robert Costantino. The defendant Evan Green did not inform the plaintiff Josephine Carroll of the hearing, but the Bankruptcy Court through Kenner, J. agreed with Josephine Carroll that there were no grounds for an action in bankruptcy and that it was a state based controversy sending the case back to the state courts. It is unlawful to make a false statement to the Federal Government ; a Federal Branch or a Federal Agency under 18 U.S.C. § 1001. It is unlawful in a Bankruptcy Court to claim one is a creditor when no debt is due or when the alleged creditor is actually a debtor. It is unlawful for attorneys to file and act on a case that they have full knowlege is groundless, is based on fraud or has no legal merit. It unlawful to file a case only for the purposes of a test case or for a mock trial or for purposes of illegal activities such as privacy invasion or to defraud another.

97 a. There was no debt for the following reasons; The exspouse owed over $1 million dollars of alimony arrears which were intentionally not addressed to keep Josephine Carroll at a disadvantage. The alleged Lowell District Court Judgement was a staged fraudulent action for the following reasons and therefore was a fraud ; The main defendants the crux of the case were dismissed without fault in Lowell Superior Court. Lowell Juristiction is Northern Middlesex and can not bind Southern Middlesex Parties, The defendant James Carroll, Jr. was the proximate cause of all actions and therefore was barred from recovery by law. The defendant alleged harm on pure hearsay to alter terms of a finalized divorce action [13] thirteen years later whereby he never complied with Court orders doing equity, so the defendant James Carroll, Jr. could not seek equity. Neither the Lowell Superior Court, the Lowell District Court, the defendants James Carroll,Jr. nor Robert Costantino ever made service therefore the court never exercised juristiction nor could in the wrong county. The judge who alleged to give the judgement, never sat in the court per court personnel. The regularly sitting judge Melahn removed the default in Lowell District Court only to have fraud follow on the docket arranging rehearing an alleged refusal to remove a default already removed before a judge that staged a judgement of unusual size in a court where she never sat. Lowell cases are not taken across counties and Lowell Cases are not heard in Lawrence. The Cambridge Superior Court, a higher court voided the judgement and created orders to maintain the status quo as to the divorce decree, subsequent order in divorce and maintaining protection of the trusts as well as separation of the parties. The Permanent Injunctive Order was never changed or vacated to allow any contradictory actions or litigation, required by law.

98. On or about June 27, 2002 the defendant Evan Green after being terminated, especially after Justice Spraque advised Josephine Carroll to obtain a competant lawyer because the defendant Evan Green was not doing his job and he saw too much wrong, the defendant appeared unannounced at the residence of Josephine Carroll. The defendant had never been invited to the home. The defendant Evan Green appeared with an Arlington Police Officer Bassett trespassing. The Police Officer was never invited to the home. Both caused a plain clothed Arlington Fireman to enter the home through a side third story attic window open for ventilation.
The defendant Evan Green was witnessed on video surveillance pacing to and fro stating on his cellphone to the receiving party that he found a business card from an F.B.I. Special Agent stating quote, "What are we going to do, How are we going to handle this."

**UNITED STATES DIS... RICT COURT DISTRICT OF ...ASSACHUSETTS**

98 a. The plain clothed fireman walked down to the first floor kitchen startling the plaintiff Josephine Carroll. The man demanded keys to open the locked door. Josephine Carroll stated quote, Go out the way you came in", unquote. The man who had never knowing been in the home knew what door to exit from without keys through a service hall. The defendant Evan Green attempted to coerse the plaintiff Josephine Carroll to open the door. The defendant claimed the son of the plaintiff Josephine Carroll, James Carroll, III was outside as a ploy for her to open the door for some unknown reason. She refused frantically calling the employer of the son James Carroll, III who summoned the son to leave his job. The employer noted that the plaintiff was frantic and hysterically frightened. Several departments were called asking what to do with the situation where they suggested to find out from Arlington first and then talk with the Attorney General. Upon calling the Arlington Police dispatch the Officer stated, sardonicly " Why call here when you have called everywhere else." Josephine Carroll chastized Officer Bassett who replied, quote, "We will never help you again." unquote.

99. On or about August 3, 2002 at 2:30 a,m. on a Saturday morning alarms and lights were triggered at 7 Oldham Road Arlington, Massachusetts. A car was heard speeding away on the private way. Immediately investigating the event, a Notice of Eviction was posted on the door but no hearings were held for eviction or notice prior to this event. Rules of Process Service can only be made by rule 4, business days, no weekends or holidays and regular business hours only from 8:00 a.m. to 5:00 p.m. This was another surprise attack. The defendant James Carroll, Jr. had been repeatedly caught loitering around the home in the early morning hours, but so had the Arlington Police, The Arlington Police at time delivered Service of Process when by law police are not allowed to act as Process Servers or Constables.

100. On August 5, 2002, the defendant James Carroll, Jr. appeared at 7 Oldham Road Arlington at 1:00 P.M. being met by a neighbor he had colluded with and followed by the appearance of deputy sheriff Steven Donnelly. [3] Three other deputies arrived thereafter with a plain clothed man in a white shirt and jeans. The deputies were dressed in official dark blue uniforms with handcuffs and guns. Several extra large tractor trailers which were Triple M Movers arrived following forced entry into the home. Deputy Sheriff Steven Donnelly circled the home with defendant James Carroll, Jr. looking upward at windows and looking at the home all around.The defendants appeared at a side door and began prying open an aluminum storm door and then the frame of the door with the plain clothed man acting like drug induced crazed animals. The retained counsel for the plaintiffs was called and asked to do something to stop the events including reporting the issue to police. He refused claiming there was nothing that could be done and he refused to act. The attorney was asked before this to obtain criminal restraining orders. He had refused. The attorney stole a sizeable retainer and had direct communications and assumedly arrangement with the defendants James Carroll, Jr. and Robert Costantino, but never made his communications known violating attorney client priveledge and neglecting his duties which was evident he sabotaged the plaintiffs which must have been for profit. Police refused to respond calling the matter a civil matter. Massachusetts law does not allow excessive force or break and entry. The deputy sheriffs led by defendant Steven Donnelly forced their way into the home and grabbed the plaintiff James Carroll, III. Defendant Steven Donnelly pulled a check book and keys out of the pocket of James Carroll as others restrained him twisting his arms and giving him blackened bruises. The deputy stated, don't resist the sheriffs or you will be arrested. He laughed and refused to return the items denying that he took them.

## UNITED STATES D... fRICT COURT DISTRICT O. .AASSACHUSETTS

100 a. An offensive past history exists with deputy sheriff Steven Donnelly receiving bribes, acting as a kidnapper and hit man for hire on past criminal exploits with the defendant James Carroll, Jr. Both caught on falsified court orders before Middlesex Probate Court against a "writ of protection", falsely imprisoning James Carroll, III overnight. Plaintiff held without medical attention after defendant Donnelly twisted the base of spine of plaintiff by using his 350 pound weight of his knee in the base of his back as a criminal attempt to crippl e James Carroll, III. Deputy Sheriff Donnelly caused the plaintiff injuries which include macular degeneration, concussion, compacted vertebrae, a lacerated wrist from throwing him against a garage door and pushing his hand through a glass window, as well as giving him a bruised hip bone from visciously throwing him to the ground. On that event the defendant James Carroll, Jr. was found to have falsified court orders and committed fraud on the court.That modus operandi with the same "gorrilla and guerrilla" warfare and criminal conduct as cited and declared by justice Zobel only played a part as to why a Permanent Injunction was issued against the defendant James Carroll, Jr., his counselors and agents and third persons. Defendant deputy sheriff Steven Donnelly clearly is an agent. The plaintiff James Carroll, III sustained injuries inlcuding but not limited to severe pain, spasms, back problems, loss of sleep and arthritic conditions, loss of eyesight, loss of income and post traumatic stress issues caused this defendant and compounded by the defendant Police of the Town of Arlington with numerous added events. The defendants collectively have made the lives of both plaintiffs cumbersome and riddled with unnecessary problems. The actions of defendant Steven Donnelly caused the plaintiff James Carroll, III to lose a high paying job and career as he suffered with many sleepless nights, regular discomfort and was placed on light duty because he was unable to perform a labor intensive position. Deputy Sheriff Donnelly caused James Carroll, III to endure [6 ] six months of therapy all on conspiratorial fraud and to aid the defendant James Carroll, Jr, to quote "Fix" his son and wife as was promised by the defendant James Carroll, Jr. Defendant Steven Donnelly attempted to attack Josephine Carroll in the same manner when he lacked statutory authority, but in the defense of the ethical and honest officers that do exist on the Arlington Police force, some ethical Arlington Police Officers stopped him on that occassion. Josephine Carroll had witnessed the abuse of this deputy. The Commonwealth never made the defendant accountable and instead allowed his unlawful agenda(s) to continue without fear of accountability. Due to the licensed criminal activity, the defendant Steven Donnelly was allowed to create a catastrophy on August 5, 2002, and dates prior for alleged sheriff sales, extortion demands of over $1million dollars asking for certified checks and falsified service for retribution against the plaintiffs with more criminal battery and concluding with an armed robbery. Defendant Stephen Donnelly when entering the home of the plaintiffs on August 5, 2002, stated smugly, quote "Load it up boys. If they did not get it out of here by now, tough luck." Legally under any alleged order this was unlawful by the laws of the Commonwealth. Arranged defective orders through conspiracy in devised rigged cases on matters that have no legal merit are not a defense to create a pretense to commit crime, or build crimes thereafter especially when permanent injunctive orders prohibited the activity and the Office of the Middlesex Sheriff Sheriff including all named deputy sheriffs in this complaint were served a certified copy of the injunction. It is evident that the pattern and practice of the defendants has been that with the acquiesence of all involved defendants involved, a mindset exists that all would remain untouchable and above the law and could hide behind immunities of their positions. On August 5, 2002, both plaintiffs were given blackened bruised arms and physically picked up by several deputies and physically ejected from their home, a kidnapping by law since there were never any orders for eviction presented or shown, nor warrants, nor was an eviction valid or legal, nor had service or valid hearings been granted to deny due process of law.

# UNITED STATES D. [RICT COURT DISTRICT O. [AASSACHUSETTS

100 b. No land lord tenant relationship existed between divorced spouses 13 years after a divorce. Under M.G.L. chapter 239 section 4 property is not taken in evictions and there are many issues of fraud in the case. Under lawful evictions property is not taken when the tenants are present and it is unlawful for a landlord to take property belonging to a tenant or to retalliate against a tenant if one were to allege any validity. No contractual relationship existed as there was never a signed lease or express rental contract, lease or other device to base any such claim. Justice Severlin Singleton in conspiracy with the other defendants ignored this fact and other such facts aiding in conversion to assist premeditation a crime against an elder and others she was legally responsible. Both plaintiffs were threatened with arrest and deadly force by the deputies sheriffs. Defendants Steven Donnelly, Michael Fay, Gerrald Breen and Jane Doe, all with Official Navy blue uniforms, handcuffs, and handguns to intimidate, threaten and hold at the plaintiffs hostage with Official Sheriff Vehicles to make an appearance of propriety and to hide crime behind false actions, staged an eviction for the purposes of a contracted robbery and kidnapping to convert property for the defendant Town of Arlington and other defendants. The defendant Robert Murray, the defendant John and Kathy Gahan and the defendant Brian F. Sullivan collectively in conspiracy with the aforesaid used the aid of defendant Robert Costantino and judicial contacts capitalizing on the begrudging and obsessed behavior of the defendant James Carroll, Jr. for all to create a looting frenzy and a series of crimes and torts. Defendant Jane Doe deputy sheriff may have been deputy sheriff Denise Deyoung whose name has been attested upon many false documents or staged documents that legally should have never been created. Jane Doe is one of the deputy sheriffs who held the plaintiffs at bay in an armed robbery and criminal assault. These documents were used as the basis to form a pyramid style, or ponzi style scheme. Criminal assault and battery and or armed robbery is a felony as prescribed by M.G.L. chapter 265, sections 13 H, 13K and 14 inclusive. It is also elder abuse, a felony under the same statute. All frozen food of the plaintiffs was dumped into the street and immediately perished in the August heat. Over $500.00 of food was lost alone. Requests to vacate the property or relinquish contents of the home were denied as the object was to steal all assets from the plaintiffs causing a loss of a lifetime of work. Demands to leave the home of Josephine Carroll and James Carroll, III were laughed at and ignored, whereby the defendants deputies, the defendant James Carroll, Jr. and the defendants Everett Murray and his workers, defendants John Doe [1-6] were in the home for [2] two days removing the majority of the contents of a 9 room Georgian Colonial with many fine antiques, oriental rugs, collectables and too many items to list with a minimal value of $500,000.00 of chattels in the home, most of which was one of a kind and or irreplaceble. By law said chattels were to stay with the trust property. The defendant Town of Arlington, the defendant Police Chief Frederick Ryan, the defendant Town Counsel John Maher, and the defendant Board collectively should have known that contact between exspouses 13 years after a divorce, after a Permanent Injunction and after all types of criminal and civil issues demanded they intervene to maintain peace, integrity and to prevent crime, but to the contrary the aforesaid aiding the defendants James Carroll, Jr. Robert Costantino, the law firm of Costantino and Mason, John Gahan and Kathy Gahan, the law firm of Murtha Cullina and Roche and Digiacomo and Thomas Vangel to deprive the plaintiffs of their Constitutional Rights, Civil Rights and property in a joint campaign of fraud, chicainery and rampant crime including crimes against the United States Government. The defendant Town of Arlington, the member defendants Board, each named Selectman/Selectwoman as defendants, the defendant Police Chief Frederick Ryan, and the defendant Town Counsel John Maher, collectively had an obligation to maintain the rights and protections of the plaintiffs.

44

101. The defendant Town of Arlington and the defendant Attorney General with the Middlesex District Attorney to this day refuse to correct the public record, make anyone accountable for falsification of public records, cause Arlington police to make proper reports, recover stolen property, prosecute any crime and all refuse to take responsibility or meet their obligations under the law depriving the plaintiffs, of rights, remedies or a means of recovery increasing hardships to the plaintiffs which can only be interpreted as deliberate and obstruction to justice. District Attorneys in several other counties insist these are the obligation of the aforesaid and the refusal to prosecute grievious felony activity is bias, discriminatory and a breach of duty which is recklous, callous and at a minimum negligent, if not grossly negligent which appears in the grand scheme of events conspiratorial and a blatant criminal attack by the Town of Arlington in conspiracy with other named defendants, as well as a blatant coverup for crime. The plaintiff Josephine Carroll and James Carroll, III were in shock and traumatized, as they were forced to stand across the street while the defendant James Carroll, Jr. Videotaped the assault for his trophy with the defendants Everett Murray of Triple M Movers, employees John Doe [1-6] with the defendant deputy sheriffs collectively robbing the home at 7 Oldham Road Arlington, Massachusetts. Stunned neighbors asked how this could happen and how it was legal realizing a trustee can not be evicted from a trust, nor beneficiaries, while they witnessed the plaintiffs were being robbed by a State Agency and elected Public Officials, the Office of the Middlesex Sheriff. Complaints were filed previously for past indiscretions with deputy sheriff Steven Donnelly the defendant James DiPaulo refused to address. Written letters were delivered both to the Office of the Middlesex Sheriff and hand delivered to a family member of James DiPaulo at his home. He never responded and neglected any corrective action or sought to preserve and protect the rights of the plaintiffs, allowing the defendant to commit more heinous crimes causing a catastrophy. Complaints on the August 5, 2002 event were answered by an assistant of Sheriff DiPaulo with a response of synicism verbally, and a reply that the Office of the Middlesex Sheriff will wait until the suit to respond. Access to the home was denied to the plaintiffs by the defendant James Carroll, Jr. Robert Costantino and John Gahan, Kathy Gahan and Thomas Vangel thereafter with the defendant Arlington Police, although all were given notice that crimes occurred and John Gahan and Kathy Gahan received stolen property over $250.00 a felony and were criminal trespassers on an arranged title. The defendant Town of Arlington and the defendant Frederick Ryan as Police Chief had the responsibility with the defendant Board and the defendant Town Counsel to preserve the rights, protections and property of the plaintiffs Josephine Carroll and James Carroll. All locks were changed on the residence on fraud, abuse of process and malicious prosecution. Legally and physically the defendant Attorney General and the defendant town of Arlington through the defendant Board, the defendant Town Counsel and members of the court who denied access to the system essentially held the plaintiffs hostage and prisoners of the Commonwealth and or the Town of Arlington making it evident that all were complicitors as all acquiesed and returned the burden to the plaintiffs to resolve contrary to law.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

101 a. Silence under the law regardless of actual involvement, or intent is assent. Failure to report or act upon a crime is aiding and abeitting and or an accessory after the fact. Following the robbery of August 5, 2002, $10,000.00 of credit card fraud and identity fraud was encountered against the Discover card company. The company could not contact Josephine Carroll because she was now unlawfully made homeless contrary to numerous statutes, rules, doctrines, case law, a final divorce decree, Constitutional and Civil Rights law which are to be guarranteed under the law and the Massachusetts Charter which was designed to enhance these rights, not eliminate them. The Commonwealth failed miserably to protect the public and the plaintiffs from crime contrary to the Victim Witness Statute and Public Integrity law after admitting that such issues existed, giving mounting evidence of gross criminal conduct and all types of fraud, the Attorney General has refused to act aiding elder abuse and exploitation and rampant crime, making an elder home less, clothesless and penniless after a 40 year marriage. To add insult to injury, the bankruptcy filing destroyed the A-1 credit of Josephine Carroll which she held for [50] fifty years. This action was an intentional tort, so she could not qualify for an apartment, with [2] year waits on housing lists and the ultimate objective of the defendants attempting to insuring the demise of the plaintiff Josephine Carroll, preventing the public from knowing the truth, as well as any accountability or remedy at law. The credit card fraud occurred from checks from discover card taken from the home which were then forged in the name of Josephine Carroll. This is identity fraud. The Secret Service was given the credit card fraud. The Office of the Middlesex Sheriff holds full responsibility for the losses sustained at 7 Oldham Road and lot 93b in conjunction with all other defendants who acquiesed or aided. Defendant James DiPaulo has a duty of care to the public insuring the proper conduct and actions of his personnel. In addition he as a Public Official should be respectful of the rights, property and safety of the public and the control over his personnel.

102. The defendant James DiPaulo has been met with scorn with allegations of misappropriation of funding, by the media, but the agency is not his sole responsibility, but rather an integral part of the State Government, again accountable to the defendant Attorney General and or the Governor and the Legislature who also oversees the proper operation of the judiciary. The defendant Town of Arlington as a municipality under the Commonwealth is also responsible to the Attorney General. All private records, receipts and attorney client privileged records were stolen which is spoilage. The plaintiff had many duplicate records stored offsite. Under the Canon of Ethics for attorneys, this should be grounds for disbarrment, but the defendants John Gahan and Thomas Vangel are connected to a law firm in the same building as the Boston Board of Bar of Overseers and the firm is listed on the Boston Board of Bar of Overseers website as a firm who defends lawyers for malpractice which may be seen as a conflict of interest and an obstacle to legal remedies due to their position. When the Board of Bar of Overseers, a disciplinary agency disbars lawyers for minor infractions for far less than the current controversy and numerous ethical lawyers including 2 Chairman, past and present on the Board of the Bar of Overseers agree attorney misconduct with criminal activity exists in this case, but the Board of Bar of Overseers evades their obligations, it should be evident that there is something wrong there as well. The confiscation of all personal records and effects was just one more privacy invasion and attempt to sabotage any accountability while illegally profiting from racqueteering. Under the U.S. Constitution, American Citizens are to be free from intrusion by Government, illegal searches and seizures, as well as a deprivation of life, liberty and property. It appears that some of those who swore to uphold the law, have instead alligned to subvert the system for private gain through abuse of power.

administration of justice w... e attempting to keep the public unawa... f collusive, tortious and overt criminal activities, altering and falsifying public records, as well as prohibiting exercise of due process, basic fundamental rights including free speech and related protections, denying testimony and any truth or proper entry of the facts and evidence as allowed by law to make everything appear as they desired. The conduct is an assault against the integrity of the entire System of Government of the United States, its protection of the public, the defense of democracy and honor of the system as a whole. The actions of the defendants are in fact state sponsored Domestic Terrorism. Demands for more and more money up to $10,000.00 was demanded by Triple M Movers defendant Everett Murray for return of the stolen property. A Mover was hired in an attempt to retrieve property Triple M claimed to have, but then made excuses after claiming the property was stored in a warehouse [50] miles away in Stoughton, Massachusetts where Stoughton Officials were unaware that any warehouse was used by the mover. Stoughton Officials who wanted to render assistance stated they could not without the defendant Town of Arlington or defendant Attorney General acting and taking responsibility which the defendant Attorney General has refused.

103. On or about November 2002 a case was filed in Cambridge Superior Court before Houston, J, who again refused to acknowledge that the plaintiff James Carroll, III was not named in any eviction and evictions do not subjected the evicted parties to robbery of all their assets. Justice Houston was informed of the Permanent Injunction and reprimanded that the Injunction was given for a reason, something the defendants ignored. The court was to uphold the order before all others that followed it, and was not to ignore it to favor crime or actions that directly conflicted with it. Divorce orders and Trust Instruments before the divorce were premier preclusions coupled with the permanent injunction which Justice Houston and several other justices who aided the conspiracy refused to follow to confuse and mislead the public and attempt to trick and mislead the plaintiffs into believing was legitimate and legal. After pointing out the issues, Justice Houston, who attempted to prevent hearing these facts, became nervous after giving deference to the defendant Costantino and the defendant Everett Murray. Justice Houston claimed he would take the case under advisement which became more sabotage and obstruction of justice. Two conflicting blank unsigned orders were received and called valid by the clerk referencing the unsigned order that favored the instant defendants. The clerk refused motions of clarification and claimed the judge would not hear the motions without ever verbally hearing it from the judge, or allowing a hearing or receiving an order to that effect. A Letter in the form of a prayer of relief from the defendant Robert Costantino was found worded identically to one of the two suspect orders. The case was placed on appeal as case number P - 0644, although no decision was actually made to appeal from as what appears as an intentional means of protecting the criminal element who have been proven to be networking relationships contrary to judicial rules and ethics law of the Commonwealth and Professional Responsibility of Clerks of Court and Attorney Professional Conduct. The appellate court held the case for over a year preventing a speedy trial and immediate access to justice, whereby, the appeal was immediately dismissed upon claims that a final order in the case which was placed on appeal. Said order entered without ever giving notice, or allowing redress before a hearing (Fraud). The counsel for the Supreme Judicial Court attorney Pamela Lyons agreed that appeals hold cases in suspension until a ruling on the appeal would be made and a final order after the fact is not grounds for dismissal of an appeal as no final order could be given, nor should have been given. The appellate clerk was asked to allow reopening of the appeal and with unexplained hostility stated, "no", refusing to allow a full bench hearing and claiming that the case was placed on fast track for disposal. This is an intention denial of due process of law, and a violation of equal access and equal protection clauses.

104. November 2002 at Land Court in subsequent title case 2000- S -08 Chief Justice Peter Kilborn was given evidence including the Permanent Injunction for at least the third time. A Handwriting Expert Report showing subject deeds which the Land Court revived [13] years after cancellation were demonstrated again as forged mid divorce when property divisions are never made mid divorce, deeds can not be reverted out of trust back to the grantor according to M.G.L. chapter 266, section 57 and justice Kilborn was made aware that two trust properties had identical signatures with a concurrent title to James Carroll, Jr. contrary to law on Spendthrift trusts with a paper trail showing various issues of fraud connecting to the defendant James Carroll, Jr. The expert report was made known to justice Kilborn originally on November 2001, and he was made aware by testimony that even Eugene Brune Register of Middlesex South Registry of Deeds agreed that deeds once cancelled are never revived on Registered Land, but justice Kilborn intentionally violated the law and created a liability for the Commonwealth and the plaintiffs aiding fraud and crime and violating a Permanent Injunctive Order as a third person. The Permanent Injunction was designed to maintain status quo to uphold the trusts and the divorce decree and stop the tortious and criminal abuse. Chief Justice Kilborn received the testimony of Josephine Carroll which was emotional, as she cried and asked Chief Justice Kilborn, quote, " Is this what I get from the courts for serving a man for [40] Years loyally? This statement followed advising Justice Kilborn that he used the Powers of the Commonwealth to create an unlawful adverse possession contrary to law, revived deeds contrary to law which in fact were invalid by law and allowed a false sheriff sale to encumber property of parties not sued and not subject to a judgement which in fact had been voided. His honor was advised that he opened the door for robbery and conversion making the Commonwealth liable when the Attorney General holds a security fund and is to uphold and defend title to the holder in succession on title. The plaintiff Josephine Carroll complained to his honor about being reduced to below poverty and robbed of everything. Judge Kilborn appeared to be impacted by the testimony and claimed he was upholding the Permanent Injunction. Although his honor may have made orders to correct issues or was awaiting documents which were withheld from him by his clerk if orders were made, they may have been removed as dockets have been repeatedly found with false papers, unsigned orders maintained by the courts, rearranged papers as papers are removed, replaced and docket sheets are falsified. This has been proven with collusive activities and suits involving court personnel who have connected to this case and other actions in Federal Court. Judge Kilborn stated there are serious allegations here on which I want documents. Submit them to my clerk. This request was followed. Miss Fandaca time stamped documents promising to deliver them to the judge. Repeated abnormalities and issues were noted with Recorder Charles Trombly before becoming a judge where alleged orders were made with no signature of any judge, but attested by recorder Trombly as well as notably odd conduct with Miss Ambrose who was the clerk for Justice Kilborn. Awaiting a hearing date per the judge, a letter was received from Miss Ambrose claiming quote, "The papers submitted are being returned to you and have not been reviewed by Justice Kilborn. No further submissions will be accepted by the court without approval of the court." No order was presented to that effect, nor existed in the docket. This was one more appearance of sabotage and impropriety.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

104 a. A complaint was filed with the Commission on Judicial Conduct informing that his honor agreed that the case was a Nullity, had acknowledged Affidavits of Fraud on Title and that the property was held by a trust making tampering with the title a crime and a judicial fraud, a form of escheat by the Commonwealth which opened the door for successive crimes. The Commission on Judicial Conduct stated that his honor made a grave error and that the matters may have to be litigated or appealed, an unnecessary burden due to

Intentional Acts, resulting in irrepairable harm with abuse of power or misuse of discretion from high ranking justices who are learned is not necessarily mistake especially when they continue to aid parties who have been proven to have a criminal history of fraud and misconduct both inside and outside of the courts. misuse of the system which is essentially abuse of process and malicious prosecution and orchestrated crime.

105. Chief Justice Kilborn was found to have resigned immediately following a complaint in late November 2002, as the defendant Robert Costantino contacted the Handwriting Expert Eilleen Hurley certified in 2 state court systems and intimidated her. Witness Tampering is a crime as well as grounds for a mistrial. The expert wrote a letter of complaint to Land Court which remained unanswered complaining that the defendant Robert Costantino attempted to obtain work product, misrepresenting he was in fact counsel for the plaintiffs. The defendant attempted to intimidate her and demanded she send her work after he was sending a Land Court Subpoena. The expert could not contact her clients due to the criminal acts of the collective defendants. The expert realized that she was misled with a false subpoena and contacted the court who was not concerned because court personnel were aiding the defendant attorney Robert Costantino in criminal activity through the court with false action maintained by them. The plaintiffs attempted to have the succession of convoluted actions reviewed by many legal scholars, deans of law colleges, high profile attorneys, Presidents of Bar Associations, U.S. Attorneys both former and current U.S. Attorneys, attorneys who were former attorneys on U.S. Presidential cabinets and F.B.I. Special Agents concluding the case was quote, "a bought case", riddled with fraud, abuse of power and obvious corruption. Coupled with assented domestic abuse and judicial abuse." Numerous problems were immediately cited. Although proof of fraud and impropriety was presented to the defendant Attorney General, by repeated letters and visits to the Criminal Bureau and the Civil Rights Division with documents in hand and provided to the office. whereby the Criminal Bureau admitted that they had a website that stated Permanent Injunctions that were violated on fraud were prosecutable by the Attorney General under the False Claims Act, nothing was done with issues they agreed were criminal and public corruption but passed off as a civil matter. Matters have been handled timely, but no aid has ever been offered with so much wrong. No matter who has been contacted the question has been asked why a case so egrigious has not been handled by the Attorney General.

**UNITED STATES DIS.  RICT COURT DISTRICT OF  LASSACHUSETTS**

106. January 2003, a classic 1969 Plymouth Satellite coupe was taken from 7 Oldham Road per
alleged orders of Justice Severlin Singleton of Cambridge District Court in an eviction case. This
event was a car theft since the auto belonged to the plaintiff James Carroll, III and he was never
named in any eviction, nor served in any such case. Evidence has been found with auto fraud and
public records fraud on autos being registered in [2] two states which belong to James Carroll, III
tracking the fraud to the defendant James Carroll, Jr with identity fraud. The defendants, Robert
Costantino, Sophia Costantino, the law firm of Costantino Mason, Town of Arlington and John
and Kathy Gahan as co-conspirators, as well as Thomas Vangel with Murtha Cullina Roche and
DeGiacomo LLP collectively have aided in obstruction of justice and coverup of crime to
 prevent any recovery of stolen assets. Regardless of any publication in an Arlington News Paper,
the defendant James Carroll, Jr. had no legal right to take any property of the plaintiff son James
Carroll, III and dispose of it in any manner. The defendant Commonwealth through the judiciary
with the defendant Town of Arlington are both responsible for this issue because, the defendant
Town of Arlington through their police would not issue a police report, nor report the car as
stolen, nor seek criminal charges, when they admitted they knew who took the auto and a claim
check was needed to tow any car off of any property in the town, but claimed no record existed.
The defendant Attorney General is also responsible because his office has refused to address this
issue as well. The plaintiffs were again obstructed in the courts from recovery of any item, but
have been told by Administration at all levels to appeal or that the case is a civil matter to address
before the courts when all access to justice has been blocked, thus if access to justice is denied, a
civil matter will be addressed in the instant action.

107. The plaintiff James Carroll, III was never named in any eviction, nor would any eviction be
valid against a beneficiary who had his personal property in and on the property of a trust that he
has a contractual relationship and other legal rights. The defendants Costantino, Gahan, Town of
with James Carroll, Jr. directly violated the Permanent Injunction, all splitting the spoils through
conspiratorial fraud, networking, criminal force, racqueteering and coverup and, as well as many
torts. The actions themselves demonstrate the conduct with the proper public record showing the
truth prior to the actions of the defendants which show criminal fraud and conduct with false
records which are self evident thus substantiating the preponderance of the evidence and
burden of proof as prima facie evidence. The following year for Christmas the defendant James
Carroll, Jr. sent a copy of the publication for removal of the car and a personal records from
James Carroll,III which were taken from the home.

108. On March 2002, the defendant caused Bucelli Prudential Real Estate to list 7 Oldham Road
when the home was to stay with Josephine Carroll per a divorce decree and per Trust Instrument
was to remain in Trust. James Bucelli was contacted and advised to cease and desist and
to remove signs forthwith. The real estate firm was presented the Permanent Injunction and
withdrew the signs and offer for sale after making complaints to the Licensing Board and
Greater Boston Redevelopment Board. The defendant James Carroll, Jr. had changed the
locks denying access, while Arlington Police aided the defendant and made visits to him
at the stolen property with lengthy conversations. At about the same period of time John
W. Gahan, III who was working behind the scenes with many of the other defendants prepared a
false purchase and sale agreement. If any money was ever paid for the premises, it was an illegal
act regardless as one can not purchase stolen property and the Permanent Injunction was violated
by the defendant James Carroll, Jr, defendant Robert Costantino were in Contempt of Court and
sold stolen property at least on paper to the defendants John and Kathy Gahan.

111. On or about June 2004, a. a successive hearing finding that Chief justice Scheier gave a summary judgement without allowing a day in court or notice of matters when she stated she would be notifying parties of the next hearing date, she claimed she made the order and would not allow further review. Defendant Thomas Vangel of Murtha Cullina Roche and DeGiacomo who was representing the defendant John Gahan, III made an issue that they did not want any further contest on title and that the property was now that of the defendant John Gahan who had been given constructive notice to quit. Justice Scheier said, quote, " I know you Mr. Carroll (James Carroll, III) and you Mrs. Carroll have been through a lot, but I am going to leave matters up to justice Houston to decide. " "I am making orders that no further hearing on this matter will be allowed." Again this appeared to later be another stall tactic as papers were found unsigned and no listing that any judge was assigned to the case. Judge Scheier who was reported to the Commission on Judicial Conduct was not listed as the judge. An unsigned order to that effect was later found in the docket with nothing mailed to the plaintiffs. Justice Scheier made the orders which allowed more fraud and another false title, but she would not correct the issues she created. This appeared to indicate that Justice Houston was a complicitor with this group. Investigation has revealed many commonalities arrangements and individuals who know one another as well as live near each other who are all involved in this case. Following a complaint to the Commission on Judicial Conduct, the dockets were then found listed as open and contested with no indication of any assigned judge.

112. On or about February 2004, John W. Gahan, III complained about comments made on his voicemail which were asking him to obey the law and rights of the plaintiffs or that a complaint would be made to the Boston Bar of Overseers. The defendant called these comments a threat and filed case number 02-0244 in Cambridge Superior Court immediately following retaining an attorney who reduced in writing that all was fraud. The attorney failed to raise the fact that the defendants had violated a Permanent Injunction already in force whereby the order was never changed. A comment was overheard that we need to wait until September, but the attorney would not say what that meant. Justice Houston was fully aware that there was a Permanent Injunction in favor of the plaintiffs. He was provided with a certified order but ignored it stating smugly, I am concerned about the peaceful and quiet enjoyment of this attorney and his property as well as the threat to his livelihood. The question was raised as to what had happened to those very same rights of the plaintiffs who preceeded the defendant John Gahan, III and which were superior to his rights and claims. The defendant Robert Costantino presented a proposal to the plaintiff James Carroll, III attempting to coerse him and the plaintiff Josephine Carroll to sign over rights to lot 93b to James Carroll, Jr. and refrain from any proceeding in any state or federal court further in exchange for $50,000.00 to be paid over 4 years. The defendant Costantino made a bizarre and highly injurious offer which was seen as an extortive demand and was declined. He stated quote, "Your mental if you don't take the money and stop all attempts to litigate anything further in anyother court including New Hampshire. Sign the lot over and walk away. I'm prepared to give you $50,000.00 to do that. It has been all decided and there is nothring you can do about it so take the money and walk away, that is the best you are going to do." unquote.

113. The defendant John W. Gahan, III immediately claimed a contempt after being given a temporary order which was technically void and a threat in writing was made to arrest James J. Carroll, III if he came within 500 feet of the property at 7 Oldham Road Arlington and that any Arlington Police officer could hold him until the court decides to hear the case. With the successive kidnapping and judicial abuse, this would be a certainty if given a chance on total fabrications.

114. On or about June 2004, a petition was attempted in Land demonstrating that fraud existed on two titles on both Registered Land and recorded land and both titles had like fraud, attempting to file a new case. A Miss Terry Bradshaw refused to accept anything denying due process of law and equal access to the court referencing the unsigned order alleged by Judge Scheier to prevent due process of law. Terry Bradshaw requested the bailiff and escorted the plaintiff James Carroll, III from the court abridging his constitutional rights as an agent of the defendant Commonwealth of Massachusetts.

115. The real estate at 7 Oldham Road Arlington was rapidly subdivided. Unnecessary delays by John Gahan, III and Thomas Vangel allowed defendant Robert Murray, former Selectman who had been calling the unlisted telephone number of Josephine Carroll without permission and without ever giving it to him or any member of the town including police. A new home was built on the premised destroying the real estate at 7 Oldham Road and lot 93 b which was then made into 9 Oldham Road contrary to divorce rulings, deed restrictions, new zoning law called R0 as well as zoning law which requires proper set backs and prohibits building up to lot lines. The delays were to allow James Carroll, III to allegedly sell the land to Robert Murray and then to the new Town Manager, defendant Brian F. Sullivan who was confronted and stated he knew who the plaintiffs where and nervously disconnected the telephone when he was advised he received stolen property. The plaintiffs can attest that there have been many scandals in the Town of Arlington and many have involved real estate fraud and issues with the Town. These actions occurred when the state cases that all was based upon were never allowed to conclude where a pyramid scheme or a ponzi scheme of fraud exists from action to action with a falsified execution.

116. June 2004, through September 2004, the plaintiffs petitioned Probate Court, met more unnecessary obstructions to accessing the system, where more delays occurred before Justice Beverly Boorstein who failed to act. The plaintiffs were misled telling them the docket could not be found when it has been kept by Mr. Havey behind the divorce counter. The plaintiffs were sent from department to department advised no actions were pending and Justice Boorstein failed to act . On a following date, an order was received without service from the defendants James Carroll, Jr. and Robert Costantino signed by Justice Randy Kaplan without having a day in court denying due process of law, equal protections and equal access to the courts when the defendant James Carroll, Jr. was in Contempt of court in several courts, had unlawfully defeated those orders and had deprived the plaintiffs of all of their Constitutional, Civil Rights and property on rampant felony crime. The Order read that Josephine Carroll and her legal representatives could not access the court. Inquiry to the clerk claimed legitimacy and declared good service was made where it must be assumed that defendant Kathy Gahan pretended to be Josephine Carroll at 7 Oldham Road Arlington, or service was again falsified as it was proven many times through the defendant Office of the Middlesex Sheriff James DiPaulo.

117. As a result of the compilation of actions the plaintiffs have experienced diminshed health, basic human rights, deprived of all comforts and memories of a lifetime, deprived of any structure in their lives being denied life, liberty and the pursuit of happiness and thereby caused losses into the Millions of dollars. The actions of the defendants have caused a drastic loss of earning capacity for James Carroll, III, a career, education and both plaintiffs have been denied any ability to be free from stress and anxiety and interference with their personal affairs, credit, creditors with a extremely diminished quality of life as well as depriving the plaintiffs of any right not entioned under the 9th Amendment of the United States Constitution.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS
## COUNT I
Violation of Civil Rights - Official Capacity defendants only

118. The plaintiffs reasserts and reincorporates all avertments set forth above into this complaint

119. The judges and Register officials of each Massachusetts Court in this case, especially Probate Court, Land Court, Superior Court and District Court with improprieties registered in the Registry of Deeds, as well as grievous conduct by officials who represent the Office of the Middlesex Sheriff, the Town of Arlington and the Attorney General and their associates have individually, in their official capacities and jointly conspired by engaging in a pattern and practice of violating the due process rights guaranteed to the plaintiffs Josephine M. Carroll and James J. Carroll, III under the 5th and 14th Amendments to the United States Constititution which were denied as follows;

A. The right to appeal adverse decisions in each and every case the plaintiffs, the right to prevent unnecessary actions and unfounded litigation. The right to appeal or relitigate adverse decisions, due to falsified records, concealment of the case record, manipulation of the case file and or the judicial process, refusal to docket hearings, accept evidence and testimony and the marking briefs and actions denied and or the entering of defaults without a day in court without notice or juristiction by the court, and the completion of actions on pure fraud and unsigned court orders as well as the falsification of the case docket(s) and the false creation of claims, the removal of key documents, or the refusal to recognize the foregoing issues in key hearings A denial of due process, equal access and equal protections.

B. The right to a fair unbiased tribunal ;

C. The right to timely justice, a speedy trial, access to the system rather than continued delays, withholding or removing any documents that should be properly contained in case files of the plaintiff predominantly the plaintiff Josephine M. Carroll and the plaintiff James J. Carroll, III past or future, prejudicing the plaintiffs beyond a proper means of recovery and or preventing any further hardship, loss or deprivation of rights and remedies.

D. The right to an accurate, truthful, complete written and or audio record of each case which are integrally based upon each other.

E. The right to access to the public case record and proper administration of deed recordings and access to remedies before the courts with proper filings, before administrative agencies and before tribunals.

F. The right to tapes of hearings, rather than a lack of any recorded hearing and or the destruction of tapes in a case that is open.

G. The right to an evidentiary hearing in this matter, with an accurrate, unbiased and truthful record predicated on actual legal grounds in accordance with law and according to rules doctrine, the proper procedures of the courts, and in accordance to what is provided by law.

H. The right to be heard before being incarcerated; the right to a fair hearing and a Jury Trial of one's peers before being deprived of life, liberty or property.

I. The right to be free from intrusion by Government, to have privacy and a protection of privacy as provided by Federal Law. The right to be free from crime ; the right to be free from criminal stalking by use of law enforcement and access by court and public resources as well as a right to remain free from abuse of process and malicious prosecution, false arrest and false imprisonment.

J. The right to be free from crime and to be free from being assaulted, battered, kidnapped; from being set up through networking of the system; from being subjected to crime in general including fraud and rigged proceedings and or the right to be free from excessive force, trauma, intimidation, threats, undue influence, emotional distress, mental anquish and or from being deprived of freedom of movement.

K. The right to hold property, to be free from adverse false claims, fraud, to maintain accurate and truthful records as have Government preserve the same ; a right to maintain one's affairs including the administration of one's estate. The right to pass on a legacy and to maintain all facets of administration of one's property and to maintain the Peaceful and Quiet Enjoyment of one's property. The right to maintain protections as prescribed by law and to demand elected officials, the courts, law enforcement, municipalities, the District Attorney and the Attorney General to do the same and preserve those rights as prescribed by law.

L. The right to enjoy the fruits of one's labor ; to have those rights protected and not abridged, the right to be protected from a criminal element ; to be free from a disgruntled exspouse and his cohorts who seek to aid, injure and from profit and seek opportunity at the expense of another and, a right to have enforcement of the law to maintain awards by the court and to have the courts uphold permanent orders of protection and restrain in defense of these rights.
The right to have all Constitutional and Civil Rights protected and not to be treated as a third class citizen or to be given excuses for denying those rights.

M. The right to be from unjust incarceration and deprivation of rights and property over alleged non payment of attorneys fees to an opponents lawyer, especially one caught in fraud for attempted theft, conversion of U.S. Treasury funds, violation of permanent orders and who was cited for felony fraud and misconduct.

N. The right to enjoy the companionship of blood relatives in a mother son relationship and direct the destiny of one's life as they deem just without intrusion of any other person, entity or governmental body or judicial tribunal especially after permanent orders to maintain those rights and in defense of those rights as enumerated under Federal and State law.

120. All of the actions the defendants set forth as aforesaid were done under color of law.

121. No effective remedy at law can now be found ; as damages to the plaintiffs and their property are irreparable due to the acceptance of false unfounded proceedings initiated and assented to by the Commonwealth and it's judiciary, defended by the Massachusetts Attorney General contrary law and due to obstruction of justice, denial of access to the system and denial of a defense of any and all rights, the plaintiffs can not seek justice from corrupt state courts where relationships, politics and fraud prevails over righteousness, law and ethics. The courts in which the plaintiffs Josephine M. Carroll and James J. Carroll, III have been proven to be corrupt by the use and interference with rights with orchestrated conspiracies by racqueteering, fraud and networking of select justices, court personnel and aid by corrupt individuals who connect to one another in various levels of the system abashing all checks, balances, safeguards and protectionism as well as consumerism under the law such as the Fair Credit Act, the Violence Against Womens Act. The Defense of Marriage Act, the False Claims Act and U.C.C. code to name a few. The proof of these activities were noted by ethical justices who defended the oath they swore to uphold issuing and maintaining a Permanent Injunction which other justices and court personnel and their associates with the defendants violated as complicitors, agents or third persons.

121 a. The courts in which the plaintiffs Josephine M. Carroll and James J. Carroll, III have accessed when initially allowed to do so accepted proof of the corruption, the interference with rights with orchestrated conspiracies by racqueteering, fraud and networking of select justices, court personnel and aid by corrupt individuals who connect to one another in various levels of the system abashing all checks, balances, safeguards and protectionism, as well as consumerism under the law. Such actions violate the Fair Credit Act, the Violence Against Womens Act. The Defense of Marriage Act, the False Claims Act and U.C.C. code to name a few. The proof of these activities were noted by ethical justices who defended the oath they swore to uphold issuing and maintaining a Permanent Injunction which other justices and court personnel and their associates with the defendants violated as complicitors, agents or third persons.

122. Both plaintiffs Josephine M. Carroll and James J. Carroll, III and those they are legally responsible to under contract have been irreparably harmed by the actions of the defendants' in numerous ways and failures of the State Court System, the Arlington Police and the Attorney General to act as described in the damages section in a campaign so egrigious that any ethical counsel reviewing the case have asked if the plaintiffs are literally dealing with "the Mafia" and retort that we have definitely opened up their eyes as to the ethics of those involved. Members of law enforcement have been skeptical until seeing the facts with their own eyes, whereby they are thoroughly convinced, declaring it is an outrageous case and abashes the entire system of justice thereby, asking why the Attorney General has failed to enforce the law.

WHEREFORE, the plaintiffs request the following relief with specific performance ;

A. Uphold the existing Permanent Injunction by Zobel, J in Cambridge Superior Court case, 95-6545 in favor of the plaintiffs finding the defendants in Criminal Contempt and prosecuting accordingly, returning the plaintiffs to their home and recovering assets and damages accordingly.

B. Issue an Order for the Grand Marshalls to remove all trespassers occupants at 7 an 9 Oldham Road Arlington, Massachusetts and arrest any party who refuses to be subject to sanctions of the court and order allowing Josephine Carroll and James Carroll, III to lawfully return to their home.

C. Issue an Order by Specific Performance to recover all property taken from the residence of Josephine Carroll, to return the property to the original condition regardless of expense and order the defendants to make restitution for all losses, damages and incidental losses, punitive damages to make the plaintiffs whole. Any property not returned to defendants to be found by law enforcement and the defendants forthwith and it return of any item of property is not recovered, the defendants to be assessed three times the cost of the item.

D. Order to correct all clouds on title and remove any encumberance on the land which occurred through James J. Carroll, Jr. declaring all successive deeds void

E. Order Arlington Town Manager to remove structure from 9 Oldham Road Arlington without further damage and restore the land to the prior condition to be overseen by the plaintiffs and Metropolitan Life Insurance.

F. Issue Injunctive Orders that all parties named as defendants and any of their associates who interfere with the plaintiffs in any way will be held in contempt of court and arrested by any law enforcement officer following complaint to the court subject to sanctions the court deems subject to mandatory requirements by statute.

G. Issue an injunction upon the Courts of the Commonwealth, all agencies and municipalities named in the action from interfering with the rights and property stating any member thereof who takes any action contrary to the order to be subject to arrest immediately following summons and complaint before the court if the court finds the party in contempt of court.

I. Order Metropolitan Life to assist in repair and recovery giving them Order of the court to serve upon any law enforcement agency to assist in recovery and to comply with orders of this court as well as a demand for payment of damages from Town of Arlington and all named defendants to pay for losses and damages to satisfy all claims of the plaintiffs. Order the same defendants to pay $10,000.00 to the discover card company with a written apology that they strategized a criminal plot were prosecuted and are making restitution to them.

J. Issue an Order to prosecute, incarcerate and disbar the attorneys and or apply sanctions against the defendants, Robert Costantino, John Gahan, III, Thomas Vangel, Robert Murray, Brian F. Sullivan, avid MacNamee, Officer Hughes, Officer Greeley, James Carroll, Jr., Richard Boyle, Gerrald Loomis, Officer Flynn, Mr. Dube, James Granitzas, Everett Murray, Steven Donnelly, Michael Faye, Gerrald Breen, Jane Doe Deputy Sheriff, Evan Green and any other defendant party the court deems just.

K. An award of money damages against all defendants for violations of the plaintiffs civil rights.

L. A judgement in the plaintiffs favor that all defendants individually and in concert violated the both plaintiffs Constitutional Rights protected under the 5 th and 14 th Amendment as due process rights.

M. An award of all damages against all defendants for loss of companionship - consortium between Mother and son plaintiffs.

N. An award of money damages against all defendants for emotional distress;

O. An award of money damages against the defendants for punitive damages for pain, suffering and deprivation of rights property and protections at their hands as well as for beatings and kidnapping due to their actions and inactions.

P. An award for previously expended attorneys fees for defense against the defendants improper actions in the Massachusetts Courts and other tribunals

Q. An award of costs for lost wages, lost abilities for future acquisition of assets as well as years lost for abuse.

R. Any other relief that seems just.

## COUNT II

Civil Rights Violations - Individual Capacity Defendants Only

123. The plaintiffs reassert and reincorporates all averments set forth above into this count.

124. The defendants in their individual capacity, engaged in a pattern and practice of depriving the plaintiff Josephine M. Carroll and James Carroll, III of their respective protected due process rights under the 5 th and 14 th Amendments to the United States Constitution as set forth above.

125. Defendant Robert Costantino and James Carroll, Jr. in collusion with the defendant Commonwealth in conspiracy with the District Attorney Miss Moffet and Justice Barbara Pearson obtained false restraining order(s) on false pretense for purposes of kidnapping and enforcement of a criminal plot to defraud, knowingly filed a false police report and false violation to kidnap both plaintiffs depriving them of their Constitutional and Civil Rights and libeling the plaintiff James Carroll, III on the public record, orchestrating a kidnapping and false arrest without probable cause with Arlington Police Officers David MacNamee, Lauder and Grobel. The actions of the defendants prevented the plaintiffs from having freedom of movement, and or attending to necessary medical needs. The collusive actions of the defendants caused the plaintiff James Carroll, III out of pocket loss, attorneys fees, a missed exam eliminating a semester of work in college and caused him to have to drop out of college prohibiting him from completing degrees, causing him to have to accept lesser jobs than his skills and knowledge and thereby depriving him of a normal life and future, a greater income and a loss of savings as he was forced to pay out more funds to support, legal fees and all types of losses to maintain his elderly mother and pay for not only her maintainence, but the upkeep to her home which has all been been in vein due to the defendants.

126. The defendants David MacNamee, Officer Hughes, Richard Boyle, Gerrald Loomis, Officer Greeley, Officer Flynn, Officer John Doe 1 through 3, Mr. Dube (Herbs Locksmith) James Granitzas and Jane Doe Granitzas ( We Haul Legal Movers ), Arlington Fire Rescue John Doe 1, James Carroll, Jr., defendant Town of Arlington, Board members, defendant Frederick Ryan, John Maher, and Evan Green, collusively conspired, acquiesed, aided and abeitting the break and entry into the sanctity of the domicile of the plaintiffs violating their right to privacy, interfering with their peaceful and quiet enjoyment of their property, allowing their locks to be illegally copied, strangers to violate their rights and openly travel freely through their home, their home to be ransacked, their persons to be assaulted, battered threatened and kidnapped and then to be robbed of property by aid of armed officers of Arlington Police allowing unattended strangers having full unsupervised access to the home while being unlawfully detained outside. James Granitzas assaulted and threatened James Carroll, III and attempted to extort and deprive him and Josephine Carroll of property by theft and deception with all other defendants in collusion. Defendant Dube violated the rights of the plaintiffs by tampering with a contractual relationship on two separate contractual relationships, criminally trespassed, acted in conspiracy and used burglarious tools while unlawfully fabricating false blank keys contrary patent law and contract. Mr. Dube knowingly violated the rights of the plaintiffs acting smug and believing all was a big joke as did Richard Boyle who lied to the plaintiff James Carroll, III as well as Gerrald Loomis who also criminally trespassed, thought all was humorous and lied giving false papers to stage a pretense and coverup of a felony crime. An then surveil the premises to insure a final assault will be successful to destroy the lives of the plaintiffs and allow public officials as deputy sheriffs and others to make them homeless clotheless and to deprive them of all their rights and property for others to profit on an obsessed disgruntled person and to aid a murder plot and robbery and conversion of real estate on total fraud.

127. The defendants collectively interfered with the familial relationship between Mother and Son, causing trauma and stress to an elder and attempting to murder her through abuse, harassment, intimidation and ridicule to capitalize on a health condition of a person required to be free from stress and anxiety in which all defendants were cognizant and thereby capitalized on harming a disabled infirmed person over age of 60, a felony attempting to cause her early demise (Attempted Murder). The assistance of John Doe 1 Fire Rescue operator is prima facie evidence of this plot. The defendant Attorney General is also responsible for neglect and breach of duty after reporting the crimes to the District Attorney and the Attorney General. Town Counsel also aided and abeitted failing to prosecute any party and ultimately aiding a plot to fruition for interests of the defendant Town and defendant Town Board implicated as complicitors in the crimes aforesaid including attempted murder and elder abuse.

# UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

128. The defendant James Carroll, Jr. Conspired with the defendants Robert Costantino, John Gahan, III, Thomas Vangel their law firms and an uncertain number of state, county and town officials, employees part of which are named with the complaint all paragraphs reincorporated herein with additional agents as defendants, knowingly and intentionally continued a plot to murder, commit domestic abuse, financial crimes including exploitation of an elder and both plaintiffs Josephine M. Carroll and James J. Carroll, III and those they held pledge or contract with to thereby be deprived of all rights income and property while obstructing justice, aiding abuse of power, assault, battery, robbery, auto theft and title fraud, and identity fraud, credit card fraud, mortgage fraud, forgery, real estate fraud and a cast of crimes against the plaintiffs while depriving them of all food, shelter, clothes, medicines, autos, property , of various descriptions including real estate and their Constitutional Protections with Civil Rights under the law attempting to maintain these violations of law by trick, deception, force, threat, undue influence intimidation, deadly force and other such malicious acts after knowingly being enjoined, caught repeatedly in fraud, sanctioned and chastized and without regard of the impact and seriousness of the crimes and torts continued to abridge the rights of the rights of plaintiffs.

129. Defendants Steven Donnelly Gerrald Breen and Jon Doe 1 Locksmith beat the plaintiffs and deprived the plaintiffs jointly and severally of their rights and property. The deputy sheriff Steven Donnelly has repeatedly worked as an agent for hire for James Carroll, III by his own admission receiving corrupt offers and bribes contrary to law to aid in felony crime and elder abuse and exploitation as well as domestic abuse exposing public corruption with the aid of creating false sheriff sales and false sheriff deeds and over $1 million dollar extortion demands. The defendant aforesaid has attempted to cripple the plaintiff James Carroll, III, has deprived him of his Constitutional and Civil Rights on false documents (Vacated restraining orders) with the defendant James Carroll proven before a court of law and caused the plaintiff serious debilating injuries which have become arthritic and continue to plaque the plaintiff The injuries include but are not limited to loss of eye sight. The defendant Steven Donnelly had kidnapped and falsely imprisoned the plaintiff James Carroll, III whereby he was denied medical care and experience excrutiating pain and discomfort, humiliation and deprivations of rights and medical care, as well as improper threats from the Probate Court where he was never a party to deprive him of money to continue and unwarranted imprisonment for [2] two more weeks and through his criminal acts persuaded a justice to induce the plaintiff through court order to extort payment of $300.00 which was proven was not legally due him especially when the deputy sheriff held no powers to arrest on 209A restraining orders. The defendant Steven Donnelly caused the plaintiff loss of consortium / companionship with his mother causing him mental anquish and emotional distress and worry about her disposition. The deputy sheriff Donnelly particularly with all other defendants aided in attack against an elder, attempted murder and deprived the plaintiffs of all their rights, protections and property retalliating for exposing his corrupt activities and behavior.

60

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

130. The defendant Stephen Donnelly retalliated for complaints to Sheriff DiPaulo and the Attorney General whereby both defendants allowed the crimes to go unpunished and thereafter allowed the defendant Donnelly to aid in a plot of cover up and crime to deprive the plaintiffs of all property to aid others connected in a system and a disgruntled family member to thereby create false documents and false cases with the other defendants to misuse the powers of the Commonwealth like a criminal army much like the Mafia turning the Commonwealth of Massachusetts into a Corrupt Organization with the aid of The Middlesex Deputy Sheriffs Process Service Division and Arlington Town Officials with numerous state and local official and other agents who aided, acquiesed networked the system with members of the judiciary who made the plot possible aided by false papers of the defendants James Carroll, Jr., Robert Costantino and John Gahan, III, thereby defended by Thomas Vangel and the firm of Murtha Cullina and Digiacomo and members of the judiciary who they were alligned with. All crime and torts were conducted under color of law to uphold past crimes, build upon them and complete the agenda while obstructing justice to prevent detection and resolution. All defendants intentionally and knowingly defied a Permanent Injunction to make the aforesaid occur for self enrichment and unjust enrichment through conversion and rampant crime while depriving the plaintiffs of all rights, property and protections.

131. Defendant Steven Donnelly deprived the plaintiff James Carroll, III of property taken out of the pants pocket of his person removing a check book and keys and sexually assaulting his person in the process. The defendant Steven Donnelly ordered the robbery and theft of all items from both plaintiff and others the plaintiffs were responsible to by law invading their privacy and the sanctity of their home on a plot he helped to arrange to visciously attack an elder and affect her death and to retalliate against the plaintiff James Carroll, Jr. for defying the defendant and catching him in past crimes as well as for whistle blowing on those crimes. The aforesaid defendants with them with the defendants Everett Murray John Doe 1-6, deputy Sheriff Jane Doe and Deputy Sheriff Michael Faye as well as with the defendants James Carroll, Jr., physically assaulted, robbed and held the plaintiffs hostage robbing the plaintiffs of all of their property and making them homeless to destroy them and aid the defendant James Carroll, Jr. who was allowed to videotape the assault for a trophy and for humiliation, defamation and ridicule of the plaintiffs against Permanent Court Orders which were hand delivered to the Deputies. Malicious acts were aided so that the defendants could inflict intentional emotional distress aided by the other defendants at a later date of the defendant James Carroll, Jr's choosing so that all could walk off with the spoils. The defendants James Carroll, Jr. with orchestration of Robert Costantino and John Gahan, III, Thomas Vangel, Robert Murray former Selectman, Brian F. Sullivan, Town Manager and the defendants comprising Arlington Board of Selectmen, all named Selectmen, Selectwoman, Town Counsel John Maher, Police Chief Frederick Ryan collectively violated the rights of the plaintiffs on August 5, 2002 by refusing them protection, by aiding the plot to that point and continued furtherance of the plot by helping to remove the plaintiffs from their home, making them in need of everything in their lives and intentionally shattering it with the foregoing defendants to allow the defendants John Gahan, III who orchestrated much of the plot, former Selectman Robert Murray and current Town Manager before appointment to take over the stolen real estate and develop it for the defendant John Gahan, III who may be a straw for the town of Arlington and another Selectman and for Brian F. Sullivan Town Manager.

131 a. All defendants named have worked a part in conspiracy with other defendants through at a minimum the defendant James Carroll, Jr. and Robert Costantino aiding and abeitting. The fact that all admit their knowledge of the events and willingly accepted stolen property and acquiesed to numerous felony crimes especially against an ill elder demonstrates that the defendants collectively worked in a grand scheme in racqueteering, coverup and evasion from prosecution, obstruction of justice and rampant successive felonious crimes to deprive the plaintiffs of their Constitutional Rights and all protections under the law.

132. The defendant Attorney General is equally liable for neglect of duties of protection care and defense and administration of law and protection of the weakest members of society in the Commonwealth aiding a coverup and forsaking his duties allowing car theft, identity fraud mortgage fraud, title fraud real estate fraud, conspiracy and elder abuse with public corruption and racqueteering to go on unpunished treating criminals hiding behind the system.

133. All of the actions of the defendants set forth aforesaid were done under color of law.

134. The defendants collectively abridged the rights and protections of the plaintiffs causing them intentional mental anquish, physical harm,intentionally emotional distress, intentional humiliation and embaressment, libel, defamation and intentionally deprived them of food, clothes, shelter and all possessions for profit and conspiracy with one another, all defendants aiding to split the spoils or aid one another in their agendas, damaging both plaintiffs and those they held responsibilty to under pledge or contract irrepairably harming all.


WHEREFORE, the plaintiffs request the following relief ;

A. A judgement in favor of each plaintiff declaring that all of the defendants individually and in concert, violated the protected 5 th and 14 th Amendment due process rights of Josephine M. Carroll and James J. Carroll, III.

B. An award of money damages against all defendants for violation of each plaintiffs civil rights.

C. An award of money damages against all the defendants for loss of consortium and companionship between mother and son.

D. An award of money damages against all defendants for emotional distress intentional or otherwise.

E. An award of money damages against all defendants for punitive damages.

F. An award of money damages against all defendants for losses, out of pocket costs including attorneys fees past present and future in the case for defense against the defendants improper actions in the state system which includes, but may not be limited to Lowell Superior Court, Lowell District Court, Lawrence District Court, Marlboro Probate Court, Concord District Court Concord Satellite Probate Court, Cambridge Superior Court, Cambridge District Court, Middlesex Probate Court, the Land Court, the Supreme Judicial Court, the Town of Arlington and it's various official and it's police, the Massachusetts Registry of Motor Vehicles and the Middlesex South Registry of Deeds, the Middlesex District Attorney and the Office of the Attorney General and the Town of Waltham and it's police.

G. An award of attorneys fees and costs for prosecuting this action.

H. Any other relief which the court deems just.

COUNT III
Declaratory Judgement for Title Fraud Conversion
Abuse of Process and Malicious Prosecution

135. The plaintiffs jointly and severally reassert and reincorporate averments set forth.

136. The Permanent Injunction in Cambridge Superior Court case 95 - 6545, by Zobel, J. contained Mandates that prohibited any Contact ; any communication of any type ; any theft or vandalism of property ; any interference with liberties ; any interference with property rights and was permanently enjoining defendant James J. Carroll, III his counselors including defendant Robert A. Costantino, their agents and third persons including John W. Gahen, III, Kathy Gahan, Sophia Costantino, Robert Murray, Brian F. Sullivan, and the deputy sheriffs and their associates as mentioned aforesaid and all other defendants who violated the order thereafter with these defendants. The object of the Honorable Hilliar Zobel was to maintain the status quo of all parties in the action protecting their rights in accordance to a divorce decree including Josephine Carroll as a divorce woman, the rights under a Spendthrift Trust, an adult son and his rights and that of beneficiaries , voiding a fabricated judgement by default involving misuse, fraud, criminal activities which the justice noted and thereby referenced the defendants as gorrillas and guerrillas and entered the orders to enjoin the defendants from use of an alleged judgement from a juristiction that could not legally bind the parties after a final award of divorce whereby the defendant James Carroll, Jr. never obeyed any order of the court. The defendants collectively and in conspiracy with each other became participants of joint venture all being in contempt of the permanent order operating unfounded void litigation through relationships in the system to defeat all orders and rulings that preceeded their actions which legally under any circumstance were allowed by law. The successive cases created a convoluted chain to build a pyramid scheme or ponzi scheme to thereby revive voided, cancelled forged titles out of trust contrary to law and a protections of Spendthrift Trusts which are free of all creditor action on a matter than never exercised juristiction over the legal parties holding deeds or ever levied judgement against such parties including the trust. Successive actions were orchestrated fraud, crime and conspiracy. The justices of the courts of the Commonwealth in the actions assisted the defendants, refused evidence, testimony and ignored the law, doctrine, rulings and other such elements necessary for fair unbiased, untainted and ethical administration of justice thereby usurping a legislative function, making their own laws and rulings contrary to State and Federal law to favor individuals already caught in fraud crime and permanently restrained and made known to these justices. The defendants and their cohorts undermined the Constitution and all based upon it. The unlawful contrary to statutes and case law with staged actions allowed the defendants to follow the same opportunities under the guise of legal action which was staged, falsified and maintained according to their desires in mock actions built upon which were legally void by operation of law. These acts allowed criminal activity to flourish unchallenged, capitalizing on an ill elder intentionally depriving her of funds to live and defend while capitalizing on an obsessed disgruntled exspouse who the defendants profitted upon and aided to enrich themselves.

136 a. The defendants as aforementioned obstructed justice, due process, all protections, privacy, equal access and equal protections allowing furtherance of a scheme to additional defendants to profit by creating false titles to build a title of ownership on stolen property and then actions to withhold the stolen property and exploit it. The actions of all defendants collectively caused sizeable malicious and willful damages with the aid of the defendant Town of Arlington through agent Mr. Bilafor changing tax bills, and the building inspector with Town Selectmen aiding development after knowingly having police break and enter and stalk the plaintiffs. These facts were part of a covert agenda to deny the plaintiffs their rights and protections. Charlene Phibrick attempted to aid this plot with Brendan Callanan and the East Cambridge Savings Bank, depriving the plaintiff Josephine Carroll basic alimony contrary to law. Defendants Philbrick, Callanan and the East Cambridge Savings Bank aided conversion and absconded with U.S. Treasury Federal Funds, while depriving the plaintiff of funds to live, choice of counsel, usurping the rights of Josephine Carroll in totality, adding financial and other burdens to James Carroll, III, through covert conspiracies to effect illegal search and seizure of the person and their property against a Permanent Protective Order of restraint, attempting unlawful restraint of the person, false commitment and kidnapping with perjured testimony, trespass, libel, defamation, slander and conspiracy arranged in conspiracy to deny the plaintiffs due process rights, Constitutional Rights and Civil Rights.

137. The combined actions contrary to Permanent Injunctive Order encumbered the land contrary to Registered Land law and title registration, a Trust Instrument and proper title and therefore, violated the rights of the plaintiffs and those they were responsible to by the those who swore to defend the law and administer proper justice overstepping the Legislature and Congressional bodies and functions as well as obligations held by the defendant Attorney General, whereby the defendant Attorney General and all other defendants who held liability and responsibilty evaded those obligations and requirements as prescribed under the law, including ignoring the obligations under the Massachusetts Charter, evading responsibilty, liablity and maintaining silence. Silence under the law is assent. Therefore, the defendants aided one another in a conspiracy and this court in the interest of public justice can and should only declare all actions following the Permanent Injunction as injurious and to the plaintiffs and void by law restoring land titles, structures and returning all stolen assets to the condition precedent as existed before August 5, 2002 and as was proper on July 6, 1997 when the Permanent Injunction issued prior to any interference of the defendants.

138. The justices of the courts who aided the defendants namely Barbara Savitt Pearson, Chief Justice Peter Kilborn, First Justice Beverly Weingart Boorstein, William Hygas, Jr., Severlin Singleton, Justice Brian Merrick, Julius Houston, Chief Justice Karyn Scheier and Justice Peter Agnes jointly openly and notorious deprived plaintiffs of all their due process, rights, acted in a nonadjudicatory manner and in effect rewrote both Federal and State Law to their own choosing on total fraud, trick and conspiracy with a total lack of anytype of juristiction working voided actions against Permanent Orders of Restraint and Protection to intentionally defraud the plaintiffs of their rights and property and to usurp the laws of the United States whereby a former U.S. attorney called the succession of fraud a bought case. These actions deprived the plaintiffs of remedies under at law in violation of due process requirements in the Fourthteenth Amendment to the United States Constitution, and Article XI of the Massachusetts Declaration of Rights.

## UNITED STATES DISTRICT COURT DISTRICT OF MASSACHUSETTS

139. The actions of all defendants involved were joined together with the powers of their positions of authority to exploit a domestic issue while combining the joint resources of the system for private gain violating the Constitutional Separation of Powers which the vary same entities then used as a defense for denying aid and protection to the plaintiffs and thereby violated Arts. XX and XXX of the Massachusetts Declaration of Rights. Records in several cases were found falsified, attempts to correct the matters were obstructed and appeals, were not allowed or if allowed were denied on illogical reasoning that was not allowed by law and baffled members of the court administration agreeing the reasoning was bizarre. The record including docket coversheets were changed later indicating actions that never occurred with the involvement of the plaintiffs although the record claimed to the contrary. A tainted record made it impossible to make proper remedies and appeals on total fraud that by law should have never occurred.

140. The plaintfiffs have been damaged in enumerable ways by the defendants making anyone who views the case state it is the most egrigious case they have ever encountered.

WHEREFORE, plaintiff requests that the court declare that all rulings and decisions favoring the defendants following the Permanent Injunction be declared Null and Void.

### COUNT IV

Intentional Interference with Constitutionally Secured and Inalienable Rights

141. The defendants individually, jointly and severally, in their official capacities with their associates in conspiracy with each another, intentionally interfered with contractual relationships, familial relationships, and all of the Constitutionally secured Rights of the plaintiffs and all rights allowed by law including under divorce law, estate law, trust law and Protective Orders on Injunctive law.

142. The defendants in essence abducted, enticed, threatened, coersed, battered, terrorized, criminally harassed, used various means to financially destroy the plaintiffs, vandalized, taunted, robbed, traumatized, used excessive force, humiliated, libelled, defamed, slandered, stripped by criminal force and trick of all rights and property including by use of mortgage fraud, bribery, identity fraud, credit card fraud, bank fraud, wire fraud, mail fraud, blackmail, embezzlement, extortion, racqueteering, undue influence, public records fraud, forgery and conspiracy, abuse of power, abuse of process, false pretense, false witness, malicious prosecution, stalking, privacy invasion and conspiracy emotionally, physically and monetarily harmed and destroyed the lives of the plaintiffs depriving them not only of the comforts, protections rights and property in their lives, but years of their lives no amount of money can compensate.

143. Through an active wrongful joint effort, knowing that the plaintiffs had placed a great deal of time labor and love into their home with pride in all they possessed which was an accumulation of over [50] fifty years for Josephine Carroll, the defendants intentionally wronged the plaintiffs, knowing that the plaintiffs would not consent and agree to their extortive demands depriving them of their life liberty and property as well as due process and all rights and remedies at law.
The defendants individually, jointly and in conspiracy conducted open and notorious abuses to the plaintiffs to cause further and successive acts of intentional emotional distress, obstructing justice to evade detection and prosecution and control the plaintiffs as victims to torment and sadistically manipulate at the will of the defendants.

144. The defendants such as Robert Costantino, John Gahan, the Town of Arlington through the defendant Town Counsel and the defendant Frederick Ryan with James Carroll, Jr. and other defendants harbored personal property and a motor vehicle from the plaintiffs refusing to surrender all stolen property including real estate after constructive notice and full knowledge of Permanent Court Order, divorce awards and proper titles. The defendant requested outrageous sums of money from the plaintiffs and made unnecessary obstacles and delays and intentionally blocked their rights to exploit any asset financially and harm the plaintiffs in any way possible especially to effect the death of the elder Josephine Carroll so that monetary gains could continue which may include an capitalizing on a life insurance policy. The actions of the defendants removed the plaintiff from easy access to friends, neighbors, family, doctors and merchants which they had grown accustomed to in their lives and had built relationships. The defendant removed mature trees, a custom shed an antique weathervane and cupola, changed all windows, made new door ways, changed the interior of the home including removing rare walnut cabinets, antique lighting fixtures and many irreplaceable items from the home including rare plantings of flowers and trees, as well as creating instability of the land on a hill engineers warned against building upon with shale, clay and springs that was warned would cause slippage and the property to literally crack in half damaging all abbutters and causing a myriad of suits. The defendants imposed a [2] nd, second home on unbuildable land against Probate Rulings, zoning law and deed restrictions as well as on fraud and devalued the property extensively on a custom Georgian Colonial situated along the Winchester Country Club making the address 9 Oldham Road Arlington. The defendants also impacted tax assessments of the land and falsified values contrary to state law.

145. The plaintiff Josephine had attempted to access the Probate Court to file contempts, motions of enforcement of the divorce decree and equitable relief. The defendant John Gahan, III after constructive notice interfered with a post divorce spousal relationship overstepping the rights of the plaintiff to maintain his rights as a criminal trespasser and a person who received stolen property over $250.00 or what is often called Grand Larceny. The plaintiff was thereby denied access to her home, access to the courts whereby good service was claimed which by law would have to be delivered to the "Last and Usual Place of Abode" where the defendant Gahan is claiming as his residence, claiming his rights were superior as a "bona fide purchaser".
No one by law can gain legal title to stolen property, nor create unlawful contracts to deprive a person of their rights and property.

## UNITED STATES DIS⌐RICT COURT DISTRICT OF MASSACHUSETTS

146. The defendants collectively deprived the plaintiffs of comfort, of use of items they paid for, and of items an insurer had recently replaced. The defendants items which were to be protected by law which the law considers inalienable rights. The plaintiffs were deprived of family heirlooms, items that were gifts, records that were private, attorney client priveleged communications and removal of records in an active case is spoilage when attorneys are involved. The plaintiffs were denied their property such as religious family bibles, religious icons, tools needed for work, clothing, food and crafts, furnishings including beds and appliances, as well as collectibles that are irreplaceable and the alterations to the premises were malicious damage without having any l egal right to make any change. The actions of the defendants individually, jointly and in their official capacities made the plaintiffs plaintiff through force and kidnapping and adverse possession.

147. The defendant John Gahan, III, Kathy Gahan and Thomas Vangel violated the Anti - Slapp suit laws, (M.G.L. ch 231 sec 59 H) intentionally securing an injunction in Superior Court in case number 2002 - 0244 to deprive the plaintiffs of their home, their peaceful and quiet enjoyment of their property and to allow development of the property with the defendants James Carroll, Jr. , Robert Costantino, Robert Murray, Brian F. Sullivan and the Town of Arlington refusing to relinquish stolen property contrary to state law and attempting to quell 1 st Amendment Rights of the plaintiffs with a gag order. The defendant Gahan was aware he violated a Permanent Injunction as was Justice Houston who acted smug and favored the attorney. The defendants intentionally delayed and denied access to their property claiming contempts attempting to kidnap and incarcerate James Carroll, III on false claims threatening arrest with Arlington Police. The intentional delays in Land Court and Superior Court were again stall tactics to allow the development of the property into 9 Oldham Road Arlington, Massachusetts through defendant Robert Murray who was calling the unlisted telephone number of Josephine Carroll as was Maurice Lyons of 11 Oldham Road Arlington prior to the last two actions claiming evictions on February 20,2002 and August 5, 2002. The plaintiffs especially, Josephine Carroll have been discriminated against and taunted and threatened by members of the Town of Arlington being driven out of their residence where the elder Josephine Carroll lived for [34] thirty four years amongst good neighbors who remarked they rarely saw her and hardly knew she lived there, but always was there for a neighbor in need. The plaintiffs have been denied protection from domestic abuse and crime by the Commonwealth and the Arlington Police as well as the District Attorney, yet all other law enforcement agencies agree that there are more than sufficient grounds for protection, remedies, damages and prosecution agreeing public corruption and crime exists citing that the Town of Arlington, the District Attorney and the Attorney General have breached their duties under the law and to the plaintiffs. The Arlington Police have refused to make police reports for any stolen property.


WHEREFORE, the plaintiffs request relief as follows;

A. Damages to repair home and property and to recover and or replace an extensive amount of stolen property. Damages to repay the Discover Card Credit Card Company for $10,000.00 of fraud against them follo wing the alleged eviction of deputy sheriff Donnelly.

# UNITED STATES DIS...ICT COURT DISTRICT OF MASSACHUSETTS

B. Damages for [3] three years of being made homeless, penniless and denied all rights as well as damages for the allowance of the unrelenting abuses and hardships for over [17] seventeen years with responses from state agencies that quote such as from the Office of the Inspector General and the Office of the Governor's Counsel quote, " If these people come after you, call the police and you should watch out because they could kill you!" or "If they could do all this they could kill you and cover it up or make you disappear. You better stay where they can't get you. These comments caused more emotional distress and anguish, as these offices for the Commonwealth pledged help and then did nothing claimed they called the Attorney General and the Attorney General who refused to help as did these offices.

C. Expenses for any related matter not mentioned including out of pocket costs, attorneys fees, court costs, moving expenses, depositions, discovery, lost income and or alimony, or any other unspecified cost to make the defendants whole in which any demand will be made by the plaintiffs, in a supplemental motion to the court or through an amendment to this action.

D. The plaintiffs reserve the right to alter, amend or change the complaint or any element thereto through the court as is necessary and just.

**The plaintiffs Josephine M. Carroll jointly and severally with James Carroll, III request a Jury Trial on all issues so triable.**

68

Exhibit

COMMONWEALTH OF MASSACHUSETTS

Middlesex Division
Probate and Family Court
Docket No. 86D1651-D2

James J. Carroll, Jr., Plaintiff

vs.

Josephine Carroll, Defendant

## AMENDED JUDGMENT OF DIVORCE NISI

All persons interested having been notified in accordance with law and after hearing it is adjudged nisi that a divorce from the bonds of matrimony be granted for the said plaintiff for the cause of an Irretrievable Breakdown of the marriage under M.G.L. Chapter 208, Section 1-B and that upon and after the expiration of Ninety days from the entry of this judgment it shall become and be absolute unless, upon the application of any person within such period the Court shall otherwise order.

Upon consideration of all of the factors enumerated in M.G.L. Chapter 208, Section 34 which I have considered and upon all of the evidence entered in the trial this matter, it is ordered and adjudged that:

1.  The plaintiff. James J. Carroll, Jr., (hereinafter referred to as the "Husband") shall retain free and clear of any claim by the defendant, Josephine Carroll, (hereinafter referred to as the "Wife") his interest in the 1986 Thunderbird, the 1984 Ranger, the optometry business, the IRA accounts at the Bank of New England and the IRA account at the Post Office Credit Union.

2.  The Wife shall retain free and clear of any claim by the Husband her interest in the 1979 Buick and her jewelry.

3.  Within ten days of the entry of this judgment, the Wife shall convey to the Husband individually, all of her right, title and interest in the marital real estate located at 120 Great Road, Bedford, Massachusetts. Henceforth the Wife shall have no claim of whatever description against said property.

4.  The Wife shall retain, free and clear of any claim by the Husband, her interest in the former marital home located at 7 Oldham Road, Arlington, Massachusetts.

5.  The trust accounts at the East Cambridge Savings Bank (Accounts No. 4303920 containing $16,190.40; #4303930 containing $14,871.44 and #4303940, containing $20,685.00--Total $51,662.69) are to be distributed as follows: to the Wife $7,900.64, to be applied to her outstanding attorneys fee due to Barbara M. Senecai, Esq.; to the Husband $43,792.35, to be first applied to his outstanding attorneys fee due to Edwin C. Hamada, Esq.

Judgment of Divorce

6.   Commencing on the first Friday following the entry of this judgment
     and continuing on each Friday thereafter, the Husband shall pay to
     the Wife as alimony the sum of Five Hundred ($500) Dollars per week
     until the death of either party or the Wife's remarriage.

6a.  Such monies to be paid first by assignment of the Husband's Post
     Office Pension to be paid directly to Wife after deductions for
     taxes an Health Insurance only, the remaining amount to be paid by
     the Husband.  Should the Husband fail to pay or arrange for payment
     of alimony weekly to Wife, he shall be responsible to reimburse
     Wife for reasonable attorney's fees and   costs to collect said
     alimony.

7.   The Husband shall retain, free and clear of any claim by the Wife,
     all of the contents at the Bedford property and the Wife shall
     retain, free and clear of any claim by the Husband, all of the
     contents at the Arlington property shall become the property of the
     Wife with the exception of those items listed on the attached
     schedule "A" which shall become the property of the Husband and be
     delivered to him as his expense within 30 days from the date of
     this judgment.

8.   The Husband shall provide Blue Cross Blue Shild medical insurance
     coverage as is currently in force or its equivalent, for the
     benefit of the Wife, so long as he is entitled to maintain such
     coverage for himself.

9.   The parties shall each be responsible for their uninsured medical
     and dental expenses.

10.  The Wife shall forthwith deliver to the Husband the sections of
     stockade fence currently stored at the marital property in
     Arlington, Massachusetts.

11.  The Husband shall forthwith return to the Wife the lawn mower and
     snow blower in his possession.

12.  The Wife shall forthwith return to her son, Richard, and her
     daughter, Joanne, such items of tangible personal property as they
     may reasonably request.

August 25, 1989

_____
Justice of the Probate and Family Court

Judgment of Divorce

6.  Commencing on the first Friday following the entry of this judgment
    and continuing on each Friday thereafter, the Husband shall pay to
    the Wife as alimony the sum of Five Hundred ($500) Dollars per week
    until the death of either party or the Wife's remarriage.

7.  The Husband shall retain, free and clear of any claim by the Wife,
    all of the contents at the Bedford property and the Wife shall
    retain, free and clear of any claim by the Husband, all of the
    contents at the Arlington property shall become the property of the
    Wife with the exception of those items listed on the attached
    schedule "A" which shall become the property of the Husband and be
    delivered to him as his expense within 30 days from the date of
    this judgment.

8.  The Husband shall provide Blue Cross Blue Shild medical insurance
    coverage as is currently in force or its equivalent, for the
    benefit of the Wife, so long as he is entitled to maintain such
    coverage for himself.

9.  The parties shall each be responsible for their uninsured medical
    and dental expenses.

10. The Wife shall forthwith deliver to the Husband the sections of
    stockade fence currently stored at the marital property in
    Arlington, Massachusetts.

11. The Husband shall forthwith return to the Wife the lawn mower and
    snow blower in his possession.

12. The Wife shall forthwith return to her son, Richard, and her
    daughter, Joanne, such items of tangible personal property as they
    may reasonably request.

August 25, 1989

_____
Justice of the Probate and Family Court

Nov. 25, 1989

I also certify that on _____
90 days from date of said decree not
having expired, and the Court not having
otherwise ordered said decree of divorce
became absolute.

MAR 0 8 2005
MIDDLESEX, SS _____
PROBATE COURT
A TRUE COPY CERTIFIED
_____
REGISTER



| | |
|---|---|
| **rial Court of Massachusetts**<br>**District Court Department** | 11/16/93   93 RM 96 |

**DET. CARROLLS' PRO-SE-****

Josephine M. Carroll, Pro Se
P.O. Box 1041
Windham, NH  03087

**Lowell District Court**
**41 Hurd Street**
**Lowell, MA. 01852 *****
FOR DFTS CARROLL
Harold D Levine Esq
Sinsheimer & Lemire
1 International Place  30th FL
Boston MA.  02110

PLAINTIFF
James J Carroll Jr.

DEFENDANT
Town of Bedford (Dismissed)
Eliot Community Mental
Health Center,Inc.(Dismissed)
James J Carroll IIIand
Josephine M. Carroll

JAMES J.
CARROLL,III
P.O. BOX 863
Windham,NH
03087

PLAINTIFF ATTORNEY
Robert A Costantino  Esq.
19 Meridian St.
East Boston  MA.   02128
617 569-8870 PHone #
617 828-3111

DEFENDANT ATTORNEY
FOR CARROLLS as Of 11-2-95
William J. Hudak, Jr.
428 Lincoln Ave.
Saugus, MA  01906

MONEY DAMAGE ACTION (TIME STANDARDS)
[ ] Remand   [ ] District Court Filing

VICTIM
[ ] SUMMARY PROCESS  [ ] VIOLENT CRIME  [ ] OTHER CIVIL

| NO. | DATE | DOCKET ENTRIES |
|---|---|---|
| 1. | 9/25/90 | Complaint filed   [ ] Statement of damages filed (if applicable) |
| 2. | 11/4/93 | ORDER OF REMAND TO DISTRICT COURT OF LOWELL |
| | 4/6/94 | PRE-TRIAL- OFF LIST - NOTICES  SENT- DFTS IN DEFAULT |
| | 6/3/94 | Plff's motion for assessment of damages 6/2 - not acted on |
| | 7/21/94 | Court assesses damages in amt of $350,000.00 to the plff against dfts |
| | | James J Carroll III and Josephine M. Carroll jointly and severally. Court |
| | | also awards attys fees in amt. of $50,000.00. Execution to issue forthwith. |
| | | Pearson J.   notices sent |
| | 8/5/94 | Judgment entered for Plff    notices |
| | 7/25/95 | Dft James & Josephine Carroll's motion to remove default judgment 8/5/95 |
| | 8/7/95 | Aff. of Dfts James J Carroll III and Josephine M. Carroll |
| | 9/18/95 | Plff's motion to conduct depositions  and further discovery 9/29 ALLOWED |
| | | D'Avolio J. |
| | 10/11/95 | Plff's notice of taking depositions  notices sent |
| | 10/25/95 | Dfts motion to remove default judgment scheduled for 11/8/95 at 11;00 AM |
| | | to be heard at concord Dist. Court by J. Pearson.  notices sent |
| | | ALLOWED:  J. MELAHN  No Date Given.  Notices sent |
| | 1/16/96 | Dfts. supplemental memorandum in support of Motion to remove default 1/19/96 |
| | | at Lawrence District Court before Judge Pearson |

DATE OF ENTRY OF JUDGMENT
8-5-94

[X] CIVIL     [ ] SUMMARY PROCESS

[X] Judgment for  plff

[X] $ 350,000.00 damages, plus $ 161,000.00 prejudgment interest and $ 175.30 costs
atty fees 50,000.00 plus $ _____ interest from date of judgment entry to
date of execution
[ ] Possession

Execution: March 22, 2001

JUDGMENT TOTAL
$
EXECUTION TOTAL
$561,175.30

[ ] Judgment on defendant's counterclaim for _____
[ ] $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to
date of execution.

COUNTERCLAIM
JUDGMENT TOTAL
$
COUNTERCLAIM
EXECUTION TOTAL
$

DC-CV1 (4/98)

## OLDHAM ROAD TRUST

### WITNESSETH

THIS DECLARATION OF TRUST, made by JOSEPHINE MARIE CARROLL, of Arlington, Commonwealth of Massachusetts, who together with all successors in trust, are called the "Trustees". The Trustees, even when comprised of more than one member, will be referred to in the singular number and neuter gender when referred to as such.

FIRST: This trust shall be designated as THE OLDHAM ROAD TRUST, which name and the words "this trust", wherever used in this instrument, shall, but not personally, refer to the Trustees and shall not refer to the beneficiaries of this trust. The undersigned original Trustees hereunder, hereby declare that they are holding the sum of Ten Dollars ($10.00) and other good and valuable consideration and further declare that they will hold and administer the property which is now or hereafter transferred to it, in trust for the purposes hereafter set forth. The Trustees may accept any other property, real or personal, conveyed, assigned, transferred or set over to it by any person to constitute a part of the trust hereby created and to be held, invested, managed and disbursed by the Trustees, in accordance with the provisions hereof.

SECOND: This trust may be amended from time to time, by an instrument in writing, signed by a majority of those then serving as Trustee hereunder and acknowledged by such Trustees, but any such amendment shall only be effective in the case of those dealing with the Trust when a copy thereof, signed and acknowledged by the Trustees hereunder, is recorded with the appropriate Registry of Deeds.

THIRD: The powers, obligations, terms and conditions of this Agreement shall be as follows:

A.   The Trustees shall have the full power and discretion, as if absolute owner to acquire, purchase, hold, manage, improve, rent or lease real estate, including the erections of new buildings; to invest and reinvest the trust property (including any surplus and also income) in personal property, including stocks, bonds and notes of obligations secured upon real estate; and to employ the funds of this trust in such other incidental business or enterprise, as in the judgment of the Trustees, may be beneficial to the beneficiaries.

B.   The Trustees shall have the power to repair or rebuild any building destroyed or damaged by fire or otherwise; to let, to lease for improvement or otherwise for a term beyond the possible termination of this Agreement or for any less term; to dedicate and convey land for public purposes; to make such

1

contracts regarding the trust property as to it may appear advisable or necessary, and to compromise and settle claims of every name and nature. The Trustees may make such arrangements as it deems advisable with adjoining owners, respecting boundary lines, easements and party walls, and for these purposes, may acquire adjoining land or sell portions of the trust property.

C. The Trustees may borrow money for such time and upon such terms as it may see fit, execute notes and mortgages of any real estate held by it hereunder, either with or without power of same, and any other form of security agreement.

D. The Trustees shall also have the power to borrow for temporary purposes for such time and in such sum it deems best and give promissory notes therefor, binding the property of the trust, but not the Trustees nor beneficiaries personally; to pledge, as collateral, security for such loan, any personal property belonging to the trust, and to enter into any obligations, jointly and/or severally, with any person or corporations.

E. The Trustees shall have the power to sell at public auction, or private sale, and to assign, transfer, pledge, barter or exchange for real or personal property, all or any part of the real or personal property, including mortgages now or hereafter held under the trust, at such time and prices and upon such terms and conditions as it may deem proper.

F. The Trustees shall at all times keep the premises properly insured against fire and it shall have full power and authority to pay all taxes or assessments, mortgages, or other liens, now or hereafter resting upon said property, and all sums of money for the payments of which it, by reason of being Trustees hereunder, may be held liable, by way of damages, penalty of fine or otherwise, to pay all expenses of the trust, which in its judgment may be proper or necessary, all expenses incurred in making sales (including commissions to brokers), surveying, examining titles, and in keeping the premises insured against fire; to employ such officers, brokers, architects, engineers, building agents, attorneys, or other persons as it thinks best and to fix their compensation and define their duties. Checks on the trust account shall be executed by the Trustees. The Trustees shall have the power to designate the person or persons who, in addition to the said Trustees, shall have the right to execute checks drawn on the funds of the trust.

G. The Trustees shall have the power to represent the beneficiaries in all suits or legal proceedings, relating to the trust in any court, at law or equity, or before any bodies or tribunals; to employ counsel and to commence suits or proceeds or to compromise, or to submit to arbitrations, all

2

matters of dispute to which the trust or Trustees may be a party, when in its judgment necessary or proper.

H.   The Trustees shall also have full power to execute and deliver all written instruments which it deems necessary and proper in the exercise of its powers, and without limiting the generality of the foregoing, it shall have full power to execute, acknowledge and deliver all deeds, mortgages, assignments, discharges, extensions and partial releases of mortgages.

I.   The Trustees shall have full power to guarantee the debts or other obligations of any other person or entity on such terms and conditions as it deems advisable and shall have the full power to pledge or mortgage the property of this trust for such guarantee.   No purchaser, lender, corporation, association or officer or transfer agent dealing with the Trustees, shall be bound to make any inquiry concerning the validity of any sale, pledge, mortgage, loan or purchase, purporting to be made by the trustees, or be liable for the application of money paid or loaned.

J.   In general, the Trustees shall have power to deal with the trust property as though beneficial owner thereof; intending by this clause to give the Trustees all powers concerning the trust property, not expressly or by clear implication denied.

    FOURTH:   Notwithstanding anything herein contained to the contrary, unless sooner terminated under other provision hereof, the trust created under this instrument shall terminate twenty (20) years after the death of the last survivor of the original Trustees and any other persons mentioned by name in this instrument who were living at the date of execution of this instrument, and upon such termination the Trustees shall pay over, transfer and convey the trust property (including any accumulated, undistributed and accrued income and additions from any source) in accordance with the other provisions of this trust dealing with termination.

    FIFTH:   The original beneficiaries of this trust are listed as beneficiaries in the SCHEDULE OF BENEFICIARIES this day executed by the Trustees and filed with the Trustees, and their interests are as therein stated.   Such Schedule need not be recorded with this trust.   The interest of the beneficiaries under this trust shall be inalienable, shall not be subject to anticipation, shall be free from interference or control of creditors and shall not pass by virtue of any assignment for the benefit of creditors or be liable to attachment, execution or other process of law.   A beneficiary may assign his interest hereunder only with the unanimous consent of all the beneficiaries and Trustees then existing, which consent need not be recorded in any registry office.

3

**SIXTH:** The term "BENEFICIARIES", shall, wherever used herein, mean the beneficiary or beneficiaries listed in the said Schedule or in the revised Schedule, if any, from time to time executed and filed with the Trustees. Any Trustee may, without impropriety, become a beneficiary hereunder and exercise all rights of a beneficiary with the same effect as though he were not a Trustee.

**SEVENTH:** No Trustee hereunder shall be liable for any error of judgment nor for any loss arising out of any act or omission in good faith, but shall be responsible only for its own willful breach of trust. No license of court shall be requisite to the validity of any transaction entered into by the Trustees. No purchaser, transferee, pledgee, mortgagee or other lender shall be under any liability to see to the application of the purchase money or of any money or property loaned or delivered to any Trustee or to see that the terms and conditions of this trust have been complied with. Every agreement, lease, deed, mortgage or other instrument or document executed or action taken by the person appearing of record to be the Trustees hereunder shall be conclusive evidence in favor of every person relying thereon or claiming thereunder that at the time of delivery thereof or of the taking of such action, this trust was in full force and effect, that the Trustees' execution and delivery thereof or taking of such action was duly authorized and is valid, binding, effective and legally enforceable.

**EIGHTH:** Notwithstanding any other provisions of this instrument, all actions of the Trustees shall be exercised by the trustees only in conformity with the unanimous wishes of all beneficiaries of this trust. This trust is (and the Trustees shall act only as) an agent of the beneficiaries, but no person need make any inquiry concerning the propriety of any of the Trustees' actions, and all such actions shall conclusively be presumed to be proper. Any person dealing with the trust or the Trustees may always rely, without further inquiry, on a certificate signed by any person appearing from the records of any Registry of Deeds to be a Trustee, hereunder, as to who is the Trustee or, who are the beneficiaries, hereunder, or as to the authority of the Trustees to act, or as to the existence, or non-existence of any fact or facts which constitute conditions precedent to acts by the Trustees or which are in any other manner germane to the affairs of the trust. No person shall have any duty to investigate the records of any Registry of Deeds other than that of the county (or district thereof) in which the locus of affected realty exists.

**NINTH:** The Trustees may pay any net income of this trust to the beneficiaries in proportion to their respective interests hereunder, annually. The Trustees may open, maintain, and, at will, close out any checking and savings accounts and safe deposit boxes in any bank, trust companies, Federal savings and loan associations, and other banking, lending or other financial institutions; and the Trustees may deposit funds and other assets

**THIRTEENTH:** At any time by the written consent of a majority of all the members serving as Trustees for the time being, one or more additional members may be added to the Board of Trustees, and the number serving as such may similarly be reduced. The acceptance in writing by any Trustee appointed shall be recorded with each appropriate Registry of Deeds, although the failure to do so shall not invalidate the appointment. Upon the appointment of any succeeding Trustee, the title to the trust estate shall thereupon and without the necessity of any conveyance, be vested in said succeeding Trustee. Each succeeding Trustee shall have all rights, powers, authority and privileges as if named as the original Trustees hereunder. No Trustees shall be required to furnish bond.

**FOURTEENTH:** This trust shall be interpreted in accordance with the laws of the Commonwealth of Massachusetts, and its validity and administration shall be governed by said laws, except with respect to such assets as are required by law, to be governed by the laws of some other jurisdiction.

IN WITNESS WHEREOF, the said Josephine Marie Carroll, as Trustee, hereunto sets her hand and seal this ___5th___ day of ___December___, 1991.

_Josephine M. Carroll_
Josephine Marie Carroll, Trustee

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.                               ___December 5___, 1991

Then personally appeared the above-named Josephine Marie Carroll and acknowledged the foregoing instrument to be her free act and deed, before me

_Henry F. Quill_
Henry F. Quill, NOTARY PUBLIC
My Commission Expires:  3-22-96

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF MIDDLESEX
THE SUPERIOR COURT

CIVIL ACTION #MICV95-06545

James J Carroll,
Josephine M Carroll
    Plaintiff(s)
vs.
James J. Carroll, Jr.  O.D., P.C.
Joanne Carroll Deyoung et al,
    Defendant(s)

#14

**ORDER**

    To the above named Defendant (s): [ ]
Agents, Attorneys and Counsellors, and each and every of them,
    You are hereby required by Order of Superior Court and permanently
enjoined by :

    No Contact,  No Communication of any kind, direct or indirect
in person or by another, with any opposing party herein.

    No vandalism of any nature.  No interference with property
rights.

    Nothing herein shall, however, prevent any party from communicating
through counsel in connection with any judicial proceeding.

    All until further order of the Court.

    **Witness Robert A. Mulligan,** Esquire at Cambridge, this
2nd day of July in the year of our Lord 1997.

FORM OF JUDGMENT APPROVED:

HILLER B. ZOBEL,
ASSOCIATE JUSTICE,
SUPERIOR COURT DEPARTMENT

EDWARD J SULLIVAN
CLERK/MAGISTRATE

By:
    ASSISTANT CLERK

A TRUE COPY
    ATTEST:
    Deputy Assistant Clerk

(SEAL)

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF MIDDLESEX
THE SUPERIOR COURT

CIVIL ACTION #MICV95-06545

Carroll et al,
    Plaintiff(s)
vs.
Carroll, Jr.  O.D., P.C. et al,
    Defendant(s)

## PERMANENT INJUNCTION

___ TO:

    Agents,  Attorneys and Counsellors,  and each and every of them,

GREETINGS:

    **WHEREAS**, it has been represented unto us in our SUPERIOR COURT, by James J. Carroll
Josephine M. Carroll
plaintiff(s), that he/she,  said  plaintiff(s),  has filed a complaint in  our
Superior Court against you, the said defendant(s)
James J. Carroll, Jr. O.D., P.C.
wherein said  plaintiff(s), among other things,  pray for a Writ of Injunction
against you,  to restrain you  and the persons before named from doing certain
acts  and  things in said complaint set forth,  and hereinafter,  particularly
identified and mentioned.
    We, therefore, in  consideration  of  the  premises,  upon  application,
hearing and finding  in  our  Superior Court hereof,  do strictly enjoin  and
**WE COMMAND YOU**, the said,  James  J.  Carroll,  Jr.  O.D.,  P.C.,  Joanne  Carroll
Deyoung and your agents, attorneys  and counsellors  and each and every one of
them, **to cease, desist and to refrain from A  "No Contact Order", prohibiting
contact by telephone,  mail, in person, by agent (s) or third person (s) or at
any place.  No harassment or vandalism of any  nature.  No interference  with
property rights.  Violation  of  said  order  is  a  criminal  offense.**
Nothing  herein  shall, however  prevent any party from communicating  through
counsel  in  connection with any  judicial  proceeding if counsel is  retained
by the plaintiff(s).

    **Witness, Robert A. Mulligan,** Esquire  at Cambridge, this
2nd day of July in the year of our Lord 1997.

MIDDLESEX, ss.  **Commonwealth of Massachusetts** Clerk.

SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this thirty-xxxx day of July.   1997.

_____
                    Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                         SUPERIOR COURT
                                                       CIVIL NO. 95-6545

JAMES J. CARROLL, III, and JOSEPHINE M.
    CARROLL,
        Plaintiffs

        v.                                             JUDGMENT

JAMES J. CARROLL, JR. and JOANNE CARROLL
    DEYOUNG,
        Defendants,

        It is Ordered, Adjudged, and Decreed:

        The respective Defendants on the one hand and the respective
Plaintiffs on the other are permanently enjoined from any kind of
communication, direct or indirect, in person or by another, with
any opposing party herein.

        For purposes of this Judgment, "communication" includes but
is not limited to, writing, speaking, signalling, using electric
or electronic means, drawing, and painting.

        Nothing herein shall, however, prevent any party from
communicating through counsel in connection with any judicial
proceeding.

        All until further order of the Court.

Dated at Cambridge, Massachusetts, this 1st day of July, 1997.

FORM OF JUDGMENT APPROVED:

_____
HILLER B. ZOBEL,
ASSOCIATE JUSTICE,
SUPERIOR COURT DEPARTMENT

                                       EDWARD J SULLIVAN
                                       CLERK/MAGISTRATE

                                   By: _____
                                          ASSISTANT CLERK

                       A TRUE COPY
                            ATTEST: _____
                                    Deputy Assistant Clerk

THE COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT

EXHIBIT #5

MIDDLESEX, ss.

MCV 98-2825

James J. Carroll, Jr.,)
Plaintiff,            )
                      )
Vs.                   )
                      )
Josephine M. Carroll, )
James J. Carroll, III,)
Defendants,           )
_____)

MOTION
FOR
RECONSIDERATION

*The plaintiff and his counsel failed to disclose that 14 funds sought to be attached were in fact alimony payments due from plaintiff to his former wife and released by order of the probate court.*

Now Comes the defendants Josephine M. Carroll of 7 Oldham
Road Arlington, County of Middlesex and James J. Carroll,
III having an address of post Office Box 863 Windham,
New Hampshire, hereinafter referred to as the defendants.
The defendants hereby move the Superior Court to Vacate
Ex-Parte Attachment and grant Relief from Judgement and
dismissal of the action based upon the following facts:

*Motion for personal is Allowed. This action is dismissed with prejudice. This matter is referred to the office of the District attorney and Bar Board of Overseers.*

1. The plaintiff with his counsel committed fraud upon the
   Court by failing to inform the Superior Court that
   the subject matter of attachment was alimony and by
   State and Federal Law is exempt from any legal process
   including attachment. SEE Letter from General Counsel
   of the Office of Personnel Management. Alimony is
   derived from a federal pension of the plaintiff and
   is also exempt from any legal process except alimony
   indebtedness.

2. The plaintiff with his counsel failed to state that
   the alimony was involved with the pendency of another
   action before the Commonwealth. The action involves
   a pending action for alimony arrears, comtempts

RECEIVED

AUG 4 1998

COMMONWEALTH OF MASSACHUSETTS

SUPERIOR COURT

~~CAMBRIDGE DIVISION~~

C.A. NO:

MIDDLESEX,SS

*EXHIBIT 27*

JAMES J. CARROLL, JR.
        Plaintiff

95-2825

v.

JOSEPHINE M. CARROLL and
JAMES J. CARROLL, III,
        Defendants

and

EAST CAMBRIDGE SAVINGS BANK,
        Trustee

## MOTION FOR EX PARTE APPROVAL OF ATTACHMENT BY TRUSTEE PROCESS

1. The Plaintiff in the above-named matter moves the Court to approve an ex parte attachment on trustee process of goods, effects or credits of the defendant Josephine M. Carroll, held by the Trustee, East Cambridge Savings Bank, 292 Cambridge Street, Cambridge, MA 02141.

2. On information and belief, the Trustee, East Cambridge Savings is presently holding a cashier's check, number 188293, in the amount of $60,403.42, payable to the order of Josephine M. Carroll, the Defendant in this action.

3. The Defendants have made no payments to the Plaintiff on the underlying Judgment of $561,175.00, which was obtained in the Lowell District Court, C.A. No: 93 RM 96.

4. On information and belief, the Defendants have no liability insurance with which to pay the above-named Judgment.

5. On information and belief, the Defendant, Josephine M. Carroll would liquidate the funds held by the Trustee, if notified of this Motion for Attachment in advance.

WHEREFORE, the Plaintiff, James J. Carroll, Jr. move to have this Honorable Court to approve an Ex Parte Attachment by Trustee Process, on all good, effects or credits of the defendant Josephine M. Carroll, held by the Trustee, East Cambridge Savings Bank.

*Allowed pending post-ATTACHMENT hearing*

*6/4/95*

| NO. | DATE | CIVIL DOCKET ENTRIES |
|---|---|---|
| – | Feb 2,96 | Plaintiff's second Supplemental Memorandum in support of his opposition to Defendants' motions to vacate default |
| – | Feb 2,96 | The Court denies motion to remove default, Pearson, J. and The Court denies motion for rehearing of Assessment, Pearson, J. & notices issued to both parties(and case sent back to the Lowell District Court) |
| | 3-16-01 | Allowed: Plff's Motion for Issuance of Duplicate Execution  3-22-01    Geary, J. |
| | 3-22-01 | Alias Execution issued |
| | 5-31-01 | Dfts' Motion to Vacate Judgment  6-13-01 Off  6-28-01 N.P. |
| | 7-20-01 | Execution returned to Court Satisfied. |
| | 10-27-03 | Dfts James and Josephine's Motion for Reconsideration and for Nullity of Judgment  11-6-03 |
| | 11-7-03 | Dfts' Carrolls file additonal documents for review of Judge Melahn. |
| | 11-18-03 | Plff opposition to dfts' motion for reconsideration and req for nullity of judgment |
| | 11-24-03 | Order of Transfer received at Lowell District Court authorizing transfer of matter to Lawrence District Court (parties notified)  12-5-03 |
| | 1-13-04 | Dfts' motion for reconsideration and for Nullity of Judgment scheduled for hearing 2-12-04 (notice sent) |
| | 2-12-04 | Affidavit of James J. Carroll, Jr filed in session |
| | 2-19-04 | Findings, Rulings, and Order from Judge Packard on Dft's motion for reconsideration and for Nullity of Judgment  (notice 2-19-04) |

hereby . . . the foregoing is a true
copy on file and of record made by photo-
. . . reproduction, I hereunto set my hand and
affix the seal of the District Court of Lowell
this _____ day _____

_____
CLERK MAGISTRATE

| Court of Massachusetts District Court Department | DATE FILED 11/16/93 | TIME STANDARD TRIAL REQUEST DEADLINE | DOCKET NUMBER 93 RM 96 |
|---|---|---|---|
| | PLAINTIFF James J Carroll Jr. | | DEFENDANT Town of Bedford (Dismissed) Eliot Community Mental Health Center, Inc. (Dismissed) James J Carroll IIIand Josephina M. Carroll |

*Ats James J Carroll Stient*
*Josephine M. Carroll - Pro Se*
*1 W/slold attached - 9-28-0*

Lowell District Court
41 Hurd Street
Lowell, MA 01852

FOR DFTS CARROLL
Harold D Levine Esq.
Sinsheimer & Lemire
1 International Place, 30th FL
Boston MA. 02110

| PLAINTIFF ATTORNEY Robert A Costantino 19 Meridian St. East Boston MA. 02128 617 567-5571 | DEFENDANT ATTORNEY FOR CARROLLS as Of 11-2-95 William J. Hudak, Jr. 428 Lincoln Ave. Saugus, MA 01906 |
|---|---|

| MONEY DAMAGE ACTION (TIME STANDARDS) [ ] Remand  [ ] District Court Filing | [ ] SUMMARY PROCESS | [ ] VICTIM VIOLENT CRIME | [ ] OTHER CIVIL |
|---|---|---|---|

## SECOND ("ALIAS") OR SUCCESSIVE WRIT OF EXECUTION ON MONEY JUDGMENT

To the Sheriffs of the several counties of the Commonwealth or their deputies, or (subject to the limitations of G.L. c. 41, § 92) any Constable of any city or town within the Commonwealth:

The plaintiff named above has recovered judgment, and a writ of execution was previously issued, against the defendant in the amount shown below.

WE AGAIN COMMAND you, therefore, to cause payment to be made to the plaintiff in the amount of the judgment total shown below, plus postjudgment interest thereon until the date of payment in accordance with G.L. c. 235, § 8, and to collect your own fees as provided by law, from out of the value of any real or personal property of the defendant found within your territorial jurisdiction.

Subject to G.L. c. 260, § 20, this execution is valid for FIVE YEARS only. It must be returned to the court along with your return of service within ten days after this judgment has been satisfied or discharged, or after five years if this judgment remains unsatisfied or undischarged.

| FIRST JUSTICE WITNESS: Neil J. Walker | DATE OF ISSUE March 22, 2001 | CLERK-MAGISTRATE OR ASSISTANT CLERK x |
|---|---|---|

| OFFICER'S RETURN | DATE OF SERVICE: |
|---|---|

Fees _____

SEE SHERIFF'S DEED (16)
Doc# 1177407

TOTAL FEES _____

SIGNATURE OF OFFICER

| DATE OF ENTRY OF JUDGMENT 8-5-94 | [X] CIVIL | [ ] SUMMARY PROCESS |
|---|---|---|

[ ] Judgment for ____ plff

[ ] $ 250,000.00 damages, plus $ 741,000.00 prejudgment interest and $ 175.30 costs
[ ] Sum $ 501,175.30 plus $ _____ interest from date of judgment entry to date of execution
[ ] Possession

*Execution: March 22, 2001*

544,195 36

A TRUE COPY, ATTEST
DEPUTY SHERIFF
Middlesex County

(13) 3

Middlesex, ss.                    BK 2460 P 017                Probate and Family Court
                                                               Docket No. 86D1651-D2

James J. Carroll, Plaintiff

vs.

James J. Carroll, III, Defendant

MEMORANDUM AND ORDER

This matter came on for hearing before me on January 26, 1990 on a complaint for contempt filed by James J. Carroll, Jr., (Husband) against James J. Carroll III (Son) and the son's motion to dismiss.

When the son was brought before me on January 12, 1990 on a capias, the Husband asserted that the complaint was based on son's alleged violations of a temporary restraining order entered February 22, 1989. The original order was unavailable to the Court at the time. Husband furnished a copy which indicated the temporary restraining order was effective until May 22, 1990. The Husband and Wife were divorced in August of 1989.

Subsequently, the original temporary restraining order was enacted and it clearly indicates that the temporary restraining order was effective until May 22, 1989 and was thus of no force or effect any longer. The copy provided by the Husband was doctored to alter the effective date.

The Plaintiff-Husband was under an obligation to provide the Court with true and accurate copies of pleadings on which he ruled. The copies he furnished were misleading and perpetrated a fraud on this Court.

The complaint for contempt is to be dismissed.

On or before February 9, 1990, Plaintiff-Husband will pay to the son the sum of $300.00, the amount of the charges of the constable I ordered paid by the son on January 12, 1990; to the son's lawyer the sum of $1,000.00, counsel fees for preparing and appearing on January 26, 1990; to the Court the sum of $350.00 as court costs and $350.00 as sanctions.

The matter is continued to February 9, 1990 for compliance with this order.

Plaintiff-Husband is ordered not to file, in this court, any further pleadings or complaints against his son without the approval of a justice of this division.

January 26, 1990                    By the Court:

                                    _____
                                    Charles J. Bowser, Jr.
                                    Justice
                                    Probate and Family Court Department

/ 2 0 6 0 1 0 0 / 4 ^ . . . . . . . . . . TRIAL COURT

MIDDLESEX, SS.

FAMILY AND PROBATE COURT
DOCKET NO. 95D-1851-DX

JAMES J. CARROLL, PLAINTIFF

vs.

JOSEPHINE M. CARROLL, DEFENDANT

### EX-PARTE MOTION FOR SHORT ORDER OF NOTICE

I, James J. Carroll, am the Plaintiff in this above named
Divorce Matter and do depose that the following is true.

1. The Court ordered Josephine Carroll to convey to me
within TEN DAYS OF THE JUDGMENT DATE, August 25, 1999, the
marital real estate located at 120 Great Road, Bedford,
Ma. See Item 3. of the Judgment.

2. Josephine Carroll has knowingly, purposely, and
deliberately, contemptuously refused to comply by
September 3, 1999 or any date since that time. You will
note that this has been her continuing behavior throughout
this Divorce Action. There never has been any corrective
action taken and therefore there is a demand for an
enforcement order.

3. This is a request  to have The COURT ORDER  a
payment to me by Josephine Carroll, the sum of ONE HUNDRED
AND FIFTY DOLLARS PER DAY, from the date of this
appearance, for each day of non-compliance of the
remaining orders in this Divorce Judgment.

4. This is the only method that will terminate the
repeated continuing appearances before this Court.

617 596 1324

Dated November 20, 1999,

James J. Carroll, pro se
120 Great Road, Bedford
7, 1999

**Trial Court of Massachusetts
District Court Department**

DET. CARROLLS' PRO-SE **** 

Josephine M. Carroll, Pro Se
P.O. Box 1041
Windham, NH 03087

**Lowell District Court**
**41 Hurd Street**
**Lowell, MA. 01852** *****
FOR DFTS CARROLL   JAMES J.
Harold D Levine Esq   CARROLL, III
Sinsheimer & Lemire   P.O. BOX 863
1 International Place 30th FL   Windham, NH 03087
Boston MA.  02110

11/16/93                    93 RM 96
PLAINTIFF
James J Carroll Jr.

DEFENDANT
Town of Bedford (Dismissed)
Eliot Community Mental
Health Center, Inc. (Dismissed)
James J Carroll IIIand
Josephine M. Carroll

PLAINTIFF ATTORNEY
Robert A Costantino  Esq.
19 Meridian St.
East Boston MA.   02128
617 569-8870 PHone #
612 828-3111

DEFENDANT ATTORNEY
FOR CARROLLS as Of 11-2-95
William J. Hudak, Jr.
428 Lincoln Ave.
Saugus, MA  01906

MONEY DAMAGE ACTION (TIME STANDARDS)
☐ Remand  ☐ District Court Filing

VICTIM
☐ SUMMARY PROCESS  ☐ VIOLENT CRIME  ☐ OTHER CIVIL

| NO. | DATE | DOCKET ENTRIES |
|---|---|---|
| 1. | 9/25/90 | Complaint filed   ☐ Statement of damages filed (if applicable) |
| 2. | 11/4/93 | ORDER OF REMAND TO DISTRICT COURT OF LOWELL |
| | 4/6/94 | PRE-TRIAL- OFF LIST - NOTICES SENT- DFTS IN DEFAULT |
| | 6/3/94 | Plff's motion for assessment of damages 6/2 - not acted on |
| | 7/21/94 | Court assesses damages in amt of $350,000.00 to the plff against dfts |
| | | James J Carroll III and Josephine M. Carroll jointly and severally. Court |
| | | also awards attys fees in amt. of $50,000.00. Execution to issue forthwith. |
| | | Pearson J.   notices sent |
| | 8/5/94 | Judgment entered for Plff    notices |
| | 7/25/95 | Dft James & Josephine Carroll's motion to remove default judgment 8/5/95 |
| | 8/7/95 | Aff. of Dfts James J Carroll III and Josephine M. Carroll |
| | 9/18/95 | Plff's motion to conduct depositions  and further discovery 9/29 ALLOWED |
| | | D'Avolio J. notices sent |
| | 10/11/95 | Plff's notice of taking depositions |
| | 10/25/95 | Dfts motion to remove default judgment scheduled for 11/8/95 at 11;00 AM |
| | | to be heard at concord Dist. Court by J. Pearson.  notices sent |
| | | ALLOWED:  J. MELAHN No Date Given.  Notices sent |
| | 1/16/96 | Dfts. supplemental memorandum in support of Motion to remove default 1/19/96 |
| | | at Lawrence District Court before Judge Pearson |

DATE OF ENTRY OF JUDGMENT
8-5-94

☐ CIVIL        ☐ SUMMARY PROCESS

☒ Judgment for  plff

☒ $ 350,000.00 damages, plus $ 161,000.00 prejudgment interest and $ 175.30 costs
attys fees 50,000.00 plus $ _____ interest from date of judgment entry to
date of execution
☐ Possession

Execution: March 22, 2001

JUDGMENT TOTAL $
EXECUTION TOTAL $561,175.30

☐ Judgment on defendant's counterclaim for
☐ $ _____ damages, plus $ _____ prejudgment interest and $ _____ costs
plus $ _____ interest from date of judgment entry to
date of execution.

COUNTERCLAIM JUDGMENT TOTAL $
COUNTERCLAIM EXECUTION TOTAL $

DC-CV1 (4/90)

| IO. | DATE | CIVIL DOCKET ENTRIES |
|---|---|---|
| - | Feb 2,96 | Plaintiff's second Supplemental Memorandum in support of his opposition to Defendants' motions to vacate default |
| - | Feb 2,96 | The Court denies motion to remove default, Pearson, J. and The Court denies motion for rehearing of Assessment, Pearson, J. & notices issued to both parties(and case sent back to the Lowell District Court) |
|  | 3-16-01 | Allowed: Plff's Motion for Issuance of Duplicate Execution  3-22-01   Geary, J. |
|  | 3-22-01 | Alias Execution issued |
|  | 5-31-01 | Dfts' Motion to Vacate Judgment  6-13-01 Off  6-28-01 $N.P.$ |
|  | 7-20-01 | Execution returned to Court Satisfied. |
|  | 10-27-03 | Dfts James and Josephine's Motion for Reconsideration and for Nullity of Judgment  11-6-03 |
|  | 11-7-03 | Dfts' Carrolls file additonal documents for review of Judge Melahn, |
|  | 11-18-03 | Plff opposition to dfts' motion for reconsideration and req for nullity of judgment |
|  | 11-24-03 | Order of Transfer received at Lowell District Court authorizing transfer of matter to Lawrence District Court (parties notified)   12-5-03 |
|  | 1-13-04 | Dfts' motion for reconsideration and for Nullity of Judgment scheduled for hearing 2-12-04  (notice sent) |
|  | 2-12-04 | Affidavit of James J. Carroll, Jr filed in session |
|  | 2-19-04 | Findings. Rulings, and Order from Judge Packard on Dft's motion for reconsideration and for Nullity of Judgment  (notice 2-19-04) |

I hereby certify that the foregoing is a true
copy on file and of record made by photo-
 .... therefore set my hand and
 .... of the District Court of Lowell
                  JUL 1 3 2005

                                CLERK MAGISTRATE

Court of Massachusetts
District Court Department

DATE FILED 11/16/93

TIME STANDARDS TRIAL REQUEST DEADLINE

DOCKET NUMBER 93 CV 96 ( 106 )

PLAINTIFF James J. Carroll Jr.

DEFENDANT
Town of Medford (Dismissed)
Eliot Community Mental
Health Center, Inc. (Dismissed)
James J Carroll IIIand
Josephine M. Carroll

Lowell District Court
41 Hurd Street
Lowell, MA. 01852

FOR DFTS CARROLL
Harold S Levine Esq.
Sinsheimer & Lemire
1 International Place, 20th Fl.
Boston MA. 02110

PLAINTIFF ATTORNEY
Robert A Costantino
19 Meridian St.
East Boston   MA.   02128
617 569 7871

DEFENDANT ATTORNEY
FOR CARROLLS as Of 11-2-95
William J. Budak, Jr.
423 Lincoln Ave.
Saugus, MA  01906

MONEY DAMAGE ACTION (TIME STANDARDS)
[ ] Remand    [ ] District Court Filing

[ ] SUMMARY PROCESS    [ ] VICTIM VIOLENT CRIME    [ ] OTHER CIVIL

### SECOND ("ALIAS") OR SUCCESSIVE WRIT OF EXECUTION ON MONEY JUDGMENT

To the Sheriffs of the several counties of the Commonwealth or their deputies, or (subject to the limitations of G.L. c. 41, § 92) any Constable of any city or town within the Commonwealth:

The plaintiff named above has recovered judgment, and a writ of execution was previously issued, against the defendant in the amount shown below.

WE AGAIN COMMAND you, therefore, to cause payment to be made to the plaintiff in the amount of the judgment total shown below, plus postjudgment interest thereon until the date of payment in accordance with G.L. c. 235, § 8, and to collect your own fees as provided by law, from out of the value of any real or personal property of the defendant found within your territorial jurisdiction.

Subject to G.L. c. 260, §20, this execution is valid for FIVE YEARS only. It must be returned to the court along with your return of service within ten days after this judgment has been satisfied or discharged, or after five years if this judgment remains unsatisfied or undischarged.

| FIRST JUSTICE WITNESS: Neil J. Walker | DATE OF ISSUE March 22, 2001 | CLERK-MAGISTRATE OR ASSISTANT CLERK x |
|---|---|---|

OFFICER'S RETURN

DATE OF SERVICE:

Fees _____
_____
_____

See Sheriff's Deed
Doc# 117407 (16)

TOTAL FEES _____

SIGNATURE OF OFFICER

DATE OF ENTRY OF JUDGMENT 8-5-94

[ ] CIVIL    [ ] SUMMARY PROCESS

[ ] Judgment for _____

[ ] $ 350,000.00 damages, plus $ 161,000.30 prejudgment interest and $ 175.30 costs
$ _____ plus $ _____ interest from date of judgment entry to date of execution

$ 566,175.35

[ ] Possession

Execution March 22, 2001

A TRUE COPY ATTEST
DEPUTY SHERIFF
_____ County

(13) 3

SEAL)

COMMONWEALTH OF MASSACHUSETTS
COUNTY OF MIDDLESEX
THE SUPERIOR COURT

CIVIL ACTION #MICV95-06545

Carroll et al,
    Plaintiff(s)
vs.
Carroll, Jr. O.D., P.C. et al,
    Defendant(s)

### PERMANENT INJUNCTION

__ TO:


Agents, Attorneys and Counsellors, and each and every of them,

GREETINGS:

**WHEREAS**, it has been represented unto us in our SUPERIOR COURT, by James
. Carroll
osephine M. Carroll
laintiff(s), that he/she, said plaintiff(s), has filed a complaint in our
uperior Court against you, the said defendant(s)
ames J. Carroll, Jr. O.D., P.C.
herein said plaintiff(s), among other things, pray for a Writ of Injunction
gainst you, to restrain you and the persons before named from doing certain
cts and things in said complaint set forth, and hereinafter, particularly
dentified and mentioned.
    We, therefore, in consideration of the premises, upon application,
earing and finding in our Superior Court hereof, do strictly enjoin and
% COMMAND YOU, the said, James J. Carroll, Jr. O.D., P.C., Joanne Carroll
eyoung and your agents, attorneys and counsellors and each and every one of
hem, **to cease, desist and to refrain from A "No Contact Order", prohibiting
ontact by telephone, mail, in person, by agent (s) or third person (s) or at
ny place. No harassment or vandalism of any nature. No interference with
roperty rights. Violation of said order is a criminal offense.**
lothing herein shall, however prevent any party from communicating through
ounsel in connection with any judicial proceeding if counsel is retained
y the plaintiff(s).

    **Witness, Robert A. Mulligan,** Esquire at Cambridge, this
2nd day of July in the year of our Lord 1997.

MIDDLESEX, ss. **Commonwealth of Massachusetts** Clerk.
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this thirtysixth day of July. 1997.

_____
D_____ // Assistant Clerk

JS 44   4)
**CIVIL COVER SHEET**

The JS cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by lo f court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the c t sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

**I. (a) PLAINTIFFS** Josephine M. Carroll
James J. Carroll, III
P.O.Box 863 Windham, N.H.
**(b)** County of Residence of First Listed Plaintiff  Rockingham 03087
(EXCEPT IN U.S. PLAINTIFF CASES)

(7 Oldham Road Arlington Middlesex
HOME STOLEN BY FRAUD of Att's.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

**DEFENDANTS** James J. Carroll, Jr
120 Great Road Bedford, MA.
See Complaint for list.
County of Residence of First Listed Defendant  Middlesex
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. 7 and 9 Oldham Road
Arlington, MA.

Attorneys (If Known)

**II. BASIS OF JURISDICTION** (Place an "X" in One Box Only)

☐ 1  U.S. Government Plaintiff
☒ 3  Federal Question (U.S. Government Not a Party)

☐ 2  U.S. Government Defendant
☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

05 11670 GAO

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☒ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

**V. ORIGIN** (Place an "X" in One Box Only)

☐ 1 Original Proceeding
☒ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

**VI. CAUSE OF ACTION**
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
18 USC § 1961(c) et UX
Brief description of cause:
FRAUD CIVIL RIGHTS/Constitutional Viol/Deprivation of Land + All assets

**VII. REQUESTED IN COMPLAINT:**
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Unspecified
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY**
(See instructions)
JUDGE  Multiple State Cases Most Pertinent
DOCKET NUMBER  86 D 1651 (Divorce)

DATE  8/5/05
SIGNATURE OF ATTORNEY OF RECORD  James Carroll
Sup.Ct.95-6545 Perm. Inj.

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

JS 44 Rev    .ev. 11/04)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction**. The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity**.          Example:          U.S. Civil Statute: 47 USC 553
                                                                              Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) _Josephine M. Carroll vs James J. Carroll Jr_

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

   ☒ I.    160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

   __ II.   195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730,  *Also complete AO 120 or AO 121
            740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950.        for patent, trademark or copyright cases

   __ III.  110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310,
            315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371,
            380, 385, 450, 891.

   __ IV.   220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660,
            690, 810, 861-865, 870, 871, 875, 900.

   __ V.    150, 152, 153.                    **05cv11670 GAO**

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

   YES ☒   NO ☐

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest?  (See 28 USC §2403)

   YES ☒   NO ☐

   If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

   YES ☐   NO ☒

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

   YES ☒   NO ☐

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

   YES ☐   NO ☒

   A.  If yes, in which division do all of the non-governmental parties reside?

       Eastern Division ☐       Central Division ☐       Western Division ☐

   B.  If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

       Eastern Division ☒       Central Division ☐       Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

   YES ☐   NO ☐

(PLEASE TYPE OR PRINT)
ATTORNEY'S NAME _James J. Carroll III_
ADDRESS _P. O. Box 863  Windham, N.H.  03087_
TELEPHONE NO. _(603) 930-8565_