UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                    )
JAMES CARROLL III,                                  )
JOSEPHINE M. CARROLL,                               )          )
            Plaintiffs,                             )
                                                    )
v.                                                  )          C.A. No. 05-11670-GAO
                                                    )
JAMES CARROLL, JR., ET AL,                          )
            Defendants.                             )
                                                    )
_____)

MEMORANDUM AND ORDER

O'TOOLE, D.J.

        For the reasons stated below, within thirty-five (35) days of the date of this Memorandum

and Order, Plaintiffs are Ordered to show cause why this action should not be dismissed.


BACKGROUND

        On August 5, 2005, Plaintiffs James Carroll, III and Josephine Carroll, residents of

Windham, New Hampshire, filed their self-prepared Complaint alleging numerous violations of 42

U.S.C. §§ 1982, 1983, 1985, and 1986. Compl. at ¶ 1. The Complaint consists of 68 single-spaced

typewritten pages containing in excess of 147 numbered paragraphs, as well as approximately

twenty pages of attachments. The Complaint names in excess of 50 Defendants.[1] The Complaint

_____

        [1]Plaintiffs list the following as Defendants in this action:

        James J. Carroll, Jr.; Joanne Carroll Deyoung; Richard Blaine Carroll; Elaine Carroll;
Robert Costantino; Sophia Costantino; John W. Gahan, III; Kathy Gahan; Thomas Vangel;
Charles Lyons; John W. Hurd; Kathleen Keily Dias; Kevin F. Greeley; Diane Mahon; Annie
LaCourt; Robert Murray; Brian F. Sullivan; John Maher; Frederick Ryan; David MacNamee;
John Doe Greeley; John Doe Flynn; John Doe Number One, Arlington Police Officer; John Doe
Number Two, Arlington Police Officer; John Doe Three, Arlington Police Officer; Jane Doe

is not entirely coherent or organized, and is asserts fantastical allegations.  From what can be gleaned, however, it appears Plaintiffs allege that Defendant James Carroll, Jr. is at the center of a broad conspiracy to harass and defraud the Plaintiffs.  This alleged conspiracy resulted in the loss of Plaintiffs' home.

Plaintiffs Complaint contains four counts, alleging violations of civil rights by Defendants in both their individual and official capacities, as well as  title fraud/conversion, abuse of process, and malicious prosecution, and intentional interference with constitutional rights. Id. at ¶¶ 118-147.

The Complaint stems from the alleged forcible eviction of the Plaintiffs from their home at 7 Oldham Road, in Arlington, MA, on August 5, 2002.  Id. at ¶ 100-100(a). Plaintiffs allege that there was a massive conspiracy formed for the  purpose of  intimidation, harassment, and fraud,  to seize Plaintiffs' property for Defendants' own benefit.  Plaintiffs allege that some Defendants benefitted directly from seizures of property while other Defendants were bribed by other Defendants.  Id. at ¶ 63(a).

Additionally, Plaintiffs complain that Defendant Carroll and his lawyers have engaged in numerous instances of fraud upon the court by falsifying court documents and orders. Id. at ¶ 70. Plaintiffs allege that Defendants have been helped in this endeavor by numerous court personnel (not specifically named as Defendants in this action).   Plaintiffs allege that justices of the court openly

---

Bassett; John Doe Five, Arlington Fire and Rescue Officer; John Doe Dube; Richard Boyle; James Granitzas; Jerrold Loomis; David Lanata; Thomas Reilly; James DiPaulo; Steven Donnelly; Michael Faye; Gerrald Breen; Jane Doe, Middlesex Deputy Sheriff; Denise Deyoung; Everett Murray; John Doe Six, locksmith; John Doe Seven, Triple M Mover; John Doe Eight, Triple M Mover, John Doe Nine, Triple M Mover; John Doe Ten, Triple M Mover; John Doe Eleven, Triple M Mover; Charlene Philbrook; Kathleen Kiely Diaz; John Doe Hughes; Brendan Callahan, Josephine Carroll; East Cambridge Savings Bank; Costantino & Mason, LLC; Murtha, Cullina, Roche & Degiacomo, LLC; and Town of Arlington Board of Selectman.

and notoriously aided the Defendants in their conspiracy against the Plaintiffs.  Id. at ¶ 138.

More specifically, the background of this case is as follows:  Plaintiff Josephine Carroll and Defendant James Carroll, Jr. were married in 1950.  Id. at ¶ 57.  James Carroll Jr. filed for divorce in February 1988 and this divorce became final on August 25, 1989.  Id. at ¶ 59.   Part of the divorce decree awarded the property at 7 Oldham Road, Arlington, MA to Plaintiff Josephine Carroll.  Id.  According to Plaintiffs,  numerous instances of harassment ensued by Defendant Carroll and by other Defendants,  including the Arlington police officers and Police Department.  Id. at ¶¶ 64-65, 68-68(b), 72-74.  Defendant Carroll also is alleged to have filed "false" litigation in a Massachusetts state court against Plaintiffs. Id. at ¶ 63(a).  Plaintiffs contend that this litigation had been dismissed, but court records were altered and Defendant eventually claimed to have won a judgment in that case. Id. at ¶¶ 69-70.

Plaintiffs further allege that Defendant Carroll did not pay the support ordered by the state court in the divorce decree. Id. at ¶ 67. On July, 1997, Judge Hiller Zobel entered a permanent injunction in favor of the Plaintiffs, ordering that the Defendant no longer interfere with the Plaintiffs or their property. Id. at ¶¶ 78; page 77-78.  Plaintiffs claim that this injunction has been consistently violated and ignored. Id. at ¶ VII.

Plaintiffs' Complaint also appears to allege that in May 2001 the Plaintiffs' property at 7 Oldham Road, Arlington, MA, became the object of a sheriff sale. Id. at ¶¶ 87-89. While the Complaint is unclear as to why the property was sold, there is some indication that the failure to pay taxes on the property was a result of Defendant's failure to pay alimony, id. at ¶ 84, as well as an "illegal" civil judgment against the Plaintiffs in favor of the Defendant, id. at ¶ 71, and an "illegal" improvement to a right of way near the property, the cost of which was partially borne by Plaintiffs,

id. at ¶ 66.

On November 9, 2001, an eviction case was filed by Defendant Carroll and his lawyer Defendant Costantino. Id. at ¶ 90. On February 20, 2002, eviction was attempted. Id. at ¶¶ 94-94(g). The final eviction took place on August 5, 2002. Id. at ¶¶ 100-100(a). In November 2002, this eviction was upheld by the Cambridge Superior Court. Id. at ¶¶ 103-104. In a title contest in Land Court, Plaintiffs attempted to show that Defendant had tampered with deeds and engaged in other improprieties. Id.

Plaintiffs allege that on January 2003, Defendant Carroll took Plaintiff James Carroll III's car from 7 Oldham Road without any legal authority. Id. at ¶ 106. Plaintiffs also allege that during 2004, the property at 7 Oldham Road was sold and subdivided, benefitting numerous Defendants. Id. at ¶¶ 108-116. The Gahan Defendants now reside on the property at 7 Oldham Road. Id. at ¶¶ 15-16.

Plaintiffs also make claims that Defendants have filed unfounded Complaints against Plaintiffs. Id. at ¶¶ 68, 73(a). They further claim Defendants have committed: (1) civil and criminal trespass on numerous occasions,[2] (2) libel and slander,[3] (3) assault,[4] (4) fraud on the court,[5] (5)

---

[2]Id. at ¶ VI, 68.

[3]Id. at ¶¶ 63(a), 65.

[4]Id. at ¶¶ 100(a), 129.

[5]Id. at ¶ 81.

criminal stalking,[6] (6) false arrest and imprisonment,[7] (7) wire and bank fraud,[8] (8) re-litigated dismissed issues in probate court,[9] (9) arranged the appointment of an "unlawful guardian"[10], and (10) witness tampering.[11] Plaintiffs couch these claims in terms of due process, equal protection, and equal access to the courts.

Plaintiffs request, *inter alia,* the following relief: (1) the prosecution/disbarment/sanctioning of Defendants, (2) the return of their home and possessions in their original condition, (3) declaring all successive deeds on the property void, (4) a written apology from Defendants, (5) an order upholding Judge Hiller Zobel's injunction, (6) an injunction ordering all Defendants from interfering with Plaintiffs property rights, (7) money damages, (8) loss of consortium/companionship between mother and son, (9) money damages for emotional distress, (10) attorney fees, (11) lost wages and lost ability for future acquisition of assets, (12) punitive damages, and (13) the voiding of all rulings and decisions favoring Defendants following the Permanent Injunction. Plaintiffs also seek damages to repay the Discovery Card Credit Card Company $10,000 for costs incurred following an eviction.

Plaintiff Josephine Carroll's Application to Proceed *in forma pauperis* was previously allowed by this Court, in September 2005. See Memorandum and Order (#3). However, Plaintiff

---

[6] Id. at ¶¶ 68(a), 72.

[7] Id. at ¶ 94(c).

[8] Id. at ¶ IX, 83(b).

[9] Id. at ¶ 82-84

[10] Id. at ¶ 83(a)

[11] Id. at ¶ 105.

James J. Carroll III's Application to Proceed *in forma pauperis* was denied, and he was directed to pay his proportionate share of the filing fee. Plaintiff paid the filing fee on October 18, 2005, however the records of the Court failed to reflect the payment, and the Plaintiff James J. Carroll III was dismissed from this action, on November 29, 2005. <u>See</u> Memorandum and Order (#6). Thereafter, Plaintiff James J. Carroll III sought reinstatement to this action because the fee had been paid in compliance with this Court's directives. On December 19, 2005, a further Memorandum and Order (#9) issued, vacating the prior dismissal of this Plaintiff and reinstating him to this action.

<u>ANALYSIS</u>

I.      <u>The Court May Screen This Complaint</u>

Because Plaintiff Josephine Carroll has sought to proceed *in forma pauperis*, summonses have not issued, in order to allow the Court to review Plaintiffs' Complaint to determine if it satisfies the requirements of section 1915 of Title 28, the federal *in forma pauperis* statute. <u>See</u> 28 U.S.C. § 1915.

Section 1915 authorizes the federal courts to dismiss an action in which a plaintiff seeks to proceed without prepayment of the filing fee if the action lacks an arguable basis either in law or in fact, <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. <u>See</u> 28 U.S.C. § 1915(e)(2).   *In forma pauperis* Complaints may be dismissed *sua sponte* and without notice under § 1915 if the claim is based on an indisputably meritless legal theory, or factual allegations that are clearly baseless. <u>Id.</u>; <u>Denton v. Hernandez</u>, 504 U.S. 25, 32-33 (1992).

The Court may also dismiss *sua sponte* claims which are frivolous. Frivolous lawsuits are those lacking a legal basis or legal merit; not serious; or not reasonably purposeful. <u>Azubuko v.</u>

MBNA Am. Bank, 396 F. Supp. 2d 1, 7 (D. Mass. 2005).  As noted above, this Court may dismiss those claims that lack an arguable basis in law or fact. Claims lack factual merit if they make clearly baseless factual allegations. See Neitzke, 490 U.S. at 327-328. Claims lack an arguable or rational basis in law when they involve the infringement of a legal interest which clearly does not exist or describe unreal scenarios. Id. (interpreting the former § 1915(d)); accord Denton, 504 U.S. at 32 ("clearly baseless" actions may be dismissed); see also Mack v. Massachusetts, 204 F. Supp. 2d at 166;  Tapia-Ortiz v. Winter, 185 F.3d 8, 11 (2nd Cir. 1999) (affirming dismissal of Plaintiff's request for convening a grand jury to investigate alleged conspiracy of 20 judges and assistant U.S. Attorney); Street v. Fair, 918 F.2d 269 (1st Cir. 1990) (§ 1915(d) (sua sponte dismissals do not require notice to plaintiff with opportunity to respond if the claim is based on an "indisputably meritless legal theory.").

Although the Court recognizes that pro se complaints must be liberally construed, Hughes v. Rowe, 449 U.S. 5, 9 (1980); Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept., 209 F.3d 18, 23 (1st Cir. 2000), Plaintiffs' vast Complaint is subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2) for the reasons set forth below.

II.    Plaintiffs' Complaint Fails to Comply with Rule 8(a)

Rule 8(a) of the Federal Rules of Civil Procedure requires a Plaintiff to include in the Complaint, inter alia, "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," Rivera v. Rhode Island, 402 F.3d 27, 33 (1st  Cir. 2005) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)), such that the defendant is afforded a "meaningful opportunity to mount a defense," Diaz-Rivera v. Rivera-Rodriguez, 377 F.3d

119, 123 (1st Cir. 2004) (quoting <u>Rodriguez v. Doral Mortgage Corp.</u>, 57 F.3d 1168, 1172 (1st Cir.

1995)). "In a civil rights action …, the complaint should at least set forth minimal facts as to who

did what to whom, when, where, and why." <u>Educadores Puertorrique Zos en Acion v. Hernandez</u>,

367 F.3d 61, 68 (1st Cir. 2004). Although "the requirements of Rule 8(a)(2) are minimal … minimal

requirements are not tantamount to nonexistent requirements." <u>Id.</u> (quoting <u>Gooley v. Mobil Oil</u>

<u>Corp.</u>, 851 F.2d 513, 514 (1st Cir. 1988)).

Here, the 68 page single-spaced Complaint fails to comply with the pleading requirements

of Rule 8(a). It is surely not "a short and plain statement of the claim." Instead, the Complaint is

repetitive, unorganized and not entirely lucid. It contains sweeping allegations without factual

support, which only serve to obfuscate Plaintiffs' claims rather than to clarify them. For instance,

some of the over fifty Defendants are not alleged to have done any specific act. All that is alleged

is that the Defendants were part of a massive conspiracy. There is no indication as to any direct or

indirect actions taken on behalf of the alleged conspiracy. Other Defendants are alleged to have

taken part in specific acts but no relevant dates or details are given.[12] The Complaint also does not

specify with any real coherence, what claims are brought under what sections of federal law, nor

does the Complaint delineate the particular Defendants involved with respect to each count. Bald

assertions of civil rights violations, without any factual support, are not adequate to state a

---

[12]For instance, Plaintiffs' allegations against Defendant Kathy Gahan (currently living at
the real property) are not clearly set forth. Her only connection to the alleged conspiracy seems
to be the fact that she is related to John Gahan. Similarly, Plaintiffs' only claim against the
Attorney General is that he failed to stop the actions of the Defendants and protect Plaintiffs'
rights. Compl. at ¶ 8,147. Finally, Plaintiffs' allegations against town board members alleging
that they improved a public way to increase the Plaintiffs' financial burdens and eventually
foreclose on her house so that they and friends could buy the property and profit by its
redevelopment are similarly unsupported by any facts and also appear to describe unreal
scenarios. <u>Id.</u> at ¶ 66, 108-116.

cognizable legal claim, nor do they provide the Defendants with any meaningful opportunity to respond to the allegations in the Complaint.   Requiring the Defendants to cull out the information contained in the voluminous Complaint to determine what allegations and causes of action apply to which of the Defendants, is a Herculean task not contemplated by the pleading requirements of Rule 8(a).

In light of the above, this Complaint is subject to dismissal in its entirety, unless Plaintiffs show cause, within the parameters set forth in this Memorandum and Order, why this action should not be dismissed.

III.    The Complaint Contains Frivolous Allegations

At this juncture, the Court considers that Plaintiffs allegations of a vast conspiracy to be wholly frivolous, without any factual support.   The Complaint describes unreal scenarios of kidnaping, robbery, assault, wiretapping, stalking, falsified documents, and a multitude of other alleged wrongdoings against them.[13]

Essentially, however, this action stems from a dispute over a divorce decree, the attendant division of property,  the non-payment of support which ultimately resulted in a Sheriff's sale of the real property, and the aftermath of the eviction, including altercations with law enforcement and others.   These circumstances have, in Plaintiffs' ideation, transformed into a wild, expansive conspiracy involving police, judges, lawyers, Town Selectman, property purchasers, a locksmith,

_____

[13]While Plaintiffs only set out four counts, they also complain of a myriad of violations including violations of the Defense of Marriage Act, the Violence Against Women Act, and the False Claims Act.  These claims are deemed to be  frivolous as there is no support in the record for the assertion of these claims as it relates to the allegations in the Complaint.  Moreover, Plaintiffs assertion of these violations are in connection with perceived deficiencies in the state court proceedings, and are therefore barred under the Rooker doctrine, as noted herein.

the Attorney General, and a whole host of others with whom the Plaintiffs have apparently come in contact.

Moreover, Plaintiffs seek, *inter alia*, a return of their home, by attempting to artfully plead this action as a civil rights matter. The Court cannot permit attempts to twist circumstances in this fashion, in order to gain federal review of matters clearly within the realm of the state court system, such as divorce, distribution of marital assets, and the sale of real estate.[14] See the discussion on Rooker, *infra*.

Accordingly, this Complaint is subject to dismissal in its entirety as frivolous, unless Plaintiffs shows cause, within the parameters set forth in this Memorandum and Order, why this action should not be dismissed.

IV.     Statute of Limitations

Even if this Court were to consider Plaintiffs' allegations as non-frivolous, most of Plaintiffs' federal claims are not legally cognizable because they are barred by the three-year statute of limitations on civil rights actions.[15] Although there is no specified statute of limitations for causes of action brought under federal civil rights laws, it is well settled that the applicable state statute of

_____

[14]It is noted that Plaintiffs previously attempted to raise the fraud issues with respect to ongoing proceedings in the state probate and family court, as to some of the named Defendants in this action. See Carroll, et al., v. Carroll, et al., C.A. 01-10858-REK. The Defendants' Motion to Dismiss was granted by Judge Keeton, and the action dismissed on jurisdictional and abstention grounds, on September 6, 2001. See Memorandum and Order (#11). Subsequently, Plaintiffs also filed suit in this Court seeking a Temporary Restraining Order with respect to the auctioning of their goods, alleging fraud and robbery with respect to their property. Judge Zobel denied the request for a Temporary Restraining Order, and terminated the action. See Carroll, et al., v. Carroll, et al., C.A. 03-12596-RWZ (electronic Order of December 23, 2003).

[15]For limitations purposes, the statute begins to run on the day following the day of the incident, with the last day for filing suit being the anniversary date of the event, in accordance with Mass. R. Civ. P. 6(a). Poy v. Boutselis, 352 F.3d 479, 483 (1st Cir. 2003).

limitations is applied where the action is filed.  Thus, in federal civil rights cases filed in this District, the applicable statute of limitations is three years. Nieves v. McSweeny, 241 F.3d 46, 52-53 (1st Cir. 2001); Johnson v. Rodriguez, 943 F.3d 104, 107 (1st Cir. 1991); Govan v. Trustees of Boston Univ., 66 F. Supp. 2d 74, 80 (D. Mass. 1999). Therefore, as a threshold matter, if Plaintiffs' § 1983 claims were not brought within the three year limitations period after accrual, they are subject to dismissal.

This Circuit recognizes that "[a]lthough state law determines the tolling provisions of the applicable statute, it is federal law that determines when these constitutional claims accrue." Perez-Ruiz v. Crespo-Guillen, 847 F. Supp. 1, 2 (D. Puerto Rico 1993) aff'd 25 F. 3d 40 (1st Cir. 1994) citing Edwards v. Sotomayor, 557 F. Supp. 209, 213 (D. Puerto Rico 1983) citing Walden III Inc. v. Rhode Island, 576 F.2d 945 (1st Cir. 1978); Singleton v. N.Y., 632 F.2d 185, 191 (2nd Cir. 1980).

A § 1983 cause of action accrues when the plaintiff knows, or has reason to know, of the injury which is a basis of the action; when facts supportive of a civil rights action are obvious, or should be obvious, to a reasonably prudent person similarly situated. Edwards, 557 F. Supp. at 214; Carreras-Rosa 127 F.3d 172, 174 (1st Cir. 1997).  In contrast, conspiracy claims under § 1985 only accrue "when the last overt act alleged to have caused the damages is performed." Edwards, 557 F. Supp. at 219; Betances v. Quiros, 603 F. Supp. 201, 210 (D.P.R. 1985).  The last overt action refers to the last act committed by a particular defendant. Betances, 603 F. Supp. at 210.

In the instant case,  this action was commenced on August 5th, 2005.  Therefore, in order to escape the statutory bar, the acts giving rise to the present action must have arisen on or after August 5, 2002.  From the contentions in the Complaint, it is apparent that Plaintiffs knew or should have known of most of the alleged rights violations before August 5, 2002.  For instance, all of Plaintiffs'

claims stemming from the divorce decree occurred in the 1990's. Plaintiffs contend that Judge Hiller Zobel entered a permanent injunction in 1997. Moreover, the property was subject to a Sheriff's sale in 2001, and an eviction case was filed in November 2001, and the first eviction attempt was in February 2002. Although the eviction took place August 5, 2002, any claims arising prior to that time are subject to dismissal. As noted above, Plaintiff fails to specify the dates upon which the alleged conspiracy took place, and therefore it is impossible to determine whether there are any viable, non-barred claims asserted. The only coherent § 1983 claims occurring on or after August 5, 2000 are Plaintiffs' due process claims against Defendant Sheriff Donnelly and the Defendant deputies with respect to the eviction of August 5, 2002. However, these claims are subject to dismissal for reasons stated below in Section IV.

Accordingly, this Complaint is subject to dismissal on statute of limitations grounds, unless Plaintiffs show cause, also within the parameters set forth in this Memorandum and Order, why this action should not be dismissed.

V.     Failure to Set Forth Cognizable Civil Rights Violations

A.     Plaintiffs' Section 1982 Claims

Plaintiffs attempt to bring a cause of action under 42 U.S.C. 1982. However, this cause of action only provides relief to plaintiffs claiming discrimination on the basis of race. Jackson v. Birmingham Bd. of Educ., 544 U.S. 167 (2005) (explaining that § 1982 contains a general prohibition against *racial* discrimination) (emphasis added). Since Plaintiffs make no claim regarding racial discrimination, the claim lacks an arguable basis in fact or law and is subject to dismissal.

B.     Plaintiffs' Section 1983 Claims

Plaintiffs bring claims alleging that their rights have been violated by Defendants acting under the color of state law. Specifically, Plaintiff complains that Defendant law enforcement officers have interfered with Plaintiff's liberty and property rights through the eviction of August 5, 2002, and the attendant consequences of the eviction, as well as through previous actions of harassment, false imprisonment, libel, and physical violence. There are numerous deficiencies in these claims. While Plaintiffs' claims are dismissible based upon the statute of limitations issue and Rule 8(a) deficiencies noted previously, Plaintiffs' Complaint is also deficient in that it seeks relief from this Court which, in effect, would serve to overrule state court rulings on state law matters, or would otherwise constitute judicial review over state court rulings.

a.    Rooker Feldman Doctrine

Most, if not all of Plaintiffs' claims arise directly or indirectly as a result of state court proceedings and decisions rendered by state court judges with respect to property distribution, support, and eviction. The balance of the claims stem from the consequences of the state court rulings, and Plaintiffs dispute with the validity of those rulings. For instance, Plaintiffs claim allege due process violations arising from their eviction; these claims are inevitably intertwined with the underlying state court judgment allowing this eviction. Because it appears most of the asserted claims in some fashion implicate a state court ruling, this Court lacks jurisdiction to review any claims which would call into question the validity of any state proceeding.

Under the Rooker-Feldman doctrine, lower federal courts lack the jurisdiction to hear claims already decided by the state courts. Exxon Mobil Corp. v. Saudi Basic Industries, Inc., 544 U.S. 280 (2005) (holding that this doctrine applies to "cases brought by state court losers complaining of injuries caused by state court judgments rendered before the district court proceedings commenced

13

and inviting district court review and rejection of those judgments."). Under this doctrine, federal district courts lack the subject matter jurisdiction to directly review state court decisions unless Congress has explicitly authorized such relief. See Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The jurisdiction to review state court decisions lies exclusively with superior state courts and, ultimately, the United State Supreme Court. See Feldman, 460 U.S. at 482-86; Rooker, 263 U.S. at 415-16.

The Rooker-Feldman doctrine precludes a federal action if the relief requested in that action would effectively reverse a state court decision or void its holding or if the plaintiff's claims are inextricably intertwined with the state court's decision. See District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 286 (1983) ("Federal district courts do not have jurisdiction over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional.") (internal quotation omitted); accord Johnson v. De Grandy, 512 U.S. 997, 1005-1006 (1994) (Rooker-Feldman doctrine bars "a party losing in state court ... from seeking what in substance would be appellate review of the state judgment in a United States District Court, based on the losing party's claim that the state judgment itself violates the loser's federal rights); Mandel v. Town of Orleans, 326 F.3d 267, (1st Cir. 2003) (Rooker-Feldman doctrine precludes a lower federal court from entertaining a proceeding to reverse or modify a state-court judgment or decree to which the assailant is a party).

Here, Plaintiffs have expressly stated as part of their request for relief, that they seek the voiding of all rulings and decisions favoring Defendants following the permanent injunction issued by the state court. Thus, to the extent that Plaintiffs seek a determination that any of the state court decisions were incorrect or were otherwise violative of their rights, the claims are subject to

14

dismissal.  Hill, 193 F.3d 33 at 34.  Therefore even if Plaintiff's claims survived the statute of limitations issue, they nevertheless are subject to dismissal under the Rooker doctrine.[16]

> b.  § 1983 Claims against Private Citizens

To the extent that Plaintiffs are asserting civil rights claims against private citizens "in their official capacities," these claims are also subject to dismissal.  Plaintiffs have failed to state any cognizable civil rights violations by the myriad of private citizens named in the Complaint.[17]  Private citizens who are not state actors acting under color of state law are not liable under § 1983. Rumford Pharmacy, Inc. v. City of East Providence, 970 F.2d 996, 998 (1st Cir. 1992).   Plaintiffs have set forth no facts which would make these private citizens "state actors" for purposes of civil rights violations.  Thus, the federal claims against private citizens are subject to dismissal.

---

[16]Moreover, to the extent that Plaintiffs claims raise domestic relations issues, particularly those involving alimony and/or child support disputes, federal courts have traditionally declined to exercise jurisdiction over such matters.  See Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992) (describing "domestic relations" exception doctrine); accord Elk Grove Unified School Dist. v. Newdow, 124 S. Ct. 2301, 2309 (2004) (citations omitted) (same).  The "domestic relations" exception governs support claims even where they are cloaked in the "trappings" of another type of claim.  Mandel, 326 F.3d at 271.  Here, the Complaint encompasses a thinly-veiled attempt to seek relief from this Court concerning the consequences of the divorce decree in the Probate Court.  See, e.g., Congleton v. Holy Cross Child Placement Agency, Inc., 919 F.2d 1077, 1079 (5th Cir. 1990) (affirming dismissal; exception applies if hearing the claim necessitates involvement in domestic issues by requiring inquiry into the marital or parent-child relationship).

[17]As explained above, Rule 8(a) deficiencies in the Complaint make it difficult to ascertain which Defendants are alleged to have official, government positions or are otherwise state actors. Private citizens (sued by Plaintiffs in their official capacity) include: James, J. Carroll, Jr; Robert A. Costantino; Sophia Costantino; John W. Gahan, III, Kathy Gahan; Thomas Vangel; John Doe Dube; James Granitzas; David Lanata; Everett Murray; John Doe Locksmith and Triple M Movers; Charlene Philbrick.

c.  Judicial Immunity

To the extent that the Plaintiffs raise civil rights claims against various judges in the Probate and Land Court, the Cambridge District Court, Lowell Superior Court, and Cambridge Superior Court, these claims are subject to dismissal because judges are entitled to absolute judicial immunity for actions taken with the scope of their jurisdiction.  See, e.g., Mireles v. Waco, 502 U.S. 9, 11 (1991) (per curiam) ("[J]udicial immunity is an immunity from suit, not just from the ultimate assessment of damages); Pierson v. Ray, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting maliciously and corruptly); Moore v. Brewster, 96 F.3d 1240, 1244 (9th Cir. 1996) (even where a party alleges that a judge conspired with another party to rule against him, such allegations do not pierce the immunity extended to judges); Allard v. Estes, 292 Mass. 187, 189-190, 197 N.E. 884, 886 (1935) (stating that it is "too well settled to require discussion, that every judge, whether of a higher or lower court, is exempt from liability to an action for any judgment or decision rendered in the exercise of jurisdiction vested in him by law.").

C.    Plaintiffs' Section 1985 Claims

Plaintiffs claim that all Defendants have willingly aided Defendant Carroll in violating Plaintiffs' rights.   Section 1985 of Title 42 concerns conspiracies to violate civil rights.  Section 1985 (1) deals with conspiracies to prevent persons from holding office or performing duties of a public office.   Section 1985 (2) pertains to conspiracies to obstruct justice or interfere with witnesses. Section 1985 (3) deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971)).

Plaintiffs fail to assert which subsections of § 1985 the Defendants allegedly violated. However, based on the facts as alleged, the Court finds no basis for a cause of action under subsections (1) or (3). Plaintiffs make no allegations that they ran for office, or that the alleged conspiracy is a result of their race. Therefore, the Complaint does not allege facts to constitute a cognizable claim under these subsections.

Construing Plaintiffs' assertions as an alleged violation of a conspiracy under § 1985 (2), the claims are subject to dismissal for failure to comply with Rule 8 (a) of the Federal Rules of Civil Procedure, as discussed above.

Under § 1985 (2), Plaintiff must plead a conspiracy to impede, hinder, or obstruct justice, and that the Defendants did so with the intent to deny equal protection to Plaintiffs, or to injure their persons or property in retaliation for their enforcing equal protection rights. See 42 U.S.C. § 1985 (2). While Plaintiffs alleges a multitude of adverse actions taken against them, they fail to demonstrate how these actions amounted to an intended conspiracy to deprive them of constitutional rights. Plaintiffs complain primarily of a series of adverse judicial judgments and adverse interactions with the police without providing any factual basis for a conspiracy besides the mere allegation of bribes and self-interested behavior. The mere conclusory allegation of a conspiracy, without more, is insufficient to state a legally cognizable claim. Furthermore, Plaintiffs' claims of witness tampering and obstruction of justice involve state court decisions subject to review by state appellate courts. As explained above, such claims are barred by the Rooker-Feldman doctrine. Therefore, Plaintiffs' § 1985 claims are subject to dismissal.

D. Plaintiffs' Section 1986 Claims

A violation of § 1985 is a prerequisite to a § 1986 claim. Section 1986 provides

that:

> [e]very person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the person injured, or his legal representatives, for all damages caused by such wrongful act, which such persons by reasonable diligence could have presented."

42 U.S.C. § 1986.  Thus, in order to state a claim under § 1986, Plaintiffs must first establish

a violation of § 1985, and claims which fail to do so must be dismissed. <u>Canney v. City of

Chelsea</u>, 925 F. Supp. 58, 68 (D. Mass.  1996). Since Plaintiffs fail to state a claim under

§ 1985, no § 1986 claim is cognizable.

VI.    <u>State Law Claims</u>

Independent grounds do not appear to exist for jurisdiction over any state-law

claims (*e.g.,* assault, fraud, conversion, trespass).[18] Of course, the Court may still exercise

supplemental jurisdiction over the state law claims. 28 U.S.C. § 1367(a), however, the exercise of

such jurisdiction is discretionary.  To the extent that Plaintiffs asserts state based claims for theft,

legal malpractice, assault, or otherwise, this Court declines to exercise supplemental jurisdiction

over these claims.

---

[18]Plaintiffs allege a host of state claims, including harassment, abuse of privacy, stalking, threats, intimidation, extortion, coercion and undue influence, slander, libel, assault, battery, false arrests, false complaints, illegal access to credit reports, credit card fraud, forgery, mortgage fraud, falsification of records, police invasions, burglary, theft, fraud, unlawful wiretapping and covert surveillance.   Plaintiffs also claim the Defendants interfered with the parent-child relationship between mother and son, impacting contractual relationships.  Compl. at 11, ¶ C.

VII.    Parameters of Show Cause Response

In view of the excessive pleading practices demonstrated by the Plaintiffs in the Complaint, it is clear to this Court that in order to obtain a meaningful show cause response to this Memorandum and Order and to provide Plaintiffs a real opportunity to focus on the deficiencies presented by the myriad of claims asserted in this action, the show cause response submitted by the Plaintiff shall be limited to fifteen (15) double spaced pages. Plaintiffs shall address the specific deficiencies set forth in this Memorandum and Order, and shall not, as part of the response, seek to add additional claims or Defendants. If Plaintiffs seek to correct the deficiencies noted in this Memorandum and Order by filing an Amended Complaint, the Amended Complaint shall be limited to fifteen (15) double spaced pages, unless Plaintiffs show good cause why additional pages are necessary to set forth their claims in accordance with Rule 8(a) of the Federal Rules of Civil Procedure. Any Amended Complaint shall be filed in addition to, but not in lieu of, a show cause response to this Memorandum and Order.

CONCLUSION

For the reasons stated above, Plaintiffs are ordered to show cause as to why this Complaint should not be dismissed within thirty-five (35) days.

/s/ George A. O'Toole, Jr.
GEORGE A. O'TOOLE, JR.
UNITED STATES DISTRICT JUDGE

DATED: April 6, 2006

19